IN THE CIRCUIT COURT OF THE 20TH JUDICIAL CIRCUIT, IN AND FOR LEE COUNTY, FLORIDA

FORT MYERS FIRST CHURCH OF THE NAZARENE, INC.,

Plaintiff,

v.

CHURCH MUTUAL INSURANCE COMPANY,

Defendant.
_______________________________________/

CASE NO.:

**COMPLAINT FOR DAMAGES**

Plaintiff, FORT MYERS FIRST CHURCH OF THE NAZARENE, INC. (hereinafter the "Plaintiff"), hereby sues Defendant, CHURCH MUTUAL INSURANCE COMPANY (hereinafter the "Defendant"), and states as follows:

**PARTIES, JURISDICTION & VENUE**

1. This is an action for damages under an insurance policy resulting from loss of property wherein the amount in controversy exceeds Thirty Thousand Dollars ($30,000.00), exclusive of costs, interest and attorney's fees, and is therefore within the jurisdiction of this Court.

2. At all times material hereto, Plaintiff had insurance coverage pursuant to a property insurance policy issued by Defendant.

3. At all times material hereto, Plaintiff was and is a not for profit corporation authorized to conduct and was in fact conducting business in Lee County, Florida.

4. At all times material hereto, Defendant was and is an insurance company authorized to conduct and was in fact conducting business in Lee County, Florida.

5.      Venue is proper in Lee County, Florida as Lee County, Florida is the locale where the cause of action accrued.

6.      All conditions precedent have been satisfied, discharged or waived.

## GENERAL ALLEGATIONS

7.      At all times material hereto, in consideration of the applicable premium, Defendant issued to Plaintiff a property insurance policy bearing policy number 0130923-02-735974 (hereinafter the "Policy"). A certified copy of the Policy is attached hereto as *Exhibit A*.

8.      The Policy provided insurance coverage for the property located at 13545 American Colony Boulevard, Fort Myers, Florida 33912 (hereinafter the "Property").

9.      Defendant insured the Property for damage including, but not limited to, damage to the structure and its contents resulting from water damage, windstorm, fire, theft, and other covered perils.

10.      On or about September 11, 2017, while the Policy was in full force and effect, a covered loss occurred to the Property, namely, Hurricane Irma, causing sudden and accidental damage to the Property (hereinafter the "Loss").

11.      Plaintiff timely filed a claim and notified Defendant of the Loss.

12.  Defendant assigned claim number 1402045 to the Loss (hereinafter the "Claim").

13.      Plaintiff has fully cooperated in the investigation of the Claim including, but not limited to, providing Defendant with requested documentation to substantiate the Claim and providing access to the Property for Defendant's inspection.

14.      Defendant's representative(s) inspected the Property and Defendant was not prejudiced in its investigation.

15. Thereafter, Defendant wholly and improperly denied coverage for the Insured's Loss and Claim.

16. Plaintiff has suffered and continues to suffer as a result of the Loss.

**COUNT I – BREACH OF CONTRACT**

17. Plaintiff incorporates the allegations set forth in paragraphs one (1) through sixteen (16) as if fully set forth herein.

18. The Policy provides coverage for direct physical loss to the Property.

19. Plaintiff and Defendant entered into a written contract, the Policy, wherein Plaintiff agreed to pay a premium and Defendant agreed to insure the Property.

20. Plaintiff has paid all premiums due and owing.

21. Plaintiff satisfied all post-loss obligations in compliance with the terms and conditions of the Policy.

22. Defendant breached its contractual obligations in the Policy by failing to make payment for the Claim sufficient to return the Property to a pre-loss condition, as required by the Policy.

23. Defendant's failure to pay the full amount of the Claim is contrary to the terms of the Policy and is a breach of the Policy.

24. As a result of Defendant's breach, Plaintiff has been damaged in an amount to be determined at trial.

25. As a direct and proximate cause of Defendant's acts and omissions, Plaintiff has been forced to retain the services of undersigned counsel and Defendant is responsible for paying a reasonable attorney's fees pursuant to Florida Statutes §627.428 or §626.9373.

WHEREFORE, Plaintiff prays for damages, pre-judgment interest, attorney's fees pursuant to Florida Statute §627.428 or §626.9373, costs as the prevailing party, and any other relief this Honorable Court deems fair and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial against Defendant on all issues so triable.

[NOTICE OF COMPLIANCE ON FOLLOWING PAGE]

**NOTICE OF COMPLIANCE WITH FLORIDA RULE OF JUDICIAL ADMINISTRATION RULE 2.516**

Plaintiff, by and through undersigned counsel, file this Notice of Compliance with Judicial Administration Rule 2.516 and hereby designates the following email address as the sole email addresses for transmitting electronic service documents on behalf of Harold Y. Levy, Esquire and Kevin C. Bryant, Esquire:

PRIMARY EMAIL for Service of Pleadings and Court Documents *only*:
Service@HLLawgroup.com

SECONDARY EMAIL for correspondence and scheduling:
KBryant@HLLawGroup.com
Barbara@HLLawGroup.com
SRousseau@HLLawGroup.com

Transmittal of court documents to the above-designated email addresses must be made in order for service to be proper and effective, however, please use the attorneys' regular email addresses for all other communications.

DATED this 24th day of September, 2020.

**HL LAW GROUP, P.A.**

By: /s/ *Kevin C. Bryant*
Harold Levy, Esquire
FBN: 30478
Kevin C. Bryant, Esquire
FBN: 1005185
Attorney for Plaintiff
2601 East Oakland Park Boulevard, Suite 503
Fort Lauderdale, Florida 33306
Telephone: (954) 713-1212
Facsimile: (954) 760-4239
Email: Service@HLLawGroup.com
Secondary Email: KBryant@HLLawGroup.com
Barbara@HLLawGroup.com
SRousseau@HLLawGroup.com

# EXHIBIT A



Church Mutual
INSURANCE COMPANY

Listening. Learning. Leading.®

**CERTIFICATION**

APRIL 29, 2020

INSURED:
FORT MYERS FIRST CHURCH OF THE NAZARENE INC
13545 AMERICAN COLONY BLVD
FORT MYERS, FL 33912-5681

RE: POLICY NUMBER 0130923-02-735974

THIS IS TO CERTIFY THAT THE POLICY OF INSURANCE ATTACHED HERETO IS A TRUE COPY OF THE POLICY OF INSURANCE AS OF 09-10-2017.

EDWARD W. HANCOCK
VICE PRESIDENT - CHIEF UNDERWRITING OFFICER
CHURCH MUTUAL INSURANCE COMPANY

3000 Schuster Lane, P.O. Box 357, Merrill, WI 54452-0357 715.536.5577 800.554.2642 fax: 715.539.4650 www.churchmutual.com
National Customer Service Center: P.O. Box 505, Merrill, WI 54452-0505 800.554.2642 toll-free fax: 855.264.2329
Claims: P.O. Box 342, Merrill, WI 54452-0342 800.554.2642 fax: 715.539.4651

**IMPORTANT - ATTACH TO YOUR POLICY**

## CHURCH MUTUAL INSURANCE COMPANY
## CHANGE ENDORSEMENT

THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBERED BELOW:

**ENDORSEMENT EFFECTIVE DATE:** 11/01/15 **POLICY NO.:** 0130923-02-735974
**POLICY EFFECTIVE DATE:** 11/01/14

FORT MYERS FIRST CHURCH OF THE NAZARENE INC
13545 AMERICAN COLONY BLVD
FORT MYERS FL 33912-5681

SUMMARY CHANGES TO YOUR POLICY:

FORM A 136(01-98) PROTECTIVE SAFEGUARDS ENDORSEMENT IS ADDED.

**PREMIUM:**
NO ADDITIONAL PREMIUM DUE

SUMMARY OF ADDITIONAL CHARGES (INCLUDED IN ANNUAL PREMIUM)

STATE SURCHARGE $ 4.00 ANNUAL CHARGE

**AGENT:** 07-104
CHURCH MUTUAL INS CO
SOUTHEASTERN DIVISION
CHURCH MUTUAL INS CO
3000 SCHUSTER LANE
MERRILL WI 54452
(800) 554-2642

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PROTECTIVE SAFEGUARDS ENDORSEMENT

This endorsement modifies insurance provided under the Property Coverage Part.

The following is added to the Property Coverage Part, but only for the premises and buildings this endorsement applies to.

A. The following is added to the Property Conditions:

PROTECTIVE SAFEGUARDS

1. As a condition of this insurance, you are required to maintain the protective devices or services listed in the Declarations Page.

2. The protective safeguards to which this endorsement applies are identified by the following symbols in the Declarations Page:

   a. "P-1" Automatic Sprinkler System, including related supervisory services.

      Automatic Sprinkler System means:

      (1) Any automatic fire protective or extinguishing system, including connected:

         (a) Sprinklers and discharge nozzles;

         (b) Ducts, pipes, valves, and fittings;

         (c) Tanks, their component parts, and supports; and

         (d) Pumps and private fire protection mains.

      (2) When supplied from an automatic fire protective system:

         (a) Non-automatic fire protective systems; and

         (b) Hydrants, standpipes, and outlets.

   b. "P-2" Automatic Fire Alarm, protecting the entire building, that is:

      (1) Connected to a central station; or

      (2) Reported to a public or private fire alarm station.

   c. "P-3" Security Service, with a recording system or watch clock, making hourly rounds covering the entire building when the premises are not in actual operation.

   d. "P-4" Service Contract with a privately owned fire department providing the fire protection service to the described premises.

   e. "P-9" The protective system described in the Declarations Page.

   Refer to the Declarations Page to determine the premises and buildings this endorsement applies to.

B. The following is added to the Exclusions of the:

**CAUSES OF LOSS - BASIC FORM**
**CAUSES OF LOSS - BROAD FORM**
**CAUSES OF LOSS - SPECIAL FORM**

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

1. Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

2. Failed to maintain any protective safeguard listed in the Declarations Page, and over which you had control, in complete working order.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions, or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

Copyright, Church Mutual Insurance Company, 1998.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

Mutual Company
Nonassessable

# CHURCH MUTUAL INSURANCE COMPANY

3000 Schuster Lane, P.O. Box 357, Merrill, WI 54452

## COMMON POLICY DECLARATIONS PAGE

## THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES WHICH MAY RESULT IN HIGH OUT- OF- POCKET EXPENSES TO YOU

## THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU

**POLICY NO.:** 0130923-02-735974

**ITEM 1. NAMED INSURED AND ADDRESS:**
FORT MYERS FIRST CHURCH OF THE NAZARENE INC
13545 AMERICAN COLONY BLVD
FORT MYERS FL 33912-5681

**ITEM 2. POLICY PERIOD:** FROM 11/01/14 TO 11/01/17 — 0130923-02-396568
12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE — (RENEWAL OF)

**ITEM 3. THE NAMED INSURED IS:** RELIGIOUS INSTITUTION

**ITEM 4. AGENT:** 07-104
CHURCH MUTUAL INS CO
SOUTHEASTERN DIVISION
CHURCH MUTUAL INS CO
3000 SCHUSTER LANE
MERRILL WI 54452
(800) 554-2642

**ITEM 5. THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS:**

**FORMS AND ENDORSEMENTS WHICH APPLY TO THIS ENTIRE POLICY:**

| | |
|---|---|
| A 050(01-98) | MUTUAL AND COMMON POLICY CONDITIONS |
| A 051(06-87) | CALCULATION OF PREMIUM |

**PROPERTY COVERAGE PART AND ITS FORMS AND ENDORSEMENTS:**

| | |
|---|---|
| A 100(01-01) | PROPERTY CONDITIONS |
| A 1001(01-08) | IDENTITY RECOVERY COVERAGE FORM |
| A 1009(11-08) | WATER EXCLUSION ENDORSEMENT |
| A 101(04-06) | BUILDING AND PERSONAL PROPERTY COVERAGE - RELIGIOUS |
| A 127(04-06) | CAUSES OF LOSS - SPECIAL FORM |
| A 142(05-89) | BUSINESS PERSONAL PROPERTY OF YOUR CLERGY |
| A 150(06-00) | TENTATIVE RATE |

Church Mutual INSURANCE COMPANY

**POLICY NO.:** 0130923-02-735974

A 154(10-99) SYSTEMS/EQUIPMENT BREAKDOWN COVERAGE FORM
A 181(11-06) FLORIDA CHANGES
A 181.3(07-06) FL CHANGES - MEDIATION OR APPRAISAL (COMM RES PROP)
A 186 FL(02-06) WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE
A 9001.1SF(01-08) EXCLUSION OF CERTIFIED ACTS OF TERRORISM
A 918(09-08) FLORIDA CHANGES - CANCELLATION AND NONRENEWAL

**GENERAL LIABILITY COVERAGE PART AND ITS FORMS AND ENDORSEMENTS:**
A 052(06-87) NUCLEAR ENERGY LIABILITY EXCLUSION - BROAD FORM
A 200(01-04) GENERAL LIABILITY COVERAGE PART - OCCURRENCE BASIS
A 200.1(12-06) AMENDATORY ENDORSEMENT - PERSONAL INJURY
A 202(01-04) GENERAL LIABILITY ADDITIONAL PROVISIONS - RELIGIOUS
A 229.1(05-89) EXCLUSION - MEDICAL EXPENSE COVERAGE - SPECIFIC ACTIVITY OR EVENT
A 230(01-04) DESIGNATED PROFESSIONAL SERVICES
A 242(01-04) EXCLUDED OPERATIONS
A 251(09-94) EXCLUSION - LEAD LIABILITY
A 253(01-04) LEGAL DEFENSE COVERAGE
A 254(10-99) AMENDMENT OF INSURING AGREEMENT - KNOWN INJURY/DAMAGE
A 255(01-04) CATASTROPHIC VIOLENCE RESPONSE COVERAGE
A 262(01-04) SEXUAL MISCONDUCT OR SEXUAL MOLESTATION LIAB AND MED
A 268(05-03) WAR LIABILITY EXCLUSION
A 9001.4(01-08) EXCLUSION OF CERTIFIED ACTS OF TERRORISM
A 918.1(01-08) FLORIDA CHANGES - CANCELLATION AND NONRENEWAL

**CRIME COVERAGE PART AND ITS FORMS AND ENDORSEMENTS:**
A 300(06-87) CRIME CONDITIONS FORM
A 302(05-89) CHURCH THEFT OF MONEY AND SECURITIES COVERAGE FORM
A 309(06-87) BLANKET BOND COVERAGE FORM
A 383(05-94) FLORIDA CHANGES
A 918(09-08) FLORIDA CHANGES - CANCELLATION AND NONRENEWAL

**PROFESSIONAL LIABILITY COVERAGE PART AND ITS FORMS AND ENDORSEMENTS:**
A 500(01-04) COUNSELING PROFESSIONAL LIABILITY COVERAGE-OCCURRENCE
A 505(12-04) DIRECTORS, OFFICERS & TRUSTEES LIAB - CLAIMS MADE
A 520(01-04) EMPLOYMENT PRACTICES LIABILITY COVERAGE
A 529(12-04) EMPLOYMENT PRACTICES LIABILITY COVERAGE AMENDMENT
A 530(12-06) AFFILIATED ENTITY DISPUTE LEGAL DEFENSE COVERAGE
A 555(01-08) FLORIDA CHANGES - CANCELLATION AND NONRENEWAL
A 9001.4(01-08) EXCLUSION OF CERTIFIED ACTS OF TERRORISM
DOT 913-FL(02-07) APPLICATION FOR DIRECTORS, OFFICERS & TRUSTEES LIAB
EPL 914-FL(02-07) APPLICATION FOR EMPLOYMENT PRACTICES LIABILITY

**HIRED AND NONOWNED AUTOMOBILE LIABILITY COVERAGE PART AND ITS FORMS AND ENDORSEMENTS:**
A 600(01-04) HIRED AND NONOWNED AUTO LIAB - RELIGIOUS INSTITUTION
A 602(06-00) MEDICAL EXPENSE COVERAGE
A 605(01-03) RENTAL AUTOMOBILE CONTRACTUAL LIABILITY ENDORSEMENT
A 683(01-06) FLORIDA CHANGES
A 683.1(07-06) HIRED/NONOWNED AUTO UNINSURED MOTORISTS COV-FLORIDA
A 9001.4(01-08) EXCLUSION OF CERTIFIED ACTS OF TERRORISM
A 918.1(01-08) FLORIDA CHANGES - CANCELLATION AND NONRENEWAL

**POLICY NO.:** 0130923-02-735974

**ITEM 6. PREMIUM:** IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

$26,927.00 DUE AT INCEPTION. PREMIUM SUBJECT TO ADJUSTMENT AT EACH ANNIVERSARY.

** SUMMARY OF ADDITIONAL CHARGES (INCLUDED IN ANNUAL PREMIUM) **

STATE SURCHARGE $ 4.00 ANNUAL CHARGE

This policy includes copyrighted material of Church Mutual Insurance Company
Copyright, Church Mutual Insurance Company, 1995
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1984 & 1994

Church Mutual INSURANCE COMPANY

## PROPERTY COVERAGE PART
## DECLARATIONS PAGE

**POLICY NO.:** 0130923-02-735974

**ITEM 1. DESCRIPTION OF PREMISES AND COVERAGES:**

PREMISES NO: 001 BUILDING NO: 001
CONSTRUCTION: JOISTED MASONRY
OCCUPANCY: CHURCH AND EDUCATION
LOCATION: 13545 AMERICAN COLONY BOULEVARD
TOWNSHIP NAME: FORT MYERS CO FPSA 2 COUNTY: LEE
CITY/STATE: FORT MYERS, FL

COVERAGE: BUILDING
LIMIT OF INSURANCE: $4,503,000
COINSURANCE PERCENT: 100%
COVERED CAUSE OF LOSS: SPECIAL
VALUATION: REPLACEMENT COST
OPTIONAL COVERAGE: AUTOMATIC INCREASE IN INSURANCE
AGREED VALUE

COVERAGE: PERSONAL PROPERTY
LIMIT OF INSURANCE: $676,000
COINSURANCE PERCENT: 100%
COVERED CAUSE OF LOSS: SPECIAL
VALUATION: REPLACEMENT COST
OPTIONAL COVERAGE: AUTOMATIC INCREASE IN INSURANCE
AGREED VALUE

OTHER AMENDMENTS OR ENDORSEMENTS:

TENTATIVE RATE ENDORSEMENT

BUSINESS PERSONAL PROPERTY OF YOUR CLERGY ENDORSEMENT.
LIMIT OF INSURANCE: $42,000
TITLE OF CLERGY IS:
PASTOR BRUMMETT

ASSOCIATE PASTOR ERWIN

**ITEM 2. DEDUCTIBLE - OCCURRENCE:**

$1,000 EXCEPT AS FOLLOWS:
2% WINDSTORM OR HAIL A 186 FL - APPLIES TO PREM.: 001 BLDG.: 001

Church Mutual INSURANCE COMPANY

**POLICY NO.:** 0130923-02-735974

**ITEM 3. ENDORSEMENTS:**

NONE

**ITEM 4. MORTGAGEHOLDERS, LOSS PAYEES, AND CONTRACT SELLERS:**

MORTGAGEHOLDER(S):

EDISON NATIONAL BANK
ITS SUCCESSORS AND/OR ASSIGNS
13000 S CLEVELAND AVE
FORT MYERS, FL 33907-3846
PREMISES/BUILDINGS INCLUDED: 001    001

A 001 P(10-99) - FL                    PAGE 2                    ISSUED DATE: 10/09/14

## GENERAL LIABILITY COVERAGE PART
## DECLARATIONS PAGE

**POLICY NO.:** 0130923-02-735974

**ITEM 1. LIMITS OF INSURANCE:**

| | | |
|---|---|---|
| GENERAL AGGREGATE LIMIT (OTHER THAN PRODUCTS - COMPLETED OPERATIONS AND SEXUAL MISCONDUCT OR SEXUAL MOLESTATION) | $ | 3,000,000 |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ | 1,000,000 |
| EACH OCCURRENCE LIMIT (BODILY INJURY AND PROPERTY DAMAGE COMBINED) | $ | 1,000,000 |
| PERSONAL AND ADVERTISING INJURY LIMIT (COMBINED) | $ | 1,000,000 |
| MEDICAL EXPENSE LIMIT - ANY ONE PERSON (OTHER THAN SEXUAL MISCONDUCT OR SEXUAL MOLESTATION) | $ | 10,000 |
| PROPERTY DAMAGE LEGAL LIABILITY - ANY ONE OCCURRENCE | $ | 300,000 |
| SEXUAL MISCONDUCT OR SEXUAL MOLESTATION LIMIT (COMBINED) - ALL LOCATIONS AND OPERATIONS | | |
| EACH CLAIM LIMIT | $ | 300,000 |
| AGGREGATE LIMIT | $ | 300,000 |
| SEXUAL MISCONDUCT OR SEXUAL MOLESTATION MEDICAL EXPENSE LIMIT | | |
| ANY ONE PERSON | $ | 10,000 |
| AGGREGATE LIMIT | $ | 50,000 |
| LEGAL DEFENSE COVERAGE LIMIT | | |
| EACH DEFENSIBLE INCIDENT LIMIT | $ | 5,000 |
| AGGREGATE LIMIT | $ | 15,000 |
| CATASTROPHIC VIOLENCE RESPONSE | | |
| PER PERSON LIMIT | $ | 50,000 |
| EACH VIOLENT INCIDENT LIMIT | $ | 300,000 |
| VIOLENT INCIDENT AGGREGATE LIMIT | $ | 300,000 |

**ITEM 2. DESCRIPTION AND CLASSIFICATION OF PREMISES AND OPERATIONS:**
ALL PREMISES AND OPERATIONS UNLESS EXCLUDED IN ITEM 3 BELOW.

NONE

**ITEM 3. EXCLUSION ENDORSEMENTS:**

EXCLUSION - MEDICAL EXPENSE - SPECIFIC ACTIVITY OR EVENT:

Church Mutual INSURANCE COMPANY

**POLICY NO.:** 0130923-02-735974

HEALTH MINISTRY AT THE CHURCH

EXCLUSION - DESIGNATED PROFESSIONAL SERVICES.
SCHEDULE OF EXCLUDED PROFESSIONAL SERVICES:

HEALTH MINISTRY AT THE CHURCH

EXCLUSION - EXCLUDED OPERATION(S).  DESCRIPTION OF OPERATIONS:

HEALTH MINISTRY AT THE CHURCH

**OTHER ENDORSEMENTS:**

NONE

## CRIME COVERAGE PART
## DECLARATIONS PAGE

**POLICY NO.:** 0130923-02-735974

**ITEM 1. DESCRIPTION OF PREMISES AND COVERAGES:**

*************************************************************************

PREMISES NO: 001 BUILDING NO: 001
CONSTRUCTION: JOISTED MASONRY
OCCUPANCY: CHURCH AND EDUCATION
LOCATION: 13545 AMERICAN COLONY BOULEVARD
TOWNSHIP NAME: FORT MYERS CO FPSA 2 COUNTY: LEE
CITY/STATE: FORT MYERS, FL

*************************************************************************

COVERAGE FORM: CHURCH THEFT OF MONEY AND SECURITIES

LIMIT OF INSURANCE: $12,000 DEDUCTIBLE: $100

SPECIAL COVERAGE DAYS:
CHRISTMAS, EASTER AND PALM SUNDAY

*************************************************************************

COVERAGE FORM: BLANKET BOND

LIMIT OF INSURANCE: $25,000 DEDUCTIBLE: FULL COVERAGE

**ITEM 2. ENDORSEMENTS:**

NONE

Church Mutual INSURANCE COMPANY

# PROFESSIONAL LIABILITY COVERAGE PART
# DECLARATIONS PAGE

**POLICY NO.:** 0130923-02-735974

**ITEM 1. COVERAGE DESCRIPTION:**

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| COUNSELING PROFESSIONAL LIABILITY | |
| EACH CLAIM | $ 1,000,000 |
| AGGREGATE | $ 3,000,000 |

SCHEDULE OF POSITIONS COVERED

"SCHEDULE OF POSITIONS COVERED" - "EMPLOYEES AND VOLUNTEERS ACTING UNDER YOUR DIRECTION AND CONTROL AND WITHIN THE SCOPE OF HIS OR HER DUTIES AS SUCH."

**ITEM 2. ENDORSEMENTS:**

NONE

Church Mutual INSURANCE COMPANY

# PROFESSIONAL LIABILITY COVERAGE PART
# CLAIMS MADE
# DECLARATIONS PAGE

**POLICY NO.:** 0130923-02-735974

**ITEM 1. COVERAGE DESCRIPTION:**

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| DIRECTORS, OFFICERS & TRUSTEES LIABILITY | |
| AGGREGATE | $ 250,000 |
| RETENTION: $1,000 | |
| EMPLOYMENT PRACTICES LIABILITY | |
| AGGREGATE | $ 250,000 |
| RETENTION: $5,000 | |

**ITEM 2. OTHER ENDORSEMENTS:**

| | |
|---|---|
| AFFILIATED ENTITY DISPUTE LEGAL DEFENSE COVERAGE ENDORSEMENT | |
| EACH WRONGFUL ACT | $ 25,000 |
| AGGREGATE | $ 50,000 |

**ITEM 3. RETROACTIVE DATE:**

DIRECTORS, OFFICERS & TRUSTEES LIABILITY COVERAGE DOES NOT APPLY TO INJURY THAT ARISES OUT OF A "WRONGFUL ACT" WHICH OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW.

RETROACTIVE DATE: 11/01/93

EMPLOYMENT PRACTICES LIABILITY COVERAGE DOES NOT APPLY TO INJURY THAT ARISES OUT OF A "WRONGFUL EMPLOYMENT PRACTICE" WHICH OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW.

RETROACTIVE DATE: 11/01/14

## HIRED AND NONOWNED AUTOMOBILE LIABILITY COVERAGE PART DECLARATIONS PAGE

**POLICY NO.:** 0130923-02-735974

**ITEM 1. COVERAGE DESCRIPTION:**

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| HIRED AND NONOWNED AUTOMOBILE LIABILITY COVERAGE RELIGIOUS INSTITUTIONS - EXCESS INSURANCE | |
| EACH OCCURRENCE | $ 1,000,000 |
| AGGREGATE | $ 3,000,000 |
| UNINSURED MOTORISTS COVERAGE - BODILY INJURY | |
| EACH OCCURRENCE | $ 1,000,000 |
| AGGREGATE | $ 3,000,000 |

**ITEM 2. ENDORSEMENTS:**

| | |
|---|---|
| MEDICAL EXPENSE COVERAGE - EXCESS INSURANCE | |
| ANY ONE PERSON | $ 10,000 |
| AGGREGATE | $ 25,000 |

POLICY NO.: 0130923-02-735974 11/01/14

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

PROPERTY COVERAGE PART
~~INLAND MARINE COVERAGE PART~~

**SCHEDULE**

The **Exception Covering Certain Fire Losses** (Paragraph **C)** applies to property located in the following state(s), if covered under the indicated Coverage Part:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
| | |
| | |
| | |
| | |
| | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other

Copyright, Church Mutual Insurance Company, 2008.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2007.

cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

Copyright, Church Mutual Insurance Company, 2008.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2007.

# MUTUAL AND COMMON POLICY CONDITIONS FORM

## MUTUAL POLICY CONDITIONS

This policy is issued by a mutual company having special regulations lawfully applicable to its organization, membership, policies, or contracts of insurance, of which the following shall apply to and form a part of this policy.

You are notified that by virtue of this policy, you are a member of the Church Mutual Insurance Company of Merrill, Wisconsin. You are entitled to vote either in person or by proxy at any and all ~~meetings of said company. The annual meetings are held in its Home Office in the city of Merrill,~~ Wisconsin, on the third Wednesday in March of each year at 10:00 a.m.

You shall participate in the return of unused premiums (dividends, if any) to the extent and on the conditions determined, fixed and declared by the board of directors in accordance with the law.

This policy is nonassessable. You are not subject to any contingent liability, nor liable to assessment.

IN WITNESS THEREOF, this company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized agent of this company at the agency shown in the Declarations Page except that this policy does not have to be countersigned if the law in the state where this policy applies does not require countersignature.

*Secretary*

*President*

## COMMON POLICY CONDITIONS

All coverage parts included in this policy are subject to the following conditions:

**A. CANCELLATION**

1. The first Named Insured shown in the Declarations Page may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

Copyright, Church Mutual Insurance Company, 1998.
Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1987.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro-rata. If the first Named Insured cancels, the refund may be less than pro-rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations Page is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. INSPECTIONS AND SURVEYS**

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports, or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service, or similar organization which makes insurance inspections, surveys, reports, or recommendations.

**E. PREMIUMS**

The first Named Insured shown in the Declarations Page:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Church Mutual Insurance Company, 1998.
Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1987.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under all Coverage Parts of the policy.

The following is added to the policy:

A. The premium shown in the Declarations Page was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

Copyright, Church Mutual Insurance Company, 1987.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1987.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FLORIDA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**PROPERTY COVERAGE PART**
**INLAND MARINE COVERAGE PART**
**CRIME COVERAGE PART**

A. Paragraph 2. of the CANCELLATION Common Policy Condition is replaced by the following:

**2. CANCELLATION FOR POLICIES IN EFFECT 90 DAYS OR LESS**

a. If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2) 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

(a) A material misstatement or misrepresentation; or

(b) A failure to comply with underwriting requirements established by the insurer.

b. However, Paragraph 2.a.(2) does not apply to a first Named Insured whose residential structure has been insured by us or an affiliated insurer for at least a five-year period immediately prior to the date of written notice. Instead, refer to Paragraph C.7.b.(4) of this endorsement.

c. We may not cancel:

(1) On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

(2) On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole or clay shrinkage claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may cancel this policy if:

(a) The total of such property insurance claim payments for this policy exceeds the current policy limits of coverage for property damage; or

(b) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

(3) Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

B. Paragraph 5. of the CANCELLATION Common Policy Condition is replaced by the following:

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in

Copyright, Church Mutual Insurance Company, 2008.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© Insurance Services Office, Inc., 2008.

securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

C. The following is added to the CANCELLATION Common Policy Condition:

7. **CANCELLATION FOR POLICIES IN EFFECT FOR MORE THAN 90 DAYS**

a. If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) The policy was obtained by a material misstatement;

(3) There has been a failure to comply with underwriting requirements established by us within 90 days of the effective date of coverage;

(4) There has been a substantial change in the risk covered by the policy;

(5) The cancellation is for all insureds under such policies for a given class of insureds;

(6) On the basis of property insurance claims that are the result of an act of God, if we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

(7) On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, or on the basis of the risk associated with the occurrence of such a claim, if:

(a) The total of such property insurance claim payments for this policy exceeds the current policy limits of coverage for property damage; or

(b) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based; or

(8) On the basis of a single property insurance claim which is the result of water damage, if we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

b. If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

(1) 10 days before the effective date of cancellation if cancellation is for nonpayment of premium; or

(2) 45 days before the effective date of cancellation if:

(a) Cancellation is for one or more of the reasons stated in Paragraphs 7.a.(2) through 7.a.(8) above; and

(b) This policy does not cover a residential structure or its contents; or

(3) 100 days before the effective date of cancellation if:

(a) Cancellation is for one or more of the reasons stated in Paragraphs 7.a.(2) through 7.a.(8) above; and

(b) This policy covers a residential structure or its contents, unless Paragraph 7.b.(4) applies.

However, if cancellation is to become effective between June 1 and November 30, we will mail or deliver to the first Named Insured written notice of cancellation at least 100 days prior to the effective date of cancellation or by June 1, whichever is earlier. Therefore, when cancellation is to become effective between September 9 and November 30, we will mail or deliver to the Named Insured written notice of cancellation by June 1.

Copyright, Church Mutual Insurance Company, 2008.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© Insurance Services Office, Inc., 2008.

(4) 180 days before the effective date of cancellation if:

    (a) Cancellation is for one or more of the reasons stated in Paragraphs 7.a.(2) through 7.a.(8) above; and

    (b) The first Named Insured's residential structure has been insured by us or an affiliated insurer for at least a five-year period immediately prior to the date of the written notice.

D. The following is added:

**NONRENEWAL**

1. If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least:

    a. 45 days prior to the expiration of the policy if this policy does not cover a residential structure or its contents; or

    b. 100 days prior to the expiration of the policy if this policy covers a residential structure or its contents, unless Subsection c. or d. applies.

    c. If this policy covers a residential structure or its contents and nonrenewal is to become effective between June 1 and November 30, we will mail or deliver to the first Named Insured written notice of nonrenewal at least 100 days prior to the effective date of nonrenewal or by June 1, whichever is earlier. Therefore, when nonrenewal is to become effective between September 9 and November 30, we will mail or deliver to the first Named Insured written notice of nonrenewal by June 1. If nonrenewal is due to a revision to this policy's coverage for sinkhole losses or catastrophic ground cover collapse pursuant to the 2007 changes in the Florida Insurance Laws concerning such coverage, then this subsection c. does not apply. Therefore, in such a case, Subsection b. or d. applies.

    d. 180 days prior to the effective date of nonrenewal if the first Named Insured's residential structure has been insured by us or an affiliated insurer for at least a five-year period immediately prior to the date of the written notice.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. We may not refuse to renew this policy:

    a. On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

    b. On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole or clay shrinkage claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may refuse to renew this policy if:

        (1) The total of such property insurance claim payments for this policy exceeds the current policy limits of coverage for property damage; or

        (2) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

    c. Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

E. Limitations On Cancellation And Nonrenewal In The Event Of Hurricane Or Wind Loss - Residential Property:

1. The following provisions apply to a policy covering a residential structure or its contents, if such property has sustained damage as a result of a hurricane or windstorm that is the subject of a declaration of emergency by the Governor and filing of an order by the Commissioner of Insurance Regulation:

    a. Except as provided in Paragraph E.1.b., we may not cancel or nonrenew the policy until at least 90 days after repairs to the residential structure or its contents have

Copyright, Church Mutual Insurance Company, 2008.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© Insurance Services Office, Inc., 2008.

been substantially completed so that it is restored to the extent that it is insurable by another insurer writing policies in Florida. If we elect to not renew the policy, we will provide at least 100 days' notice that we intend to nonrenew 90 days after the substantial completion of repairs.

b. We may cancel or nonrenew the policy prior to restoration of the structure or its contents, for any of the following reasons:

(1) Nonpayment of premium;

(2) Material misstatement or fraud related to the claim;

(3) We determine that you have unreasonably caused a delay in the repair of the structure; or

(4) We have paid the policy limits.

If we cancel or nonrenew for nonpayment of premium, we will give you 10 days' notice. If we cancel or nonrenew for a reason listed in Paragraph b.(2), b.(3) or b.(4), we will give you 45 days' notice.

2. With respect to a policy covering a residential structure or its contents, any cancellation or nonrenewal that would otherwise take effect during the duration of a hurricane will not take effect until the end of the duration of such hurricane, unless a replacement policy has been obtained and is in effect for a claim occurring during the duration of the hurricane. We may collect premium for the period of time for which the policy period is extended.

3. With respect to Paragraph E.2., a hurricane is a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service (hereafter referred to as NHC). The hurricane occurrence begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the NHC, and ends 72 hours after the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the NHC.

Copyright, Church Mutual Insurance Company, 2008.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© Insurance Services Office, Inc., 2008.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

GENERAL LIABILITY COVERAGE PART
HIRED AND NONOWNED AUTOMOBILE LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism."

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal injury," "advertising injury", or "injury" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Copyright, Church Mutual Insurance Company, 2008.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2007.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FLORIDA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

GENERAL LIABILITY COVERAGE PART
HIRED AND NONOWNED AUTOMOBILE LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation of Policies in Effect:**

**a. For 90 Days or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2) 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

(a) A material misstatement or misrepresentation; or

(b) A failure to comply with the underwriting requirements established by the insurer.

**b. For More Than 90 Days**

If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) The policy was obtained by a material misstatement;

(3) Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

(4) A substantial change in the risk covered by the policy; or

(5) The cancellation is for all insureds under such policies for a given class of insureds.

If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

(a) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(b) 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph **2.b.**

**B.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

Copyright, Church Mutual Insurance Company, 2008.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2007.

C. The following is added and supersedes any other provision to the contrary:

NONRENEWAL

1. If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least 45 days prior to the expiration of this policy.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

Copyright, Church Mutual Insurance Company, 2008.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2007.

# PROPERTY CONDITIONS

This Property Coverage Part is subject to the Common Policy Conditions, any other conditions in any Property Coverage Forms, and the following conditions.

Other words and phrases that appear in quotation marks have special meaning. **Refer to Paragraph M - Definition.**

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you relating to it. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. LOSS CONDITIONS**

1. Abandonment.

   There can be no abandonment of any property to us.

2. Appraisal.

   If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

3. Duties in the Event of Loss or Damage.

a. You must see that the following are done in the event of loss or damage to Covered Property:

   (1) Notify the police if a law may have been broken.

   (2) Give us prompt notice of the loss or damage. Include a description of the property involved.

   (3) As soon as possible, give us a description of how, when, and where the loss or damage occurred.

   (4) Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

   (5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values, and amount of loss claimed.

Copyright, Church Mutual Insurance Company, 2001.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

4. Loss Payment.

a. In the event of loss or damage covered by this Coverage Part, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property, subject to b. below;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of comparable kind and quality, subject to b. below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

b. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

c. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

d. We will not pay you more than your financial interest in the Covered Property.

e. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payment will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part; and:

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

5. Recovered Property.

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

6. Vacancy.

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage, we will:

a. Not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(1) Vandalism;

Copyright, Church Mutual Insurance Company, 2001.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000.

(2) Sprinkler leakage, unless you have protected the system against freezing;

(3) Building glass breakage;

(4) Water damage;

(5) Theft; or

(6) Attempted theft.

b. Reduce the amount we would otherwise pay for the loss or damage by 15%.

This Vacancy Condition does not apply to any dwelling of four families or less that is intended for employee occupancy.

A building is vacant when it does not contain enough of your personal property to conduct customary operations. Buildings in the course of construction are not considered vacant.

7. Valuation.

a. Replacement Cost. If Replacement Cost is shown in the Declarations Page as applicable to Covered Property, we will determine the value of Covered Property in the event of loss or damage as follows:

(1) At Replacement Cost (without deduction for depreciation) as of the time of loss or damage, except as provided under c. below.

(2) You may make a claim for loss or damage covered by this insurance on an "Actual Cash Value" basis instead of on a Replacement Cost basis. In the event you elect to have loss or damage settled on an "Actual Cash Value" basis:

(a) We will then determine the value of Covered Property on an "Actual Cash Value" basis when applying the Coinsurance Condition;

(b) You may still make a claim on a Replacement Cost basis if you notify us of your intent to do so within 180 days after the date of the loss or damage.

(3) We will not pay on a Replacement Cost basis for any loss or damage:

(a) Until the lost or damaged property is actually repaired or replaced; and

(b) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

(4) We will not pay more for loss or damage on a Replacement Cost basis than the least of:

(a) The Limit of Insurance applicable to the lost or damaged property;

(b) The cost to replace "on the same premises" the lost or damaged property with other property:

1) Of comparable material and quality; and

2) Used for the same purpose; or

(c) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

The term "on the same premises" is a limitation on the amount of loss or damage we will pay. It does not require you to replace lost or damaged property at the same site.

(5) The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

b. "Actual Cash Value." If "Actual Cash Value" is shown in the Declarations Page as applicable to Covered Property, we will determine the value of Covered Property in the event of loss or damage at "Actual Cash Value" as of the time of loss or damage except as provided under c. below.

c. We will determine the value of the below Covered Property as of the time of loss or damage as follows:

(1) Glass at the minimum cost of replacement with safety glazing material if required by law;

Copyright, Church Mutual Insurance Company, 2001.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000.

(2) Tenant's improvements and betterments at:

(a) "Actual Cash Value" of the lost or damaged property if you make repairs promptly;

(b) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

1) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

2) Divide the amount determined in 1) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(c) Nothing if others pay for repairs or replacement.

(3) Manuscripts and valuable papers and records, including those which exist on electronic or magnetic media (other than prepackaged software programs) at the cost of:

(a) Blank materials for reproducing the manuscripts and valuable papers and records; and

(b) Labor to transcribe or copy the manuscripts and valuable papers and records when there is a duplicate.

(4) The following applies to building property that is subject to "Actual Cash Value":

(a) If the Limit of Insurance for building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at the actual cash value.

1) Awnings or floor coverings;

2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

3) Outdoor equipment or furniture.

(5) Personal property that is a work of art, antique or rare article at Market Value. This does not increase the amount of the limitation on works of art, antiques and rare articles. (Refer to the applicable Causes of Loss Form.)

(6) Property covered under the Newly Acquired Property Coverage Extension at "Actual Cash Value";

(7) Property of Others at replacement cost.

(8) Business Personal Property of Your Clergy covered under the Coverage Extension at replacement cost.

D. COINSURANCE

1. If a Coinsurance percentage is shown in the Declarations Page, the following condition applies:

a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations Page is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

(2) Divide the Limit of Insurance of the property by the figure determined in Step (1);

Copyright, Church Mutual Insurance Company, 2001.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000.

(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

(4) Subtract the deductible from the figure determined in Step (3).

We will pay the amount determined in Step (4) or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

Example No. 1 (Underinsurance):

When: The value of the property is $250,000
The Coinsurance percentage for it is 80%
The Limit of Insurance for it is $100,000
The Deductible is $250
The amount of loss is $40,000

Step (1): $250,000 x 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements).

Step (2): $100,000 ÷ $200,000 = .50.

Step (3): $40,000 x .50 = $20,000.

Step (4): $20,000 - $250 = $19,750.

We will pay no more than $19,750. The remaining $20,250 is not covered.

Example No. 2 (Adequate Insurance):

When: The value of the property is $250,000
The Coinsurance percentage for it is 80%
The Limit of Insurance for it is $200,000
The Deductible is $250
The amount of loss is $40,000

The minimum amount of insurance to meet your coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the limit of insurance in this example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

b. If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

Example No. 3:

When: The value of the property is:
Building at Location No. 1 $ 75,000
Building at Location No. 2 $100,000
Personal Property at Location No. 2 $ 75,000
$250,000

The Coinsurance percentage for it is 90%
The Limit of Insurance for Buildings and Personal Property at Location Nos. 1 and 2 is $180,000

The Deductible is $ 1,000

The amount of loss is:
Building at Location No. 2 $ 30,000
Personal Property at Location No. 2 $ 20,000
$ 50,000

Step (1): $250,000 x 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below).

Step (2): $180,000 ÷ $225,000 = .80.

Step (3): $50,000 x .80 = $40,000.

Step (4): $40,000 - $1,000 = $39,000.

We will pay no more than $39,000. The remaining $11,000 is not covered.

If a loss to any covered dwelling of four families or less is valued at "Actual Cash Value", this Coinsurance Condition does not apply to that loss. However, Paragraph C.7.c.(4) applies only if the Limit of Insurance for that dwelling is at least 80% of "Actual Cash Value."

E. **INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the

Copyright, Church Mutual Insurance Company, 2001.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000.

actual amount of the loss or damage.

F. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

a. During the policy period shown in the Declarations Page; and

b. Within the coverage territory.

2. The coverage territory is:

a. The United States of America (including its territories and possessions);

b. Puerto Rico; and

c. Canada.

G. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

H. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

I. OTHER INSURANCE

1. You may have other insurance subject to the same plan, terms, conditions, and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

J. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:

K. TRANSFERS OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

a. Someone insured by this insurance;

b. A business firm:

(1) Owned or controlled by you; or

(2) That owns or controls you; or

c. Your tenant.

This will not restrict your insurance.

L. MORTGAGEHOLDERS

1. The term "mortgageholder" includes trustee.

2. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations Page in their order of precedence, as interests may appear.

3. The mortgageholder has the right to receive loss payments even if the mortgageholder has started foreclosure or similar action on the building or structure.

Copyright, Church Mutual Insurance Company, 2001.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000.

4. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

   a. Pays any premium due under this Coverage Part at our request if you have failed to do so;

   b. Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   c. Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

   All of the terms of this Coverage Part will then apply directly to the mortgageholder.

5. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

   a. The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

   b. The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

   At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

6. If we cancel this policy, we will give written notice to the mortgageholder at least:

   a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

7. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**M. DEFINITION**

1. "Actual Cash Value" means the amount it would cost to repair or replace Covered Property with material of comparable kind and quality, less allowance for deterioration and depreciation, including obsolescence.

Copyright, Church Mutual Insurance Company, 2001.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## IDENTITY RECOVERY COVERAGE FORM

## IDENTITY THEFT CASE MANAGEMENT SERVICE AND EXPENSE REIMBURSEMENT

The following is added to the Property Coverage Part:

### IDENTITY RECOVERY COVERAGE

We will provide the Case Management Service and Expense Reimbursement Coverage indicated below if all of the following requirements are met:

1. There has been an "identity theft" involving the personal identity of an "identity recovery insured" as defined in this coverage form; and
2. Such "identity theft" is first discovered by the "identity recovery insured" during the period for which this Identity Recovery Coverage is applicable; and
3. Such "identity theft" is reported to us within 60 days after it is first discovered by the "identity recovery insured."

If all three of the requirements listed above have been met, then we will provide the following to the "identity recovery insured":

1. Case Management Service

   Services of an "identity recovery case manager" as needed to respond to the "identity theft"; and

2. Expense Reimbursement

   Reimbursement of necessary and reasonable "identity recovery expenses" incurred as a direct result of the "identity theft."

This coverage is additional insurance.

### EXCLUSIONS

The following additional exclusions apply to this coverage:

We do not cover loss or expense arising from any of the following.

1. The theft of a professional or business identity.
2. Any fraudulent, dishonest or criminal act by an "identity recovery insured" or any person aiding or abetting an "identity recovery insured", or by any authorized representative of an "identity recovery insured", whether acting alone or in collusion with others. In all these cases, it does not matter whether the individual is acting alone or in collusion with others. However, this exclusion shall not apply to the interests of an "identity recovery insured" who has no knowledge of or involvement in such fraud, dishonesty or criminal act.
3. An "identity theft" that is not reported in writing to the police.

### LIMITS

Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the amount of limit available for Expense Reimbursement coverage.

Expense Reimbursement coverage is subject to a limit of $15,000 annual aggregate per "identity recovery insured." Regardless of the number of claims, this limit is the most we will pay for the total of all loss or expense arising out of all "identity thefts" to any one "identity recovery insured" which are first discovered by the "identity recovery insured" during a 12-month period starting with the beginning of the present annual coverage form period. If an "identity theft" is first discovered in one coverage form period and continues into other coverage form periods, all loss and expense arising from such "identity theft" will be subject to the aggregate limit applicable to the coverage form period when the "identity theft" was first discovered.

Legal costs as provided under Item d. of the definition of "identity recovery expenses" are part of, and not in addition to, the Expense Reimbursement coverage limit.

Item e. (Lost Wages) and Item f. (Child and Elder Care Expenses) of the definition of "identity recovery expenses" are jointly subject to a sublimit of $5,000. This sublimit is part of, and not in addition to, the

Copyright, Church Mutual Insurance Company, 2008

Expense Reimbursement coverage limit. Coverage is limited to wages lost and expenses incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured."

Item g. (Mental Health Counseling) of the definition of "identity recovery expenses" is subject to a sublimit of $1,000. This sublimit is part of, and not in addition to, the Expense Reimbursement coverage limit. Coverage is limited to counseling that takes place within 12 months after the first discovery of the "identity theft" by the "identity recovery insured."

Item h. (Miscellaneous Unnamed Costs) of the definition of "identity recovery expenses" is subject to a sublimit of $1,000. This sublimit is part of, and not in addition to, the Expense Reimbursement coverage limit. Coverage is limited to costs incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured."

**DEDUCTIBLE**

Case Management Service is not subject to a deductible.

Expense Reimbursement coverage is not subject to a deductible.

**ADDITIONAL CONDITIONS**

The following additional conditions apply in addition to the Common Policy Conditions and the Property Conditions:

A.  Assistance and Claims

For assistance, the "identity recovery insured" should call the toll-free number provided.

The toll-free number can provide the "identity recovery insured" with:

1.  Information and advice on how to respond to a possible "identity theft"; and

2.  Instructions on how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an "identity recovery insured" prior to a determination that a covered "identity theft" has occurred. Our provision of such services is not an admission of liability under the coverage form. We reserve the right to deny

further coverage or service if, after investigation, we determine that a covered "identity theft" has not occurred.

As respects Expense Reimbursement Coverage, the "identity recovery insured" must send to us, within 60 days after our request, receipts, bills or other records that support his or her claim for "identity recovery expenses."

B.  Services

The following conditions apply as respects any services provided by us or our designees to any "identity recovery insured" under this endorsement:

1.  Our ability to provide helpful services in the event of an "identity theft" depends on the cooperation, permission and assistance of the "identity recovery insured."

2.  All services may not be available or applicable to all individuals. For example, "identity recovery insureds" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

3.  We do not warrant or guarantee that our services will end or eliminate all problems associated with an "identity theft" or prevent future "identity thefts."

**DEFINITIONS**

With respect to the provisions of this coverage form only, the following definitions are added:

1.  "Identity Recovery Case Manager" means one or more individuals assigned by us to assist an "identity recovery insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "identity recovery insured." This includes, with the permission and cooperation of the "identity recovery insured," written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

2.  "Identity Recovery Expenses" means any of the following when they are reasonable and

Copyright, Church Mutual Insurance Company, 2008

necessary expenses that are incurred as a direct result of an "identity theft":

a. Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft."

b. Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of your efforts to report an "identity theft" or amend or rectify records as to your true name or identity as a result of an "identity theft."

c. Costs for credit reports from established credit bureaus.

d. Costs for an attorney approved by us for the following.

(1) The defense of any civil suit brought against an "identity recovery insured."

(2) The removal of any civil judgment wrongfully entered against an "identity recovery insured."

(3) Legal assistance for an "identity recovery insured" at an audit or hearing by a governmental agency.

(4) Legal assistance in challenging the accuracy of the "identity recovery insured's" consumer credit report.

(5) The defense of any criminal charges brought against an "identity recovery insured" arising from the actions of a third party using the personal identity of the "identity recovery insured."

e. Actual lost wages of the "identity recovery insured" for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

f. Actual costs for supervision of children or elderly or infirm relatives or dependants of the "identity recovery insured" during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured."

g. Actual costs for counseling from a licensed mental health professional. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured."

h. Any other reasonable costs necessarily incurred by an "identity recovery insured" as a direct result of the "identity theft." Such costs include:

(1) Costs by the "identity recovery insured" to recover control over his or her personal identity.

(2) Deductibles or service fees from financial institutions.

Such costs do not include:

(3) Costs to avoid, prevent or detect "identity theft" or other loss.

(4) Monies lost or stolen.

(5) Costs that are restricted or excluded elsewhere in this endorsement or coverage form.

3. "Identity Recovery Insured" means the following:

a. When the entity insured under this coverage form is a religious institution, school or college, camp, or senior living facility the "identity recovery insureds" are:

(1) All clergy employed by such entity; and

(2) The religious institution business administrator, the head school or college administrator, camp director, or senior living administrator of such entity.

b. "Identity recovery insured" also includes residents of the household of anyone qualifying as an "identity recovery insured" under Section a. above, provided such individuals are:

Copyright, Church Mutual Insurance Company, 2008

(1)  Relatives of the person qualifying as an "identity recovery insured" under Section a. above ; or

(2)  Under the age of 21 and in the care of the person qualifying as an "identity recovery insured" under Section a. above.

c.  When the entity insured under this coverage form is not a religious institution, school or college, camp, or senior living facility, then the definition of "identity recovery insured" depends on the ownership structure of the entity as follows:

(1)  When the entity insured under this coverage form is a sole proprietorship, the "identity recovery insured" is the individual person who is the sole proprietor of the insured entity.

(2)  When the entity insured under this coverage form is a partnership, the "identity recovery insureds" are the current partners.

(3)  When the entity insured under this coverage form is a corporation or other organization, the "identity recovery insureds" are all individuals having an ownership position of 20% or more of the insured entity. However, if and only if, there is no one who has such an ownership position, then the "identity recovery insured" shall be the executive director of the insured entity.

An "identity recovery insured" must always be an individual person. The entity insured under this coverage form is not an "identity recovery insured."

4.  "Identity Theft" means the fraudulent use of the social security number or other method of identifying an "identity recovery insured." This includes fraudulently using the personal identity of an "identity recovery insured" to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

All other provisions of this coverage form apply.

Copyright, Church Mutual Insurance Company, 2008

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## WATER EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the Property Coverage Part. The following is added to the **CAUSES OF LOSS – SPECIAL FORM.**

Exclusion g. of Paragraph **B. EXCLUSIONS** is replaced by the following:

**g. Water.**

(1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

(2) Mudslide or mudflow;

(3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment except as provided under G. Additional Coverage – Back Up Through Sewers and Drains.

(4) Water under the ground surface pressing on, or flowing or seeping through:

a. Foundations, walls, floors or paved surfaces;

b. Basements, whether paved or not; or

c. Doors, windows or other openings; or

(5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph 1., 3., or 4. or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs g. (1) through g. (5), is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs g. (1) through g. (5), results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

Copyright, Church Mutual Insurance Company, 2008.
Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2008.

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

**For Religious Institutions and Related Properties**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations Page. The words "we," "us," and "our" refer to Church Mutual Insurance Company. Other words and phrases that appear in quotation marks have special meaning. **Refer to Paragraph I - DEFINITIONS.**

## A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations Page caused by or resulting from any Covered Cause of Loss.

1. Covered Property.

   Covered Property, as used in this Coverage Form, means the type of property described in this section, A. 1., and limited in A. 2., Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

   a. Building, meaning the building or structure described in the Declarations Page, including:

      (1) Signs on or within 100 feet of the described premises.

      (2) Signs away from premises.

      (3) Completed additions.

      (4) Glass windows and their protective covering; including stained glass windows.

      (5) Electric sound amplification equipment and accessories.

      (6) Fixtures, including outdoor fixtures.

      (7) Permanently installed:

         (a) Machinery; and

         (b) Equipment.

      (8) Fixed:

         (a) Seats;

         (b) Desks; and

         (c) Tables.

      (9) Steeples, pews, baptistries, pulpits, railings, altars, lecterns, clocks, bells, and organs.

      (10) The following personal property owned by you that is used to maintain or service the building or structure or its premises:

         (a) Fire extinguishing equipment;

         (b) Outdoor furniture;

         (c) Floor coverings fastened to the floor; and

         (d) Appliances used for refrigerating, ventilating, cooking, dishwashing, or laundering.

      (11) If not covered by other insurance:

         (a) Alterations and repairs to the building or structure; and

         (b) Materials, equipment, supplies, and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations, or repairs to the building or structure.

   b. Your Personal Property (not otherwise insured under building) located in or on the building described in the Declarations Page or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following:

      (1) Furniture and fixtures.

      (2) Machinery and equipment.

      (3) All other personal property owned by you and used in your operations.

      (4) Your use interest as tenant in improvements and betterments.

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2001.

Improvements and betterments are fixtures, alterations, installations, or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove.

(5) Leased personal property for which you have a written contractual responsibility to insure. The contractual responsibility must have been established prior to any direct physical loss of or damage to the personal property.

2. Property Not Covered.

Covered Property does not include:

a. Accounts, bills, currency, deeds, evidences of debt, money, notes, or securities.

b. Animals.

c. Bridges, roadways, walks, patios, or other paved surfaces.

d. The cost of excavations, grading, backfilling, or filling.

e. Foundations of buildings, structures, machinery, or boilers if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground, if there is no basement.

f. Water, land (including land on which the property is located), and growing crops.

g. Bulkheads, pilings, piers, wharves, or docks.

h. Property that is covered under another Coverage Form of this policy or any other policy in which it is more specifically described.

i. Outdoor fences and retaining walls except as provided in the Coverage Extensions.

j. Underground pipes, flues, or drains.

k. The cost to research, replace, or restore the information on valuable papers and records, including those which exist on electronic or magnetic media, except as provided in the Coverage Extensions.

l. Vehicles or self-propelled machines (including automobiles, watercraft, and aircraft) that:

(1) Are operated principally away from the described premises; or

(2) Are licensed for use on public roads.

This Paragraph l. does not apply to your canoes or rowboats when on described premises.

m. The following property while outside of buildings:

(1) Grain, hay, straw, or other crops.

(2) Radio, television, satellite dish type, or other antennas, including their lead-in wiring, masts, or towers, except as provided in the Coverage Extensions.

(3) Trees, lawns, plants, or shrubs, except as provided in the Coverage Extensions.

## B. DEDUCTIBLE

In any one occurrence of covered loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

Example No. 1:

This example assumes there is no coinsurance penalty.

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
©ISO Properties, Inc., 2001.

Deductible: $250

Limit of Insurance - Bldg. 1: $60,000
Limit of Insurance - Bldg. 2: $80,000

Loss to Bldg. 1: $60,100
Loss to Bldg. 2: $90,000

The amount of loss to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Bldg. 1:

$60,100
- 250
$59,850 Loss Payable - Bldg. 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Bldg. 2. Loss payable for Bldg. 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:
$59,850 + $80,000 = $139,850

Example No. 2:

This example, too, assumes there is no coinsurance penalty.

The Deductible and Limits of Insurance are the same as those in Example No. 1.

Loss to Bldg. 1: $70,000 (exceeds Limit of Insurance plus Deductible)
Loss to Bldg. 2: $90,000 (exceeds Limit of Insurance plus Deductible)

Loss Payable - Bldg. 1: $60,000 (Limit of Insurance)
Loss Payable - Bldg. 2: $80,000 (Limit of Insurance)
Total Amount of Loss Payable: $140,000

**C. LIMITS OF INSURANCE**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations Page.

**D. COVERED CAUSES OF LOSS**

See the applicable Causes of Loss Form as shown in the Declarations Page.

**E. EXCLUSIONS AND LIMITATIONS**

See the applicable Causes of Loss Form as shown in the Declarations Page.

**F. COVERAGE EXTENSIONS**

Each of the following Coverage Extensions are additional insurance. The Coinsurance Condition does not apply to these Extensions.

1. Newly Constructed Buildings.

   a. You may extend the insurance that applies to building to apply to:

      (1) Your new buildings while being built in the United States of America, Puerto Rico, or Canada.

      (2) Your additions to buildings:

         (a) Covered by the Building and Personal Property Coverage Form; and

         (b) Only if the addition is under construction.

   b. Insurance under this Extension for newly constructed building will end when any of the following first occurs:

      (1) This policy expires;

      (2) 180 days expire after you begin to construct the property; or

      (3) You report values to us.

   We will charge you additional premium for values reported from the date construction begins. The most we will pay for loss or damage under this Extension is $1,000,000, unless a higher limit is shown on the Declarations Page, for any one occurrence.

2. Newly Acquired Buildings and Newly Acquired Personal Property.

   a. You may extend the insurance that applies to building and personal property to apply to any building and personal property you acquire that is located (other than at described premises) in the United States of America, Puerto Rico, or Canada. The building and personal

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2001.

property must be owned by you and intended for similar use as the building and personal property described in the Declarations Page.

b. Insurance under this Extension for newly acquired building and personal property will end when any of the following first occurs:

(1) This policy expires;

(2) 180 days expire after you acquire the building or the personal property located therein; or

(3) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The most we will pay for loss or damage under this Extension is $1,000,000, unless a higher limit is shown on the Declarations Page, for any one occurrence.

3. Personal Property of Others.

a. You may extend the insurance that applies to your personal property to apply to:

(1) Personal property of your officers, trustees, employees, members, and guests; and

(2) Personal property of others in your care, custody, or control.

b. This Extension applies only when the personal property is at the premises described in the Declarations Page.

c. This Extension does not apply:

(1) To personal property that is located in dwelling or living quarters.

(2) To personal tools and equipment of others.

(3) To business and other personal property of your clergy.

(4) If other insurance covers the same loss or damage, except we will pay for the amount of loss or damage we cover in excess of the amount due from that other insurance including

any deductible. We will not pay the amount due from that other insurance.

d. Our payment for loss of or damage to personal property of others:

(1) Will only be for the account of the owner of the property.

The most we will pay for all loss or damage under this Extension is $5,000, unless a higher limit is shown on the Declarations Page, for any one occurrence.

4. Business Personal Property of Your Clergy.

a. You may extend the insurance that applies to your personal property to apply to business personal property of your clergy.

b. This Extension applies when business personal property of your clergy is at or away from the premises described in the Declarations Page.

c. This Extension does not apply if other insurance covers the same loss or damage except we will pay for the amount of loss or damage we cover in excess of the amount due from that other insurance including any deductible. We will not pay the amount due from that other insurance.

d. Our payment for loss of or damage to business personal property of your clergy will only be for the account of the owner of the property.

The most we will pay for all loss or damage under this Extension is $10,000, unless a higher limit is shown on the Declarations Page, for any one occurrence.

5. Personal Tools and Equipment of Others.

a. You may extend the insurance that applies to your personal property to apply to:

(1) Personal tools and equipment of your volunteers, officers, trustees, employees, members, and guests; and

(2) Personal tools and equipment of others in your care, custody, or control.

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2001.

b. This Extension applies only when the personal tools and equipment is used for the construction, renovation, or repair of the described premises in the Declarations Page.

c. This Extension does not apply:

(1) To tools and equipment that are located in dwelling or living quarters.

(2) If other insurance covers the same loss or damage, except we will pay for the amount of loss or damage we cover in excess of the amount due from that other insurance, including any deductible. We will not pay the amount due from that other insurance.

d. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

The most we will pay for all loss or damage under this Extension is $5,000 for any one occurrence.

6. Valuable Papers and Records - Cost of Research.

You may extend the insurance that applies to your personal property to apply to your costs necessarily incurred to research, replace, or restore the lost information on lost or damaged valuable papers and records, including those which exist on electronic or magnetic media, for which duplicates do not exist.

The most we will pay under this Extension is $10,000, unless a higher limit is shown on the Declarations Page, for any one occurrence.

7. Property Off Premises.

You may extend the insurance that applies to Covered Property to apply to:

a. Your Covered Property that is temporarily (not to exceed 180 days) removed from the premises described in the Declarations Page.

b. Your Covered Property in transit more than 100 feet from the premises described in the Declarations Page. We do not cover any loss or damage caused by or resulting from any transporting vehicle's collision with the roadbed.

This Extension applies to Covered Property anywhere in the world.

The most we will pay for loss or damage under this Extension is $25,000, unless a higher limit is shown on the Declarations Page, for any one occurrence.

8. Outdoor Trees, Lawns, Plants, or Shrubs.

You may extend your insurance to cover loss or damage to outdoor trees, lawns, plants or shrubs at the described premises. Loss or damage includes debris removal expense and must be caused by or result from any of the following Causes of Loss:

a. Fire.

b. Lightning.

c. Explosion.

d. Riot.

e. Civil Commotion.

f. Aircraft.

g. Theft.

h. Vandalism.

i. Vehicles, except loss or damage:

(1) Caused by or resulting from maintenance, construction, or repairs.

(2) Which is cumulative, occurring over a period of days, weeks, or months.

The most we will pay for loss or damage to any one tree, lawn, plant, or shrub is $500, unless a higher limit is shown on the Declarations Page. The most we will pay for all loss or damage under this Extension is $5,000, unless a higher limit is shown on the Declarations Page, for any one occurrence.

9. Structures on Premises.

You may extend the insurance that applies to your buildings or personal property to apply to permanent structures owned by you. The permanent structures must be located on the premises described in the Declarations Page and be separated from buildings by clear space.

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2001.

a. Structures on Premises include:

(1) Crosses, statuary, and similar religious structures;

(2) Maintenance, service or storage buildings and their contents;

(3) Fences and retaining walls;

(4) Pavilions and similar shelters;

(5) Light bearing standards or poles; and

(6) Radio, television, satellite dish type or other antennas (and their lead-in wiring, masts or towers) even if not separated from buildings by clear space.

b. Structures on Premises does not include:

(1) Any structure located on cemetery premises;

(2) Any structure that pertains to the occupancy of a dwelling;

(3) Any building (other than maintenance, service, or storage buildings and their contents); or

(4) Any outside signs.

The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown on the Declarations Page, for any one occurrence.

10. Dwelling.

You may extend the insurance that applies to any dwelling occupied by not more than four families and described in the Declarations Page to apply to that dwelling's:

a. "Related private structures."

b. "Property in the dwelling."

c. "Rental value."

d. "Additional living expense."

The most we will pay for loss or damage to dwelling related private structures under this Extension is up to 10% of the Limit of Insurance shown for that dwelling in the Declarations Page.

The most we will pay for loss or damage to property in the dwelling under this Extension is up to 5% of the Limit of Insurance shown for that dwelling in the Declarations Page.

The most we will pay for loss of dwelling rental value under this Extension is up to 10% of the Limit of Insurance shown for that dwelling in the Declarations Page.

The most we will pay for the cost of additional living expense under this Extension is up to 10% of the Limit of Insurance shown for that dwelling in the Declarations Page.

As respects this Extension, when blanket coverage applies to a described dwelling, we will determine that dwelling's Limit of Insurance at the time of loss or damage as the replacement value of the dwelling.

## G. ADDITIONAL COVERAGES

Each of the following Additional Coverages provides an additional amount of insurance unless otherwise indicated.

1. Debris Removal

a. Subject to Paragraphs c. and d., we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

b. Debris Removal does not apply to costs to:

(1) Extract "pollutants" from land or water; or

(2) Remove, restore, or replace polluted land or water.

c. Subject to the exceptions in Paragraph d., the following provisions apply:

(1) The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

(2) Subject to (1) above, the amount we will pay for debris removal expense is limited to 25% of the sum of the

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2001.

deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

d.  We will pay an additional $10,000, unless a higher limit is shown on the Declarations Page, for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

(1)  The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

(2)  The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if d. (1) and/or d. (2) apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000, unless a higher limit is shown on the Declarations Page.

e.  Examples

The following examples assume that there is no coinsurance penalty.

Example #1

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of Loss | $50,000 |
| Amount of Loss Payable | $49,500 |
| | ($50,000-$500) |
| Debris Removal Expense | $10,000 |
| Debris Removal Expense Payable | $10,000 |
| ($10,000 is 20% of $50,000) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible.  The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance.  Therefore, the full amount of debris removal expense

is payable in accordance with the terms of Paragraph c.

Example #2

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of Loss | $80,000 |
| Amount of Loss Payable | $79,500 |
| | ($80,000-$500) |
| Debris Removal Expense | $30,000 |
| Debris Removal Expense Payable | |
| Basic Amount | $10,500 |
| Additional Amount | $10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph c. is calculated as follows: $80,000 ($79,500 + $500) X .25 = $20,000; capped at $10,500.  The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph d., because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000).  The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph d.  Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

2.  Preservation of Property.

If it is necessary to move Covered Property from the premises described in the Declarations Page to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

a.  While it is being moved or while temporarily stored at another location; and

b.  Only if the loss or damage occurs within 30 days after the property is first moved.

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2001.

This is not an additional amount of insurance.

3. Fire Department Service Charge.

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $25,000, unless a higher limit is shown on the Declarations Page, for your liability for fire department service charges:

a. Assumed by contract or agreement prior to loss; or

b. Required by local ordinance.

No deductible applies to this Additional Coverage.

4. Fire Extinguisher and Fire Suppression System Recharge

a. We will pay the actual cost to recharge fire extinguishers after their use in fighting a fire at the described premises.

b. We will pay the actual cost to recharge fire suppression systems due to leakage or discharge at the described premises. However, this provision applies only if the leakage or discharge of the fire suppression system is caused by a Covered Cause of Loss.

5. Institutional Income and Extra Expense.

a. Institutional Income.

We will pay your actual loss of net income that occurs during the period from the date of loss to the date the property can reasonably be restored to a tenantable condition but not longer than 12 consecutive months following the date of the direct physical loss or damage, if your "operations" or occupancy are necessarily interrupted because of direct physical loss of or damage to covered property at the described premises, resulting from a covered cause of loss. In determining the amount of any loss, we will consider the history of your income prior to the loss.

Institutional income means:

(1) Net Income. This means:

(a) Total receipts and contributions (less operating expenses) normally received during the

period of disruption of operations; and

(b) Necessary continuing normal operating expenses;

Received or incurred by your "operations." We will consider payroll continuation and other expenses to the extent necessary to resume your "operations" with the same quality of service that existed before the loss.

(2) Rents. This means:

(a) Your actual loss of rental income from your building as furnished or equipped; and

(b) Any of your expenses that your tenants had agreed to pay; and

(c) The "rental value" of any part of the building that you occupy;

Less any expenses that do not continue.

You must do all you can to reduce the loss. We do not cover any increase in loss due to your failure to use reasonable efforts to resume complete or partial operations. This includes making use of other locations and property to reduce the loss.

b. Extra Expense.

We will pay any actual and necessary extra expense sustained by you due to direct physical loss of or damage to Covered Property (except any dwelling) at the premises described in the Declarations Page caused by or resulting from any Covered Cause of Loss.

(1) Extra expense means necessary "additional expense" you incur during the "period of restoration":

(a) To avoid or minimize the "suspension" of your "operations":

1) At the premises described in the Declarations Page.

2) At replacement premises or at temporary locations including relocation

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2001.

expenses and costs to equip and operate the temporary or replacement locations.

    (b) To minimize the "suspension" of your "operations" if you cannot continue "operations."

    (c) To reduce the amount of loss otherwise payable by:

        1) Repairing or replacing any property; or

        2) Researching, replacing, or restoring the lost information on damaged valuable papers and records;

        to the extent 1) or 2) above, reduce the amount of loss otherwise payable.

c. Civil Authority.

We will pay for the actual loss of Institutional Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss. The coverage for Institutional Income will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

The coverage for Extra Expense will begin immediately after the time of that action and will end:

    (1) Three consecutive weeks after the time of that action; or

    (2) When your Institutional Income coverage ends;

whichever is later.

d. Alterations and New Buildings.

    (1) We will pay for the actual loss of Institutional Income you sustain due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

    (a) New buildings or structures, whether complete or under construction;

    (b) Alterations or additions to existing buildings or structures; or

    (c) Machinery, equipment, supplies, or building materials located on or within 100 feet of the described premises; and

        1) Used in the construction, alterations, or additions; or

        2) Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations," the "period of restoration" will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

e. Extended Institutional Income.

    (1) Institutional Income other than "Rental Value."

If the necessary "suspension" of your "operations" produces an Institutional Income loss payable under this policy, we will pay for the actual loss of Institutional Income you incur during the period that:

    (a) Begins on the date property is actually repaired, rebuilt, or replaced and "operations" are resumed; and

    (b) Ends on the earlier of:

        1) The date you could restore your "operations," with reasonable speed, to the level which would generate the institutional income amount that would have existed if no direct physical loss or damage had occurred; or

        2) 30 consecutive days after the date determined in (a) above.

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2001.

However, Extended Institutional Income does not apply to loss of Institutional Income sustained or extra expense incurred as a result of unfavorable operating conditions caused by disruption to properties not insured under this policy.

Loss of Institutional Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(2) "Rental Value."

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

(a) Begins on the date property is actually repaired, rebuilt, or replaced and tenantability is restored; and

(b) Ends on the earlier of:

1) The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

2) 30 consecutive days after the date determined in (a) above.

However, Extended Institutional Income does not apply to loss of "Rental Value" incurred as a result of disruption of properties not insured under this policy.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

The most we will pay under this Additional Coverage for Institutional Income and Extra Expense is $10,000, unless a higher limit is shown on the Declarations Page, for any one occurrence.

6.  Lock Replacement.

    We will pay any necessary expense to repair or replace exterior or interior door locks of a covered building:

    a.  If your door keys are stolen in a covered theft loss; or

    b.  When your property is damaged and your door keys are stolen by burglars.

    The most we will pay under this Additional Coverage is $500, unless a higher limit is shown on the Declarations Page, for any one occurrence.

7.  Refrigerated Food Products.

    We will pay for loss of or damage to refrigerated food products at the premises described in the Declarations Page caused by the interruption of power supply services to those premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to property used to supply power to your premises.

    The most we will pay under this Additional Coverage is $1,000, unless a higher limit is shown on the Declarations Page, for any one occurrence.

8.  Arson Reward.

    We will pay a reward for information leading to a conviction for arson. The reward is payable only for information concerning a fire loss to property covered by this policy.

    The most we will pay as a reward is $5,000, unless a higher limit is shown on the Declarations Page, even if more than one person provides information leading to a conviction for arson. We will base the amount of our reward payment on the value of the information furnished.

    No deductible applies to this Additional Coverage.

    This Additional Coverage does not apply to anyone who personally participated in the arson.

9.  Pollutant Cleanup and Removal.

    We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge,

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
©ISO Properties, Inc., 2001.

dispersal, seepage, migration, release, or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants," but we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Cause of Loss occurring during each separate 12 month period of this policy.

10. Building Ordinance.

a. If a Covered Cause of Loss occurs to covered building property, we will pay:

(1) Coverage for Loss to the Undamaged Portion of the Building.

With respect to the building that has sustained covered direct physical damage we will pay for the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires the demolition of undamaged parts of the same building.

(2) Demolition Cost Coverage.

With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property.

(3) Increased Cost of Construction Coverage.

a) With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

1) Repair or reconstruct damaged portions of that Building property; and/or

2) Reconstruct or remodel undamaged portions of that Building property, whether or not demolition is required;

when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law.

However:

1) This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning, or land use ordinance or law.

2) We will not pay for the increased cost of construction if the building is not repaired, reconstructed, or remodeled.

b) When a building is damaged or destroyed and Increased Cost of Construction Coverage applies to that building in accordance with 3)a) above, coverage for the increased cost of construction also applies to repair or reconstruction of the following, subject to the same conditions stated in 3)a):

1) The cost of excavations, grading, backfilling, and filling;

2) Foundation of the building;

3) Pilings; and

4) Underground pipes, flues, and drains.

The items listed in b)1) through b)4) above, are deleted from Property Not Covered, but only with respect to the coverage described in this provision, (3)b).

Copyright, Church Mutual Insurance Company, 2005.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2001.

b. Application Of Coverage(s).

The Coverage(s) provided by this additional coverage apply only if both b.(1) and b.(2) are satisfied and are then subject to the qualifications set forth in b.(3).

(1) The ordinance or law:

a) Regulates the demolition, construction, or repair of buildings, or establishes zoning or land use requirements at the described premises; and

b) Is in force at the time of loss.

But coverage under this additional coverage applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this additional coverage.

(2) a) The building sustains direct physical damage that is covered under this policy and such damage results in enforcement of the ordinance or law; or

b) The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and the building damage in its entirety results in enforcement of the ordinance or law.

c) But if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage under this additional coverage even if the building has also sustained covered direct physical damage.

(3) In the situation described in b.(2)b) above, we will not pay the full amount of loss otherwise payable under the terms of Paragraph a. of this additional coverage. Instead, we will pay a proportion of such loss; meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

However, if the covered direct physical damage, alone, would have resulted in enforcement of the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of Paragraph a. of this additional coverage.

c. Loss Payment

(1) All following loss payment Provisions, c.(2) through c.(4), are subject to the apportionment procedures set forth in Paragraph b. of this additional coverage.

(2) When there is a loss in value of an undamaged portion of a building to which Coverage for Loss to the Undamaged Portion of the Building applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

a) If the Replacement Cost Coverage Option applies and the property is repaired or replaced, on the same or another premises, we will not pay more than the amount you actually spend to repair, rebuild, or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style, and comparable quality of the original property insured.

b) If the Replacement Cost Coverage Option applies and the property is not repaired or replaced, or if the Replacement Cost Coverage Option does not apply, we will not pay more than the actual cash value of the building at the time of loss.

(3) Loss payment under Demolition Cost Coverage is the amount you actually spend to demolish and clear the site of the described premises.

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
©ISO Properties, Inc., 2001.

(4) Loss payment under Increased Cost of Construction Coverage will be determined as follows:

a) We will not pay under Increased Cost of Construction Coverage:

1) Until the property is actually repaired or replaced, at the same or another premises; and

2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Increased Cost of Construction is the increased cost of construction at the same premises; or

c) If the ordinance or law requires relocation to another premises, the most we will pay under Increased Cost of Construction is the increased cost of construction at the new premises.

d. Under this Additional Coverage, we will not pay for:

(1) The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling, or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread, or any activity of "fungus," wet or dry rot or bacteria; or

(2) Any costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants," "fungus," wet or dry rot or bacteria.

e. Under this additional coverage, we will not pay for loss due to any ordinance or law that:

1. You were required to comply with before the loss, even if the building was undamaged; and

2. You failed to comply with.

The most we will pay under this Additional Coverage is $100,000, unless a higher limit is shown on the Declarations Page, for any one occurrence.

## H. OPTIONAL COVERAGES

If shown as applicable in the Declarations Page, the following Optional Coverages apply separately to each item.

1. Agreed Value.

a. The Coinsurance Condition does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations Page.

b. The terms of this Optional Coverage apply only to loss or damage that occurs on or after the effective date of this Optional Coverage.

2. Automatic Increase in Insurance.

a. The Limit of Insurance for buildings and personal property described in the Declarations Page shall be increased at the same rate as the increase in the published construction cost multipliers on file with the company.

b. We will determine the Limit of Insurance as of the time of loss or damage as follows:

(1) We will multiply the latest available published construction cost multiplier by the Limit of Insurance shown for the lost or damaged property.

The Limit of Insurance as determined above will not be reduced to less than the limit shown in the Declarations Page.

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2001.

If the Limit of Insurance for any building or personal property is changed during the term of this policy, the inception date of this Optional Coverage for that property will be the same as the date of the change.

## I. DEFINITIONS

1. "Additional expense" means expense you incur that you would not have incurred if there had been no direct physical loss or damage. When your operations are resumed, we will deduct from the total of such expenses the salvage value that remains of any property bought for temporary use during the "period of restoration."

2. "Additional living expense" means any necessary increase in living expenses you incur for your employees (including your clergy) so they can maintain their normal standard of living.

   "Additional living expense" begins with the date the premises are untenantable due to covered loss or damage and ends on the date the premises should be repaired or rebuilt with reasonable speed and similar quality.

3. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

4. "Operations" means your institutional activities occurring at the described premises and the tenantability of the described premises, if coverage for Institutional Income including "Rental Value" or "Rental Value" applies.

5. a. "Period of Restoration" means the period of time that:

      (1) Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

      (2) Ends on the date when the property at the described premises should be repaired, rebuilt, or replaced with reasonable speed and similar quality.

   b. "Period of Restoration" does not include any increased period required due to the enforcement of any law that:

      (1) Regulates the construction, use or repair, or requires the tearing down of any property; or

      (2) Requires any insured or others, to test for, monitor, clean-up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "pollutants."

   The expiration date of this policy will not cut short the "period of restoration."

6. "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

7. "Property in the dwelling" means personal property you own located in dwelling quarters maintained by you for use by an employee.

8. "Related private structures" means any structure located on the same premises as the described dwelling and which pertains to the occupancy of the dwelling.

9. "Rental value" means:

   a. The actual gross rental income from tenant occupancy of the dwelling as furnished and equipped by you; plus

   b. The amount of all charges which were the legal obligations of the tenant and which become your obligation.

   "Rental value" coverage begins with the date the premises are untenantable due to covered loss or damage and ends on the date the premises should be repaired or rebuilt with reasonable speed and similar quality.

10. "Suspension" means:

   a. The slowdown or cessation of your business activities; or

   b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2001.

# CAUSES OF LOSS - SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. **Refer to Paragraph H - Definitions.**

## A. COVERED CAUSES OF LOSS

1. When Special is shown in the Declarations Page, Covered Causes of Loss means Risks of Direct Physical Loss unless the loss is:

   a. Excluded in Paragraph B., Exclusions; or

   b. Limited in Paragraph C., Limitations;

   that follow.

## B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   a. Building Ordinance or Law.

   The enforcement of any ordinance or law:

   (1) Regulating the construction, use, or repair of any property; or

   (2) Requiring the tearing down of any property, including the cost of removing its debris;

   except as provided in the Additional Coverages.

   This exclusion, ordinance or law, applies whether the loss results from:

   (1) An ordinance or law that is enforced even if the property has not been damaged; or

   (2) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling, or demolition of property, or removal of its debris, following a physical loss to that property.

   b. Earth Movement.

   (1) Earthquake, including any earth sinking, rising, or shifting related to such event;

   (2) Landslide, including any earth sinking, rising, or shifting related to such event;

   (3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   (4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking, or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

   But if Earth Movement, as described in b.(1) through (4) above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

   (5) Volcanic eruption, explosion, or effusion. But if volcanic eruption, explosion, or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

   Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   (a) Airborne volcanic blast or airborne shock waves;

   (b) Ash, dust, or particulate matter; or

   (c) Lava flow.

   All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

   Volcanic action does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss or damage to the described property.

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2001.

c.  Governmental Action.

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Part.

d.  Nuclear Hazard.

Nuclear reaction or radiation or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

e.  Utility Services.

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that covered Cause of Loss.

f.  War and Military Action.

(1)  War, including undeclared or civil war;

(2)  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3)  Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

g.  Water.

(1)  Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2)  Mudslide or mudflow;

(3)  Water which backs up through sewers or drains except as provided under G. Additional Coverage - Back Up Through Sewers and Drains.

(4)  Water under the ground surface pressing on or flowing or seeping through:

(a)  Foundations, walls, floors, or paved surfaces;

(b)  Basements, whether paved or not; or

(c)  Doors, windows, or other openings.

But if water, as described in g. (1) through g. (3) above, results in fire, explosion, or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion, or sprinkler leakage.

h.  "Fungus," Wet Rot, Dry Rot and Bacteria.

Presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria.

But if "fungus," wet or dry rot or bacteria results in a "specified cause of loss," we will pay for the loss or damage caused by that "specified cause of loss."

This exclusion does not apply:

1.  When "fungus," wet or dry rot or bacteria results from fire or lightning; or

2.  To the extent that coverage is provided in the Additional Coverage - Limited Coverage For "Fungus," Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions B.1.a. through B.1.h. apply whether or not the loss event results in widespread damage or affects a substantial area.

2.  We will not pay for loss or damage caused by or resulting from any of the following:

a.  Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances, or wires.

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2001.

But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by that fire.

b. Delay, loss of use, or loss of market.

c. Smoke, vapor, or gas from agricultural smudging or industrial operations.

d. (1) Wear and tear;

(2) Rust, or other corrosion, decay, deterioration, hidden or latent defect, or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking, or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents, or domestic animals.

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature.

But if an excluded cause of loss that is listed in 2. d. (1) through (7) results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

e. Explosion of steam boilers, steam pipes, steam engines, or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines, or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the

explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

f. Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture, or vapor that occurs over a period of 14 days or more.

g. Water, other liquids, powder, or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

h. Dishonest or criminal act by you, any of your partners, employees (including leased employees), directors, trustees, authorized representatives, or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

i. Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device, or false pretense.

j. Collapse, except as provided below in the Additional Coverage - Collapse. But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

k. Discharge, dispersal, seepage, migration, release, or escape of "pollutants" unless the discharge, dispersal, seepage,

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2001.

migration, release, or escape is itself caused by any of the "specified causes of loss." But if the discharge, dispersal, seepage, migration, release, or escape of "pollutants" results in a "specified cause of loss," we will pay for the loss or damage caused by that "specified cause of loss."

l.   Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

3.  We will not pay for loss or damage caused by or resulting from any of the following 3. a. through 3. c. but if an excluded cause of loss that is listed in 3. a. through 3. c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

a.   Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage.

b.   Acts or decisions, including the failure to act or decide, of any person, group, organization, or governmental body.

c.   Faulty, inadequate, or defective:

(1)  Planning, zoning, development, surveying, siting;

(2)  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3)  Materials used in repair, construction, renovation, or remodeling; or

(4)  Maintenance;

of part or all of any property on or off the described premises.

## C. LIMITATIONS

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

1.  We will not pay for loss of or damage to property, as described and limited to this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

a.   Steam boilers, steam pipes, steam engines, or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

b.   Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

c.   The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand, or dust, whether driven by wind or not, unless:

(1)  The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand, or dust enters; or

(2)  The loss or damage is caused by or results from thawing of snow, sleet, or ice on the building or structure.

d.   Building materials and supplies intended for construction, alterations or repairs not attached as part of the building or structure caused by or resulting from theft.

e.   Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

f.   Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

g.   Fences, swimming pools, and retaining walls caused by:

(1)  Heaving, bulging, or buckling;

(2)  Freezing or thawing; or

(3)  Pressure of weight of ice or water.

2.  We will pay for covered loss or damage to personal property that is a work of art, antique or rare article, including etchings, pictures,

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2001.

statuary, marbles, bronzes, porcelains, and bric-a-brac. But, the most we will pay for loss or damage is up to $5,000 for any one occurrence.

3. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage.

   a. Valuable papers and records, such as books of account, manuscripts, abstracts, drawings, and card index systems, including those which exist on film, tape, disc, drum, cell or other data processing, recording, or storage media. Valuable papers and records do not include prepackaged software programs.

   b. Fragile articles such as glassware, statuary, marbles, chinaware, and porcelains, if broken. This restriction does not apply to photographic or scientific instruments or lenses.

4. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder, or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

   a. Results in discharge of any substance from an automatic fire protection system; or

   b. Is directly caused by freezing.

**D. ADDITIONAL COVERAGE - COLLAPSE**

The term Covered Cause of Loss includes the Additional Coverage - Collapse as described and limited in D. 1. through D. 5. below.

1. With respect to buildings:

   a. Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;

   b. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

   c. A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;

   d. A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion.

2. We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by one or more of the following:

   a. The "specified causes of loss'" or breakage of building glass, all only as insured against in this Coverage Part;

   b. Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

   c. Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

   d. Weight of people or personal property;

   e. Weight of rain that collects on a roof;

   f. Use of defective material or methods in construction, remodeling, or renovation if the collapse occurs during the course of the construction, remodeling, or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in a. through e.; we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling, or renovation, contributes to the collapse.

The criteria set forth in 1.a. through 1.d. do not limit the coverage otherwise provided under this Causes of Loss Form to the causes of loss listed in 2a., 2.d., and 2.e.

3. With respect to the following property:

   a. Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts, or towers;

   b. Awnings, gutters, and downspouts;

   c. Yard fixtures;

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2001.

d.   Outdoor swimming pools;

e.   Fences;

f.   Piers, wharves, and docks;

g.   Beach or diving platforms or appurtenances;

h.   Retaining walls; and

i.   Walks, roadways, and other paved surfaces;

if the collapse is caused by a cause of loss listed in b. through f., we will pay for loss or damage to that property only if:

a.   Such loss or damage is a direct result of the collapse of a building insured under this Coverage Form; and

b.   The property is Covered Property under this Coverage Form.

4.   If personal property abruptly falls down or caves in and such collapse is not the result of collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

a.   The collapse was caused by a Cause of Loss listed in 2.a. through 2.f. above;

b.   The personal property which collapses is inside a building; and

c.   The property which collapses is not a kind listed in 3. above, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph 4. does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

Collapse of personal property does not mean cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion.

5.   This additional coverage, collapse, will not increase the Limits of Insurance provided in this Coverage Part.

**E.   ADDITIONAL COVERAGE - LIMITED COVERAGE FOR "FUNGUS," WET ROT, DRY ROT AND BACTERIA**

1.   The coverage described in E.2., E.6., and E.7. only applies when the "fungus," wet or dry rot or bacteria is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

a.   A "specified cause of loss" other than fire or lightning.

2.   We will pay for loss or damage by "fungus," wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

a.   Direct physical loss or damage to Covered Property caused by "fungus," wet or dry rot or bacteria;

b.   The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus," wet or dry rot or bacteria; and

c.   The cost of testing performed after removal, repair, replacement, or restoration of the damaged property is completed, provided there is a reason to believe that "fungus," wet or dry rot or bacteria are present.

3.   The coverage described under E.2. of this Limited Coverage is limited to $50,000 on an annual aggregate basis. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning). With respect to a particular occurrence of loss which results in "fungus," wet or dry rot or bacteria, we will not pay more than a total of $50,000 even if the "fungus," wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

4.   The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus," wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2001.

If there is covered loss or damage to Covered Property, not caused by "fungus," wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus," wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5. The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph F.1. (Additional Coverage Extension - Water Damage) of this Causes of Loss Form or under Paragraph D. Additional Coverage - Collapse.

6. The following, 6.a. or 6.b., applies only if Business Income and/or Extra Expense coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense coverage form.

   a. If the loss which resulted in "fungus," wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations," but such "suspension" is necessary due to loss or damage to property caused by "fungus," wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days but not to exceed the Limit of Insurance shown in the Declarations Page. The days need not be consecutive.

   b. If a covered "suspension" of "operations" was caused by loss or damage other than "fungus," wet or dry rot or bacteria but remediation of "fungus," wet or dry rot or bacteria prolongs the "period of restoration," we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days but not to exceed the Limit of Insurance shown in the Declarations Page. The days need not be consecutive.

7. The following 7.a. or 7.b., applies only if Institutional Income and/or Extra Expense in ADDITIONAL COVERAGES in the Building and Personal Property Coverage Form, applies to the described premises and only if the interruption of "operations" satisfies all terms and conditions of the applicable Institutional Income and/or Extra Expense Additional Coverage.

   a. If the loss which resulted in "fungus," wet or dry rot or bacteria does not in itself necessitate an interruption of "operations," but such interruption is necessary due to loss or damage to property caused by "fungus," wet or dry rot or bacteria, then our payment under Institutional Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days but not to exceed the Limit of Insurance shown in the Declarations Page. The days need not be consecutive.

   b. If a covered interruption of "operations" was caused by loss or damage other than "fungus," wet or dry rot or bacteria but remediation of "fungus," wet or dry rot or bacteria prolongs the "period of restoration," we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days but not to exceed the Limit of Insurance shown in the Declarations Page. The days need not be consecutive.

**F. ADDITIONAL COVERAGE EXTENSION - WATER DAMAGE**

1. Water Damage. If covered loss or damage, caused by or resulting from water or other liquid, or powder, or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to replace damage to the system or appliance from which the water or other substance escapes.

   This Additional Coverage will not increase the Limits of Insurance provided in this Coverage Part.

**G. ADDITIONAL COVERAGE - BACK UP THROUGH SEWERS AND DRAINS**

Subject to all other terms and conditions of this policy, we will pay for direct physical loss or damage to Covered Property caused by back up of water or sewage through sewers or drains only if caused by an event away from the described buildings and when the damage is not caused by flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2001.

whether driven by wind or not, and which did not enter the building through foundations, walls, floors, windows, cracks, roofs, or through other openings of the building.

Sewer or water damage occurring as a result of, either before or after, the excluded flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not, and entering the building through foundations, walls, floors, windows, cracks, roofs, or through other openings of the building is not covered.

This ADDITIONAL COVERAGE - BACK UP THROUGH SEWERS OR DRAINS will not increase the Limits of Insurance provided in this Coverage Part.

**H. DEFINITIONS**

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes,

materials to be recycled, reconditioned, or reclaimed.

3. "Sinkhole collapse" means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This Cause of Loss does not include:

   a. The cost of filling sinkholes; or

   b. The sinking or collapse of land into man-made underground cavities.

4. "Specified Causes of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; damage by burglars; sonic boom; sinkhole collapse; volcanic action; falling objects; weight of snow, ice, or sleet; water damage.

5. "Water damage" means accidental discharge or leakage of water or other liquid, powder, or molten material as the direct result of the breaking apart or cracking of any part of a system or appliance containing water or other liquid, powder, or molten material.

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2001.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BUSINESS PERSONAL PROPERTY OF YOUR CLERGY

This endorsement modifies insurance provided under the Property Coverage Part.

The following is added to the Building and Personal Property Coverage Form.

**A. BUSINESS PERSONAL PROPERTY OF YOUR CLERGY**

1. The following is added to Covered Property:

   a. Covered personal property includes business personal property of your clergy.

Refer to the Declarations Page to determine the Limit of Insurance for the Clergy Business Personal Property this endorsement applies to.

Copyright, Church Mutual Insurance Company, 1989.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TENTATIVE RATE

This endorsement modifies the insurance provided under the Property Coverage Part.

The following is added to the Property Coverage Part.

**A. TENTATIVE RATE**

1. The rates used in the development of the premium for the Property Coverage Part are tentative. We will adjust the premium effective on the next anniversary or renewal date of the applicable coverage of this Coverage Part once the rates are promulgated.

Copyright, Church Mutual Insurance Company, 2000.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

# SYSTEMS/EQUIPMENT BREAKDOWN COVERAGE FORM

This endorsement modifies insurance provided under the Property Coverage Part and the Inland Marine Coverage Part.

The following is added to the Causes of Loss - Basic Form, Causes of Loss - Broad Form, and Causes of Loss - Special Form, and Inland Marine Builders' Risk Coverage Form. This coverage is subject to the terms and conditions of this form and the terms and conditions of the policy to which it is attached.

## A. ADDITIONAL COVERED CAUSES OF LOSS

1. When the SYSTEMS/EQUIPMENT BREAKDOWN COVERAGE form is shown in the Declarations Page, Covered Causes of Loss include:

   a. Mechanical breakdown, including rupture or bursting caused by centrifugal force;

   b. Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances, or wires;

   c. Explosion of steam boilers, steam pipes, steam engines, steam turbines, owned or leased by you or operated under your control; and

   d. Loss or damage to steam boilers, steam pipes, steam engines, or steam turbines caused by or resulting from any condition or event inside such equipment.

   e. Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

2. The coverage provided by this form includes equipment that is owned by you, a utility, or others that is:

   a. Within 500 feet of the premises described in the Declarations Page; or

   b. More than 500 feet from the premises described in the Declarations Page but is used to solely supply these premises.

   We will pay for losses or damages covered by this policy that are the direct result of damage to this equipment from a covered cause of loss provided by this form in Section A.1. above.

3. The following Exclusions and Limitations do not apply to the coverage provided by this form:

   a. CAUSES OF LOSS - BASIC FORM, A 125, if applicable, Exclusions B.2.a., B.2.d., and B.2.e.

   b. CAUSES OF LOSS - BROAD FORM, A 126, if applicable, Exclusions B.2.a., B.2.b., and B.2.c.

   c. CAUSES OF LOSS - SPECIAL FORM, A 127, if applicable, Exclusions B.2.a., B.2.d.(6), and B.2.e., and Limitations C.1.a. and C.1.b.

   d. INLAND MARINE BUILDERS' RISK COVERAGE FORM, A 403, if applicable, Exclusions E.2.a., E.2.d.(6), and E.2.e., and Limitations F.1.a. and F.1.b.

## B. ADDITIONAL EXCLUSIONS

The following additional exclusions apply to the coverage provided by this form.

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

   a. Frost, freezing, or other effects of cold weather;

   b. Ice, snow, sleet, or hail, whether driven by wind or not;

   c. Wind; or

   d. Water or liquid damage, except if a covered cause of loss provided by this form in Section A.1. above results from a flood, we will pay for the resulting loss.

2. We will not pay for any loss or damage caused by or resulting from:

   a. Depletion, deterioration, corrosion, or erosion; or

   b. Wear and tear;

   unless a covered cause of loss provided by this form in Section A.1. results. In that event, we will pay for loss or damage to your Covered Property which is the direct result of this covered cause of loss.

Copyright, Church Mutual Insurance Company, 1999.

3. We will not pay for loss or damage to the following items of property:

   a. Buildings, structures, or inflatable structures;

   b. Retaining walls, bulkheads, piers, wharves, docks, structures located on or partially over water;

   c. Pavements, foundations, walls, floors, roofs, ceilings, glass, cabinets, compartments, or similar items;

   d. Vehicles, self-propelled equipment, aircraft, or watercraft;

   e. Any machine or apparatus used for research, diagnosis, medication, surgical, therapeutic, dental, or pathological purposes;

   unless this property is damaged as the direct result of a covered cause of loss provided by this form in Section A.1. to property built to operate under vacuum or pressure, other than weight of contents, or used for the generation, transmission, or utilization of energy.

4. We will not pay for loss or damage to buried vessels, pipes, flues, or drains.

## C. ADDITIONAL COVERAGE EXTENSION

The following extensions apply to the coverage provided by this form.

1. Expediting Expenses.

   With respect to Covered Property damaged by a covered cause of loss provided by this form in Section A.1., we will pay the reasonable extra cost to make temporary repairs, expedite permanent repairs, and expedite permanent replacement.

2. Hazardous Substances

   We will pay for the additional cost to repair or replace Covered Property because of contamination by a "hazardous substance." This includes the additional expenses to clean up or dispose of such property.

   "Hazardous substance" means any substance other than ammonia that has been declared to be hazardous to health by a governmental agency.

   Additional costs mean those beyond what would have been required had no "hazardous substance" been involved.

   The most we will pay for loss or damage under this coverage, including actual loss of Business Income you sustain, necessary Extra Expense you incur, and loss under Spoilage coverage, is $100,000.

3. Spoilage.

   a. Your loss to perishable goods due to spoilage resulting from lack of power light, heat, steam, or refrigeration from a covered cause of loss provided by this form in Section A.1.

   b. Expense to reduce such loss. This expense is limited to the smaller of amount expended to reduce spoilage loss or the spoilage loss that would result if no expenditure had been made to reduce spoilage loss.

## D. ADDITIONAL CONDITIONS

The following conditions apply to the coverage provided by this form:

1. Suspension.

   Upon our discovery of a dangerous condition with respect to any item of property built to operate under vacuum or pressure, other than weight of contents, or used for the generation, transmission, or utilization of energy, any of our representatives may immediately suspend the coverage provided by this form for that item of property. This can be done by delivering or mailing a written notice of suspension to you, at your address shown in this policy, or at the location of the property.

   Once we have suspended your coverage in this manner, your insurance can be reinstated only by an endorsement.

   If we suspend your insurance, you will get a pro rata refund of premium, but the suspension will be effective even if we have not yet made or offered a refund.

2. Jurisdictional Inspections.

   If any property that is covered equipment under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf.

Copyright, Church Mutual Insurance Company, 1999.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FLORIDA CHANGES

This endorsement modifies insurance provided under the following:

PROPERTY COVERAGE PART

A. The following provision applies when a Coinsurance percentage is shown in the Declarations:

Florida law states as follows:

Coinsurance contract: The rate charged in this policy is based upon the use of the coinsurance clause attached to this policy, with the consent of the Insured.

B. The following is added:

If windstorm is a Covered Cause of Loss and loss or damage to Covered Property is caused by or results from Windstorm, the following exclusion applies in:

1. Broward County;
2. Dade County;
3. Martin County;
4. Monroe County;
5. Palm Beach County; and
6. All the areas east of the west bank of the Intra-Coastal Waterway in the Counties of:
   a. Indian River; and
   b. St. Lucie.

**Windstorm Exterior Paint and Waterproofing Exclusion**

We will not pay for loss or damage caused by windstorm to:

1. Paint; or
2. Waterproofing material;

applied to the exterior of Buildings unless the Building to which such loss or damage occurs also sustains other loss or damage by windstorm in the course of the same storm event. But such coverage applies only if windstorm is a Covered Cause of Loss.

When loss or damage to exteior paint or waterproofing material is excluded, we will not include the value of paint or waterproofing material to determine:

a. The amount of the Windstorm or Hail Deductible; or

b. The value of Covered Property when applying the Coinsurance Condition.

C. The LOSS PAYMENT Condition dealing with the number of days within which we must pay for covered loss or damage is replaced by the following:

Provided you have complied with all the terms of this Coverage Part, we will pay for covered loss or damage:

(1) Within twenty (20) days after we receive the sworn proof of loss and reach written agreement with you; or

(2) Within thirty (30) days after we receive the sworn proof of loss and:

(a) There is an entry of a final judgment; or

(b) There is a filing of an appraisal award with us.

D. Sinkhole Loss

Paragraph A. 10., Sinkhole Collapse, of the Causes of Loss - Basic Form and the Causes of Loss - Broad Form are replaced by the following:

**Sinkhole Loss**, meaning loss or damage to Covered Property when structural damage to the building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the building, only when such settlement or systematic weakening results from

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, ISO Properties, Inc., 2006.

movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and in consultation with you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair:

1. We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

2. Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

After you have entered into a contract for performance of building stabilization or foundation repair, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred. If repair has begun and the aforementioned professional engineer determines that the repairs will exceed the applicable Limit of Insurance, we will pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

Sinkhole Loss does not include sinking or collapse of land into man-made underground cavities.

E.  In the Causes of Loss - Special Form, references to "sinkhole collapse" means "sinkhole loss." The definition of "sinkhole collapse" is replaced by the following:

**"Sinkhole Loss,"** meaning loss or damage to Covered Property when structural damage to the building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the building, only when such settlement or systematic weakening results from movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for "Sinkhole Loss" includes stabilization of the building (including land stabilization) and repair to the foundation provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and in consultation with you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair:

1. We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

2. Our payment for "Sinkhole Loss" to Covered Property may be limited to the actual cash value of the loss to such property.

After you have entered into a contract for performance of building stabilization or foundation repair, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred. If repair has begun and the aforementioned professional engineer determines that the repairs will exceed the applicable Limit of Insurance, we will pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all "Sinkhole Loss," including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

"Sinkhole Loss" does not include sinking or collapse of land into man-made underground cavities.

F.  With respect to a claim for alleged "Sinkhole Loss," the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged "Sinkhole Loss" to commercial residential properties, this program applies instead of the Mediation procedure set forth elsewhere in this policy.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay the costs

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, ISO Properties, Inc., 2006.

associated with the neutral evaluation, regardless of which party makes the request. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

The Appraisal Condition in this policy will not apply to a claim that has been submitted to neutral evaluation. Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy; except that the time for filing suit is extended in accordance with the provisions of Section 627.7074 (4) of the Florida Statutes.

G.   The following replaces the second paragraph of the Legal Action Against Us condition:

LEGAL ACTION AGAINST US

Legal action against us involving direct physical loss or damage to property must be brought within five (5) years from the date the loss occurs.

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, ISO Properties, Inc., 2006.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FLORIDA CHANGES - MEDIATION OR APPRAISAL (COMMERCIAL RESIDENTIAL PROPERTY)

This endorsement modifies insurance provided under the following:

**BUILDERS' RISK COVERAGE FORM**
**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

**A.** With respect to a loss to commercial residential property, the following replaces the Appraisal Condition:

**MEDIATION OR APPRAISAL**

If we and you disagree on the value of the property or the amount of loss, either may request:

**1.** A mediation of the loss in accordance with the rules established by the Florida Department of Financial Services. The loss amount must be $500 or more, prior to application of the deductible; or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount that you request. The settlement in the course of mediation is binding only if both parties agree, in writing, on a settlement, and you have not rescinded the settlement within 3 business days after reaching settlement. You may not rescind the settlement after cashing or depositing the settlement check or draft we provided to you.

We will pay the cost of conducting any mediation conference except when you fail to appear at a conference. That conference will then be rescheduled upon your payment of the mediator's fee for that rescheduled conference. However, if we fail to appear at a mediation conference, we will pay your actual cash expenses you incur in attending the conference and also pay the mediator's fee for the rescheduled conference.

**2.** An appraisal of the loss, in writing. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

However, you are not required to submit to, or participate in, any appraisal of the loss as a precondition to action against us for failure to pay the loss, if we:

**a.** Requested mediation and either party rejected the mediation result; or

**b.** Failed to notify you of your right to participate in the mediation program.

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2006.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE

This endorsement modifies insurance provided under the following:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORMS**
**BUILDERS' RISK COVERAGE FORM**

The Windstorm or Hail Deductible, as shown in the Declarations Page applies to loss or damage to Covered Property caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage. If loss or damage from a covered weather condition other than Windstorm or Hail occurs, and that loss or damage would not have occurred but for the Windstorm or Hail, such loss or damage shall be considered to be caused by Windstorm or Hail and therefore part of the Windstorm or Hail occurrence.

With respect to Covered Property at a premises identified in the Declarations Page, no other deductible applies to Windstorm or Hail.

The Windstorm or Hail Deductible applies whenever there is an occurrence of Windstorm or Hail.

As used in this endorsement, the terms "specific insurance" and "blanket insurance" have the following meanings: Specific insurance covers each item of insurance (for example, each building or personal property in a building) under a separate Limit of Insurance. Blanket insurance covers two or more items of insurance (for example, a building and personal property in that building, or two buildings) under a single Limit of Insurance. Items of insurance and corresponding Limit(s) of Insurance are shown in the Declarations Page.

WINDSTORM OR HAIL DEDUCTIBLE CLAUSE

A. Specific Insurance

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2%, or 5% (as shown in the Declarations Page) of the Limit(s) of Insurance applicable to the property that has sustained loss or damage. This Deductible is calculated separately for, and applies separately to:

1. Each building, if two or more buildings sustain loss or damage;
2. The building and to personal property in that building, if both sustain loss or damage;
3. Personal property at each building, if personal property at two or more buildings sustains loss or damage;
4. Personal property in the open.

B. Blanket Insurance

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2%, or 5% (as shown in the Declarations Page) of the value(s), as determined from the Valuation Loss Condition, of the property that has sustained loss or damage. This Deductible is calculated separately for, and applies separately to:

1. Each building, if two or more buildings sustain loss or damage;
2. The building and to personal property in that building, if both sustain loss or damage;
3. Personal property at each building, if personal property at two or more buildings sustains loss or damage;
4. Personal property in the open.

C. All Policies

1. We will not pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance, after any reduction required by any of the following: Coinsurance Condition, Agreed Value Optional Coverage, or Additional Condition - Need For Adequate Insurance.
2. When property is covered under the Coverage Extension(s) for Newly Constructed Buildings, Newly Acquired Buildings, or Newly Acquired Personal Property: In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to a percentage of the value(s) of the property at time of loss.

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

The applicable percentage for Newly Constructed Buildings, Newly Acquired Buildings, or Newly Acquired Personal Property is the highest percentage shown in the Declarations Page for any described premises.

EXAMPLES - APPLICATION OF DEDUCTIBLE:

Example #1 - Specific Insurance

The amount of loss to the damaged building at time of loss is $60,000.

The value of the damaged building is $100,000. The Coinsurance percentage shown in the Declarations Page is 80%; the minimum Limit of Insurance needed to meet the coinsurance requirement is $80,000 (80% of $100,000).

The actual Limit of Insurance on the damaged building is $70,000.

The Deductible is 1%.

Step (1): $70,000 ÷ $80,000 = .875
Step (2): $60,000 X .875 = $52,500
Step (3): $70,000 X 1% = $700
Step (4): $52,500 - $700 = $51,800

The most we will pay is $51,800. The remainder of the loss, $8,200, is not covered due to the Coinsurance penalty for inadequate insurance (steps (1) and (2)) and the application of the Deductible (steps (3) and (4)).

Example #2 - Specific Insurance

The amounts of loss to the damaged property are $60,000 (building) and $40,000 (personal property in building).

The value of the damaged building at time of loss is $100,000. The value of the personal property in that building is $80,000. The Coinsurance percentage shown in the Declarations Page is 80%; the minimum Limits of Insurance needed to meet the coinsurance requirement are $80,000 (80% of $100,000) for the building and $64,000 (80% of $80,000) for the personal property.

The actual Limits of Insurance on the damaged property are $80,000 on the building and $64,000 on the personal property (therefore no Coinsurance penalty).

The Deductible is 2%.

Building

Step (1): $80,000 X 2% = $1,600
Step (2): $60,000 - $1,600 = $58,400

Personal Property

Step (1): $64,000 X 2% = $1,280
Step (2): $40,000 - $1,280 = $38,720

The most we will pay is $97,120. That portion of the total loss not covered due to application of the Deductible is $2,880.

Example #3 - Blanket Insurance

The sum of the values of Building #1 ($500,000), Building #2 ($500,000), and Building #3 ($1,000,000), is $2,000,000.

The Coinsurance percentage shown in the Declarations Page is 90%; the minimum Blanket Limit of Insurance needed to meet the coinsurance requirement is $1,800,000 (90% of $2,000,000).

The actual Blanket Limit of Insurance covering Buildings #1, #2, and #3, shown in the Declarations Page, is $1,800,000 (therefore no Coinsurance Penalty).

Buildings #1 and #2 have sustained damage; the amounts of loss to these buildings are $40,000 (Building #1) and $20,000 (Building #2).

The Deductible is 2%.

Building #1

Step (1): $500,000 X 2% = $10,000
Step (2): $40,000 - $10,000 = $30,000

Building #2

Step (1): $500,000 X 2% = $10,000
Step (2): $20,000 - $10,000 = $10,000

The most we will pay is $40,000. That portion of the total loss not covered due to application of the Deductible is $20,000.

Example #4 - Blanket Insurance

The sum of the values of Building #1 ($500,000), Building #2 ($500,000), Personal Property at Building #1 ($250,000), and Personal Property at Building #2 ($250,000), is $1,500,000.

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

The Coinsurance percentage shown in the Declarations Page is 90%; the minimum Blanket Limit of Insurance needed to meet the coinsurance requirement is $1,350,000 (90% of $1,500,000).

The actual Blanket Limit of Insurance covering Buildings #1 and #2 and Personal Property at Buildings #1 and #2, shown in the Declarations Page, is $1,350,000. Therefore, there is no Coinsurance penalty.

Building #1 and Personal Property at Building #1 have sustained damage; the amounts of loss are $95,000 (Building) and $5,000 (Personal Property).

The Deductible is 5%.

Building

Step (1): $500,000 X 5% = $25,000
Step (2): $95,000 - $25,000 = $70,000

Personal Property

Step (1): $250,000 X 5% = $12,500
The loss, $5,000, does not exceed the deductible.

The most we will pay is $70,000. The remainder of the building loss, $25,000, is not covered due to application of the Deductible. There is no loss payment for the personal property.

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

## THIS ENDORSEMENT IS ADDED TO THE POLICY. PLEASE READ IT CAREFULLY.

## NUCLEAR ENERGY LIABILITY EXCLUSION - BROAD FORM

The following is added to this policy.

A. **EXCLUSION**

1. This insurance does not apply:

a. Under any liability coverage to "bodily injury" or "property damage":

(1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

b. Under any medical payments coverage to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

c. Under any liability coverage to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material" if:

(1) The "nuclear material" (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such nuclear facility and any property thereat.

2. As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "by-product material";

"Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor

"Waste" means any waste material (a) containing by-products material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily from its "source material" contents, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

a. Any nuclear reactor;

Copyright, Church Mutual Insurance Company, 1987.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1987.

b. Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel; or (3) handling, processing or packaging waste;

c. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

d. Any structure, basin, excavation, premises

or place prepared or used for the storage or disposal of waste;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Church Mutual Insurance Company, 1987.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1987.

# GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this Policy, the words "you" and "your" refer to the Named insured shown in the Declarations Page. The words "we," "us," and "our" refer to Church Mutual Insurance Company.

The word "insured" means any person or organization qualifying as an insured. **Refer to Paragraph E - Who Is An Insured.**

Other words and phrases that appear in quotation marks have special meaning. **Refer to Paragraph H - Definitions.**

**A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY COVERAGE**

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited. **Refer to Paragraph F - Limits of Insurance;** and

(2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Personal and Advertising Injury Liability Coverage, Bodily Injury and Property Damage Liability Coverage or under Medical Expense Coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury."

2. Exclusions.

This insurance does not apply to:

a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This Exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This Exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement.

(2) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage" provided:

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

(a) liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages.

This Exclusion applies only if you are in the business of manufacturing, distributing, selling, serving, or furnishing alcoholic beverages.

d. Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

e. "Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother, or sister of that "employee" as a consequence of paragraph (1) above.

This Exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This Exclusion does not apply to liability assumed by the insured under an "insured contract."

f. "Bodily injury" or "property damage" that arises out of any:

(1) Refusal to employ;

(2) Termination of employment;

(3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, sexual misconduct, or other employment-related practices, policies, acts, or omissions; or

(4) Consequential "bodily injury" as a result of f.(1), f.(2), or f.(3) above.

This exclusion applies whether the insured is liable either as an employer or in any other capacity, or there is an obligation to fully or partially reimburse a third party for damages arising out of paragraph f.(1), f.(2), f.(3), or f.(4) above.

g. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants:

(a) At or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site, or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing, or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

1) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

2) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d) 1) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants, or other operating fluids which are needed to perform the normal electrical, hydraulic, or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants, or other operating fluids escape from a vehicle part designed to hold, store, or receive them. This exception does not apply if the fuels, lubricants, or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants, or other operating fluids are brought on or to the premises, site, or location with the intent to be discharged, dispersed, or released as part of the operations being performed by such insured, contractor, or subcontractor.

Subparagraphs (a) and (d) 1) do not apply to "bodily injury" or "property damage" arising out of heat, smoke, or fumes from a hostile fire.

As used in this Exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost, or expense arising out of any:

(a) Request, demand, or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond

to, or assess the effects of pollutants; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

h. "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto," or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This Exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge.

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance, or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment." **(Refer to Paragraph H - Definitions)**

Copyright, Church Mutual Insurance Company, 2004. Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 1995.

i.  "Bodily injury" or "property damage" arising out of:

   (1)  The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

   (2)  The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

j.  "Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion, or revolution. This Exclusion applies only to liability assumed under a contract or agreement.

k.  "Property damage" to:

   (1)  Property you own, rent, or occupy;

   (2)  Premises you sell, give away, or abandon, if the "property damage" arises out of any part of those premises;

   (3)  Property loaned to you;

   (4)  Personal property in the care, custody, or control of the insured;

   (5)  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations if the "property damage" arises out of those operations; or

   (6)  That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this Exclusion does not apply if the premises are "your work" and were never occupied, rented, or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this Exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this Exclusion does not apply to "property damage" included in the "products-completed operations hazard."

l.  "Property damage" to "your product" arising out of it or any part of it.

m.  "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This Exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

n.  "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

   (1)  A defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work"; or

   (2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This Exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

o.  Damages claimed for any loss, cost, or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of:

   (1)  "Your product";

   (2)  "Your work"; or

   (3)  "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

p.  "Bodily injury" or "property damage" arising out of any actual or alleged act of "sexual misconduct or sexual molestation." This includes, but is not limited to any claim or suit seeking

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

damages based upon, arising out of, or attributable to vicarious liability; negligence in hiring, employment, supervision, retention, or transfer of any employee or volunteer workers; recommendation or referral of any person for employment or volunteer work; failure to protect or negligent supervision of any person (whether an adult or child) failure to warn, failure to investigate, or failure to comply with any obligation to report; and counseling.

q. "Bodily injury" or "property damage" arising out of any "counseling incident."

r. "Bodily injury" or "property damage" arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured.

Exclusions c. through o. do not apply to damage to premises rented to you or premises you occupy that you do not own. A separate Limit of Insurance applies to this coverage. **Refer to Paragraph F - Limits of Insurance.**

**B. PERSONAL AND ADVERTISING INJURY LIABILITY COVERAGE**

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited. **Refer to Paragraph F - Limits of Insurance;** and

(2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Personal and Advertising Injury Liability Coverage, Bodily Injury and Property Damage Liability Coverage or under Medical Expense Coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

b. This insurance applies to:

(1) "Personal injury" only if caused by an offense arising out of the conduct of your business, excluding advertising, publishing, broadcasting, or telecasting done by or for you except publishing, broadcasting, or telecasting that is incidental to your business;

(2) "Advertising injury" only if caused by an offense committed in the course of advertising your goods, products, or services;

but only if the offense was committed in the "coverage territory" during the policy period.

2. Exclusions.

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(4) For which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This Exclusion does not apply to liability for damages:

(a) Assumed in a contract or agreement that is an "insured contract" provided the "personal injury" or "advertising injury" occurs subsequent to the execution of the contract or agreement; or

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

(b) That the insured would have in the absence of the contract or agreement.

(5) Arising out of any actual or alleged act of "sexual misconduct or sexual molestation." This includes, but is not limited to any claim or suit seeking damages based upon, arising out of, or attributable to vicarious liability; negligence in hiring, employment, supervision, retention, or transfer of any employee or volunteer workers; recommendation or referral of any person for employment or volunteer work; failure to protect or negligent supervision of any person (whether an adult or child) failure to warn, failure to investigate, or failure to comply with any obligation to report; and counseling.

(6) Arising out of any "counseling incident."

b. (1) "Personal injury" or "advertising injury" which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants at any time.

(2) Any loss, cost, or expense arising out of any:

(a) Request, demand, or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals, and waste. Waste includes material to be recycled, reconditioned, or reclaimed.

c. "Personal injury" to:

(1) An employee of the insured if it occurs in the course of employment by the insured; or

(2) Consequential injury to a spouse, child, parent, brother, or sister of such injured employee.

This exclusion applies where the insured is liable either as an employer or in any other capacity; or there is an obligation to fully or partially reimburse a third party for damages arising out of paragraph c.(1) or c.(2) above.

This exclusion does not apply to liability assumed by the insured under a contract covered under Contractual Liability Coverage.

d. "Personal injury" if benefits are provided or are required to be provided by the insured under a workers' compensation, disability benefits, occupational disease, unemployment compensation, or like law.

e. "Personal injury" that arises out of any:

(1) Refusal to employ;

(2) Termination of employment;

(3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, sexual misconduct, or other employment-related practices, policies, acts, or omissions; or

(4) Consequential "personal injury" as a result of e.(1), e.(2), or e.(3) above.

This exclusion applies where the insured is liable either as an employer or in any other capacity; or there is an obligation to fully or partially reimburse a third party for damages arising out of paragraph e.(1), e.(2), e.(3), or e.(4) above.

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

f. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products, or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing, or telecasting.

**C. MEDICAL EXPENSE COVERAGE**

See the applicable General Liability Additional Provisions Form.

**D. SUPPLEMENTARY PAYMENTS**

See the applicable General Liability Additional Provisions Form.

**E. WHO IS AN INSURED**

See the applicable General Liability Additional Provisions Form.

**F. LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations Page and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits."

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Medical Expense Coverage for "bodily injury"; and

b. Damages under Bodily Injury and Property Damage Liability Coverage and Personal and Advertising Injury Liability Coverage, except:

(1) Damages because of injury and damage included in the "products-completed operations hazard"; and

(2) Damages under Sexual Misconduct or Sexual Molestation Liability Coverage.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Bodily Injury and Property Damage Liability Coverage for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Personal and Advertising Injury Liability Coverage for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Bodily Injury and Property Damage Liability Coverage; and

b. Medical expenses under Medical Expense Coverage because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to 5. above, the Property Damage Legal Liability Limit is the most we will pay under Property Damage Coverage for damages because of "property damage" to premises rented to you, or temporarily occupied by you with permission of the owner, arising out of any one occurrence.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Medical Expense Coverage for all medical expenses because of "bodily injury" sustained by any one person.

The Aggregate Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations Page, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

G. GENERAL LIABILITY CONDITIONS

1. Bankruptcy.

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties in the event of Occurrence, Offense, Claim, or Suit.

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when, and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us.

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance.

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

a. Primary Insurance.

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance.

(1) This insurance is excess over any of the other insurance, whether primary, excess, contingent, or on any other basis:

(a) That is Fire, Extended Coverage, Builders' Risk, Installation Risk,

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(c) If loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. under Bodily Injury and Property Damage Liability Coverage.

(2) This insurance is excess over any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

(3) When this insurance is excess, we will have no duty under this Coverage Part to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations Page of this Coverage Part.

c. Method of Sharing.

If all the other insurance permits contribution by equal shares, we will follow

this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

5. Premium Audit.

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium for this Coverage is a deposit premium only. At the close of each audit period, we may compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the deposit and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

6. Representations.

By accepting the policy, you agree:

a. The statements in the Declarations Page are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representation.

7. Separation of Insureds.

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

b. Separately to each insured against whom claim is made or "suit" is brought.

8. Transfer of Rights of Recovery Against Others to Us.

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. Two or More Coverages.

If two or more coverages of this policy apply to the same loss, the maximum amount we will pay as damages under all the coverages will not exceed the highest Limit of Insurance that applies to any one of the coverages.

10. Two or More Policies.

If two or more policies issued by us apply to the same insured and these policies also apply to the same loss, the maximum amount we will pay as damages under all the policies will not exceed the highest applicable Limit of Insurance that applies to any one of the policies.

This does not apply to any policy issued by us that is specifically written as excess insurance.

11. When We Do Not Renew.

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations Page written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## H. DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title, or slogan.

2. "Auto" means a land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

3. "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" does not include mental or emotional injury, suffering, or distress that does not result from physical injury.

4. "Counseling incident" means any act or omission in the furnishing of counseling services.

5. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico, and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

   c. All parts of the world if:

      (1) The injury or damage arises out of:

         (a) Goods or products made or sold by you in the territory described in a. above; or

         (b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

      (2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

6. "Employee" includes a "leased worker." "Employee does not include a "temporary worker."

7. "Executive officer" means a person holding any of the officer positions created by your

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

charter, constitution, bylaws, or any other similar governing document.

8. "Impaired property" means tangible property, other than "your product" or "your work" that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate, or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement; or

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing.

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage.

(3) Under which the insured, if an architect, engineer, or surveyor, assumes liability for any injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural, or engineering activities.

An "insured contract" does not include that part of any contract or agreement that indemnifies any person or organization for; or under which an insured assumes the liability of any person or organization for "bodily injury," "property damage," "personal injury," "advertising injury" or injury for "sexual misconduct or sexual molestation"; arising out of a "Professional Health Care Incident."

a. "Professional Health Care Incident" means:

(1) Any act or omission:

(a) In the furnishing of "Professional Health Care Services." This includes furnishing of food, beverages, medications, or appliances in connection with such services;

Copyright, Church Mutual Insurance Company, 2004. Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 1995.

(b) In the handling of deceased human bodies;

(c) Arising out of service by any persons as members of a formal accreditation, standards review or similar board of the Named Insured or as a person who executes the duties of such board.

(2) Failure to comply with any right of a health care facility resident under any state law regulating you as a resident health care facility;

(3) Failure to comply with any right of a resident as included in the United States Department of Health, Education, and Welfare regulation governing intermediate care facilities and skilled nursing facilities regardless of whether you are subject to such regulations; and

(4) Failure to protect any resident from undue influence by an insured when such undue influence is to the personal or financial detriment of the resident.

b. "Professional Health Care Services" as used in this exclusion endorsement means your professional medical, nursing, cosmetic, social, and similar professional services that relate to the care of any resident.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft, or "auto";

b. While it is in or on an aircraft, watercraft, or "auto"; or

c. While it is being moved from an aircraft, watercraft, or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the

movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft, or "auto."

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment.

a. Bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers, or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers, or rollers.

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers.

f. Vehicles not described in a., b., c., or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos."

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

(c) Street cleaning.

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal injury" means injury, other than "bodily injury" arising out of one or more of the following offenses:

a. False arrest, detention, or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies.

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

e. Oral or written publication of material that violates a person's right of privacy.

15. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations states that products completed operations are subject to the General Aggregate Limit.

16. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

17. "Sexual misconduct or sexual molestation" is any activity by anyone (whether an adult or child) which is sexual in nature whether permitted or unpermitted, including but not limited to, sexual assault, sexual battery, sexual relations, sexual acts, sexual activity, sexual handling, sexual massage, sexual exploitation, sexual exhibition, photographic,

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

video or other reproduction of sexual activity, sexual stimulation, fondling, intimacy, exposure of sexual organs, lewd, or lascivious behavior or indecent exposure, fornication, undue familiarity, or unauthorized touching.

18. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury," "advertising injury," and injury for sexual misconduct or sexual molestation to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed, or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts, or equipment furnished in connection with such work or operations.

"Your work" includes warranties or representations made at any time with respect to the fitness, quality, durability, or performance of any of the items included in a. or b. above.



Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDATORY ENDORSEMENT - PERSONAL INJURY

This endorsement modifies the insurance provided by the General Liability Coverage Form.

The following is added to the General Liability Coverage Form.

Paragraph H.14., DEFINITIONS, is deleted and replaced with the following:

14. "Personal injury" means injury, other than "bodily injury" arising out of one or more of the following offenses:

    a. False arrest, detention, or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, unless such offense is alleged against an insured by an "Affiliated Entity."

    d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services, unless such offense is alleged against an insured by an "Affiliated Entity"; or

    e. Oral or written publication of material that violates a person's right of privacy.

The following is added to Paragraph H., DEFINITIONS:

"Affiliated Entity" means any entity or organization with which the Named Insured is affiliated or associated, or which the Named Insured governs or is governed by, owns or is owned by, or controls or is controlled by, including, but not limited to, any and all corporations, associations, partnerships, joint ventures, foundations, churches, congregations, trusts, educational institutions, day care facilities, group home facilities, denominations, dioceses, conventions, districts, synods, councils, and any other similar entity or organization. "Affiliated Entity" includes all "Directors, Officers and Trustees," employees, members, or volunteers of such entity or organization, or of the Named Insured.

"Directors, Officers and Trustees" means any of your past, present, or future directors, officers, trustees, clergy, wardens, deacons, elders, or members of duly elected, appointed, or constituted governing bodies while acting within the scope of their duties as such; and, in the event of death, incapacity, or bankruptcy, the estate, heirs, legal representatives, or assigns of the individual, but only with respect to their duties as such.

Copyright, Church Mutual Insurance Company, 2006.

# GENERAL LIABILITY ADDITIONAL PROVISIONS FORM

**For Religious Institution Premises and Operations**

The following Additional Provisions apply to your Religious Institution premises and operations.

**A. MEDICAL EXPENSE COVERAGE**

1. Insuring Agreement.

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations (including your operations off premises);

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. Subject to a. above, we will pay medical expenses for "bodily injury" to any person while practicing for or participating in any athletic activity including physical training, sports and sports contests, or exhibitions. Our payment will be excess of the amount due from any other insurance. We will not pay the amount due from that other insurance.

c. We will make these payments regardless of fault. These payments will not exceed the applicable Limit of Insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray, and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing, and funeral services.

2. Medical Expense - Transfer of Rights to Recover From Others.

If any person for whom we make payment under Medical Expense Coverage has rights to recover from other responsible parties all or part of that payment, those rights are transferred to us. At our request, any person for whom we make payment must assist us in our efforts to recover payment.

3. Exclusions.

We will not pay expenses for "bodily injury":

a. To a person hired to do work for or on behalf of any insured or tenant of any insured.

This exclusion does not apply to "bodily injury" to a person while doing volunteer work for you.

b. To a person injured on that part of premises you own or rent and on ways next to premises you own or rent that the person normally occupies.

c. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or similar law.

d. Included within the "products-completed operations hazard."

e. Excluded under the liability coverages of Paragraphs A and B of the General Liability Coverage Form.

f. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion, or revolution.

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

**B. SUPPLEMENTARY PAYMENTS - BODILY INJURY AND PROPERTY DAMAGE LIABILITY COVERAGE AND PERSONAL AND ADVERTISING INJURY LIABILITY COVERAGES**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

   e. All costs taxed against the insured in the "suit." For the purpose of this provision, costs do not include prejudgment interest or post judgment interest.

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

   These payments will not reduce the Limits of Insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) agrees in writing to:

         (a) cooperate with us in the investigation, settlement, or defense of the "suit";

         (b) immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the "suit";

         (c) notify any other insurer whose coverage is available to the indemnitee; and

         (d) cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) provides us with written authorization to:

         (a) obtain records and other information related to the "suit"; and

         (b) conduct and control the defense of the indemnitee in such "suit."

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2. b. (2) of Coverage A - **BODILY INJURY AND PROPERTY DAMAGE LIABILITY COVERAGE**, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

3. We will pay for loss to property of others, not to exceed $500 in any one "occurrence" caused by persons participating in an activity organized by you. Loss shall mean damage or destruction, but does not include disappearance, theft, or loss of use. This insurance does not apply:

a. If coverage is provided by the Property Coverage Part (if any) of this policy; or

b. If the loss is covered by any other insurance you have or by any insurance of such person who causes such loss.

These payments will not reduce the Limits of Insurance.

**C. WHO IS AN INSURED**

1. If you are designated in the Declarations Page as a Religious Institution:

a. You are an insured.

b. Your clergy and "executive officers" are insureds but only with respect to their duties as such.

c. Your directors, trustees, officials, elders, deacons, vestry members, council members, and members of your board of education are insureds, but only with respect to their duties as such.

d. (1) Any of your members are insureds but only with respect to their liability for your activities or activities they perform on your behalf.

(2) Any person(s) who are volunteer worker(s) for you are insureds, but only while acting at your direction and within the scope of their duties for you.

However, none of these members or volunteers is an insured for:

(a) "Bodily injury" or "personal injury" to you or to a "co-employee" while in the course of his or her employment, or the spouse, child, parent, brother, or sister of that "co-employee" as a consequence of such "bodily injury" or "personal injury" or for any obligation to share damages with or repay someone else who must pay damages because of the injury; or

(b) "Property damage" to property owned or occupied by or rented or loaned to that member or volunteer or any of your other members or volunteers.

e. Your "employees," other than your "executive officers," are insureds but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1) "Bodily injury" or "personal injury" to you or to a co-"employee" while that co-"employee" is either in the course of his or her employment, or performing duties related to the conduct of your business, or the spouse, child, parent, brother, or sister of that co-"employee" as a consequence of such "bodily injury" or "personal injury" or for any obligation to share damages with or repay someone else who must pay damages because of the injury; or

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

(2) "Bodily injury" or "personal injury" arising out of his or her providing or failing to provide professional health care services; or

(3) "Property damage" to property owned or occupied by or rented or loaned to that "employee" or any of your other "employees."

f. Any organization controlled by you is an insured, but only if there is no other similar insurance available to that organization. However, no organization is an insured for any injury or damage that occurred before you acquired control of the organization.

g. Any person (other than your "employee") or any organization is an insured while acting as your real estate manager.

h. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

(1) "Bodily injury" to a co-"employee" of the person driving the equipment; or

(2) "Property damage" to property owned by, rented to, in charge of or occupied by you or the employer of any person who is an insured under this provision.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations Page.

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - MEDICAL EXPENSE COVERAGE - SPECIFIC ACTIVITY OR EVENT

This endorsement modifies the insurance provided under the General Liability Coverage Part.

The following change is made to the General Liability Additional Provisions Form, but only for the specific activity or event this endorsement applies to.

## A. EXCLUSION - MEDICAL EXPENSE COVERAGE - SPECIFIC ACTIVITY OR EVENT

1. The insurance provided under Medical Expense Coverage does not apply to the specific activity or event shown in the Declarations Page.

Refer to the Declarations Page to determine the specific activity or event this endorsement applies to.

Copyright, Church Mutual Insurance Company, 1989.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1989.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the General Liability Coverage Part.

The following is added for all coverages of the General Liability Coverage Form and the Sexual Misconduct or Sexual Molestation Liability and Medical Expense Coverage Form.

## A. EXCLUSION - DESIGNATED PROFESSIONAL SERVICES

1. This insurance does not apply to injury for "bodily injury," "property damage," "personal injury," "advertising injury," or "sexual misconduct or sexual molestation," due to the rendering or failure to render any professional service shown in the applicable schedule in the Declarations Page.

Refer to the Declarations Page to determine the excluded professional services.

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION - EXCLUDED OPERATION(S)

This endorsement modifies insurance provided under the General Liability Coverage Part.

The following is added for all coverages of the General Liability Coverage Form and the Sexual Misconduct or Sexual Molestation Liability and Medical Expense Coverage Form.

**A. EXCLUSION - EXCLUDED OPERATION(S)**

1. This insurance does not apply to injury for "bodily injury," "property damage," "personal injury," "advertising injury," or "sexual misconduct or sexual molestation" to any person arising out of any excluded operation(s) shown in the applicable schedule of the Declarations Page.

Refer to the Declarations Page to determine the excluded operation(s).

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - LEAD LIABILITY

This endorsement modifies insurance provided under the General Liability Coverage Part.

The following is added for all coverages of the General Liability Coverage Form.

A. EXCLUSION - LEAD LIABILITY

This insurance does not apply to:

1. Actual or alleged "bodily injury" arising out of the presence, ingestion, inhalation, absorption, adsorption, or exposure to lead in any form;

2. Actual or alleged "property damage," "personal injury," or "advertising injury" arising out of any form of lead;

3. Any loss, cost, or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effects of lead; or

4. Any loss, cost, or expense arising out of any claim or suit by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of lead.

Copyright, Church Mutual Insurance Company, 1994.
Includes copyrighted material of American Association of Insurance Services with its permission.
Copyright, American Association of Insurance Services, 1992.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LEGAL DEFENSE COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations Page. The words "we", "us" and "our" refer to Church Mutual Insurance Company.

~~The word "insured" means any person or organization qualifying as an insured. Refer to Paragraph B - WHO IS~~ AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph G - DEFINITIONS .

A. LEGAL DEFENSE COVERAGE

1. Insuring Agreement.

We will pay "defense costs," incurred by the insured, that result from a "suit" to which this insurance applies. This insurance applies to these "defense costs" only if:

a. The "suit" results from a "defensible incident" that takes place in the "coverage territory";

b. The "suit" results from a "defensible incident" that occurs during the policy period;

No other obligation or liability to perform acts or services is covered unless explicitly provided for under Supplementary Payments.

2. Exclusions.

This insurance does not apply:

a. To any "defense costs" incurred because of:

(1) "Bodily injury";

(2) "Personal injury";

(3) "Advertising injury";

(4) Injury arising out of:

(a) Any actual or alleged act of "sexual misconduct or sexual molestation." This includes, but is not limited to expenses related to any claim or suit seeking damages based upon, arising out of, or attributable to vicarious liability; negligence in hiring, employment, supervision, retention, or transfer of any employee or volunteer workers; recommendation or referral of any person for employment or volunteer work; failure to protect or negligent supervision of any person (whether an adult or child) failure to warn, failure to investigate, or failure to comply with any obligation to report; and counseling;

(b) Any acts, errors or omissions in providing or failing to provide any professional service;

(5) "Property damage";

(6) A dispute involving this contract, or any other contract issued by us;

(7) Any class action "suit";

(8) Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law; or

(9) Any dispute between the insured and us.

b. If any "defense costs" are:

(1) An obligation of ours or any other insurance company under any other insurance policy or endorsement;

 Copyright, Church Mutual Insurance Company, 2004.

(2) An obligation of any other person, group or organization (other than an insured);

even if the obligation is only a partial obligation.

c. To any damages.

B. WHO IS AN INSURED

See the applicable General Liability Additional Provisions Form.

C. LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations Page and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. "Suits" brought; or

c. Persons or organizations bringing "suits."

2. The Aggregate limit is the most we will pay as the sum of all "defense costs" incurred as a result of all "suits" brought against the insured.

3. Subject to 2. above, the Each Defensible Incident limit is the most we will pay as the sum of all "defense costs" incurred as a result of all "suits" brought against any insured for any one "defensible incident."

The aggregate limits of insurance of this Coverage Form apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations Page, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

D. DEDUCTIBLE

We will not pay any "defense costs" until the amount of the "defense costs" exceeds $250. We will then pay the amount of the "defense costs" in excess of $250, up to the Limits of Insurance.

E. YOUR CHOICE OF AN ATTORNEY

You have the right to choose your own attorney. But, your attorney must be licensed to provide legal services. Your attorney has the right to freely exercise his or her professional judgment in the defense of any "suit" against you.

Attorney's fees and expenses must be reasonable and customary. We shall have the option to audit "defense costs" on behalf of the insured.

F. LEGAL DEFENSE CONDITIONS

1. Bankruptcy.

Bankruptcy or insolvency of the insured or the insured's estate will not relieve us of our obligations under this Coverage Form.

2. Duty to Investigate or Defend.

We have no duty to investigate or defend any "suit" brought against you.

3. Duties in the Event of a "defensible incident" or "suit."

a. You must see to it that we are notified within 60 days of your becoming aware of any "defensible incident" that may result in a "suit." To the extent possible, notice should include:

(1) The nature of the "defensible incident," and

(2) How, when and where the "defensible incident" took place.

Notice of a "defensible incident" is not notice of a "suit."

b. If "suit" is brought against the insured, you must:

(1) Notify us within 60 days of the date "suit" is brought against the insured.

(2) As soon as practicable, send us written notice of the "suit." This notice should include the nature of the "defensible incident," and how, when and where the "defensible incident" took place.

(3) Give us the name, address and other information sufficient to identify the attorney or firm who will be defending you in the "suit."

4. Other Insurance.

a. Primary Insurance.

Copyright, Church Mutual Insurance Company, 2004.

This insurance is primary and our obligations are not affected unless any other insurance or indemnity is also primary. Then we will share with all that other insurance or indemnity by the method described in b. below.

b. Method of Sharing.

If all that other insurance or indemnity permits contribution by equal shares, we will follow this method also. Under this approach, each party contributes equal amounts until it has paid its applicable limit or the "defense costs" are fully paid, whichever comes first.

If contribution by equal shares is not permitted by that other insurance or indemnity, we will contribute by limits. Under this method each party's share is based on the ratio of each party's applicable limit to the total applicable limit of all parties.

5. Representations.

By accepting the endorsement, you agree:

a. The statements in the Declarations Page are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this endorsement in reliance upon your representation.

6. Transfer of Rights of Recovery Against Others to Us.

If the insured has rights to recover all or part of any payment we have made under this Coverage Form, those rights are transferred to us. The insured must do nothing after the "suit" is brought to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

7. Two or More Policies.

If two or more policies issued by us apply to the same insured and these policies also apply to the same "suit," the maximum amount we will pay as damages under all the policies will not exceed the highest applicable Limit of Insurance that applies to any one of the policies.

This does not apply to any policy issued by us that is specifically written as excess insurance.

8. Arbitration.

If we and the insured cannot reach an agreement concerning any of the terms of this Coverage Form, the disagreement will be settled by arbitration. The rules of the American Arbitration Association will be followed. The arbitrator shall have the power to determine the meaning of the terms of this Coverage Form. The arbitrator shall not have the power to change or amend this Coverage Form, unless we and all insureds consent to the change in writing.

We and you will equally share all costs of arbitration.

G. DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

2. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" does not include mental or emotional injury, suffering, or distress that does not result from physical injury.

3. "Coverage territory" means the United States of America (including its territories and possessions), Puerto Rico and Canada.

4. "Defense costs" means the cost of reasonable and customary attorney's fees for legal services rendered in defending "suits" brought against you and includes attorney's expenses in relation to those services. But, the fees and expenses must qualify as a deductible expense to you under Section 162 of the U.S. Internal Revenue Code. This applies even if you are not subject to the code.

5. "Defensible incident" means any acts, omissions or failures of the insured. Every such act, omission or failure involving substantially the same general circumstances shall be considered one "defensible incident"

Copyright, Church Mutual Insurance Company, 2004.

subject to the Each Defensible Incident Limit of Insurance in force at the time the first such "defensible incident" covered by this policy occurred. "Defensible incident" does not include any deliberate acts, omissions or failures for purposes of causing a "suit" to be filed against you.

6. "Law enforcement inquiry" means an investigation undertaken by law enforcement officials and directed against a person suspected of committing a criminal offense under federal, state, or local law, including any related prosecution for such alleged offense.

7. "Personal injury" means injury, other than "bodily injury" arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies;

   d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   e. Oral or written publication of material that violates a person's right of privacy.

8. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

9. "Sexual misconduct or sexual molestation" is any activity by anyone (whether an adult or child) which is sexual in nature whether permitted or unpermitted, including but not limited to, sexual assault, sexual battery, sexual relations, sexual acts, sexual activity, sexual handling, sexual massage, sexual exploitation, sexual exhibition, photographic, video or other reproduction of sexual activity, sexual stimulation, fondling, intimacy, exposure of sexual organs, lewd, or lascivious behavior or indecent exposure, fornication, undue familiarity, or unauthorized touching.

10. "Suit" means a proceeding in a court of proper jurisdiction. "Suit" includes:

    a. A civil proceeding;

    b. An arbitration proceeding to which you must submit or do submit with our consent; or

    c. Any other alternative dispute resolution proceeding to which you submit with our consent; or

    d. Any "law enforcement inquiry."

    All "suits," countersuits, counterclaims, "law enforcement inquiries," and similar proceedings substantially related to the same "defensible incident" shall be considered one "suit."

Copyright, Church Mutual Insurance Company, 2004.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF INSURING AGREEMENT - KNOWN INJURY OR DAMAGE

This endorsement modifies insurance provided under the following:

GENERAL LIABILITY COVERAGE PART

The following is added under Insuring Agreement, Item 1. b.:

(3) Prior to the policy period, no insured listed under Paragraph F - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change, or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph F - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change, or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph F - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

Copyright, Church Mutual Insurance Company, 1999.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CATASTROPHIC VIOLENCE RESPONSE COVERAGE

This endorsement modifies insurance provided under the General Liability Coverage Part.

The following is added to the General Liability Coverage Form.

**SCHEDULE***

| Per Person Limit | Each Violent Incident Limit | Violent Incident Aggregate Limit |
|---|---|---|
| | | |

*Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

**A. CATASTROPHIC VIOLENCE RESPONSE COVERAGE**

1. Insuring Agreement

We will pay covered expenses that result from a "violent incident" to which this insurance applies. This insurance applies to a "violent incident" only if the "violent incident":

a. Occurs during the policy period;

b. Occurs during your "organized activities"; and

c. Occurs on premises you own or lease.

Covered expenses resulting from the "violent incident," (unless otherwise limited) must be incurred within 395 days of the date of the "violent incident."

2. Exclusions

We will not pay expenses:

a. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

b. Due to loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

c. Arising out of any actual or alleged act of "sexual misconduct or sexual molestation." This includes, but is not limited to expenses related to any claim or suit seeking damages based upon, arising out of, or attributable to vicarious liability; negligence in hiring, employment, supervision, retention, or transfer of any employee or volunteer workers; recommendation or referral of any person for employment or volunteer work; failure to protect or negligent supervision of any person (whether an adult or child) failure to warn, failure to investigate, or failure to comply with any obligation to report; and counseling.

d. Arising out of the ownership, maintenance, or use of any motorized vehicle or equipment, including, but not limited to any aircraft, "auto," watercraft, recreational vehicle, snowmobile, motorcycle, motorbike, golf cart, or lawnmower.

e. Incurred by the perpetrator(s) of the "violent incident," regardless of their relationship to you.

f. For legal costs, litigation, attorney fees, judgments, settlements, and damages that result from any claim, action, or legal proceeding of any type or nature brought against any insured in connection with a "violent incident."

Copyright, Church Mutual Insurance Company, 2004.

g. For legal costs, litigation, and attorney fees from any claim, action, or legal proceeding of any type or nature brought by any insured in connection with a "violent incident."

h. For any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law, regardless of whether the claimant has made a claim for such benefits.

i. For damage to property including loss of use of property.

j. For any services provided by a governmental entity.

This exclusion does not apply to services that are customarily charged to the public.

k. For indirect or consequential property loss of any kind resulting from a "violent incident."

B. COVERED EXPENSES

1. Subject to the applicable Limits of Insurance, covered expenses means only reasonable and necessary expenses. Covered expenses do not include any expenses other than emergency medical expenses that are not approved by us before incurred.

2. Subject to the Per Person Limit, reasonable and necessary expenses for any one person include:

a. Medical expenses, including ambulance services, emergency airlift and physical therapy. Emergency medical expenses do not require pre-approval by us. Our payment for covered medical expenses will be excess of the amount due from any other valid and collectible insurance including insurance available to any insured or any injured person. We will not pay the amount due from that other insurance.

b. Individual counseling services for up to 90 days after the "violent incident" for any person who has sustained "serious bodily injury" or was held in a "hostage situation."

c. Individual counseling for up to 90 days after the violent incident for the immediate family of any person who has sustained "serious bodily injury" or was held in a "hostage situation."

3. Subject to the Violent Incident Limit, reasonable and necessary expenses include:

a. Funeral expenses. The most we will pay for funeral expenses is $10,000 for any one funeral.

b. We will pay two-thirds of the "wage loss" incurred by a person who sustains "serious bodily injury," a person held in a "hostage situation," or their "caregiver" for up to 30 days after the "violent incident" and up to a maximum limit of $2,500. In the event that another policy, program or plan pays a portion of the "wage loss" but less than two-thirds of the "wage loss" then we will pay the difference between that portion and two-thirds of the "wage loss."

(1) Proof of "wage loss" must be provided in writing by the employer of the person sustaining the "wage loss." If a person to whom coverage applies under this endorsement is self-employed, then such person must provide tax returns and other necessary records to document their "wage loss."

c. The cost of an independent public relations consultant for up to 30 days after a "violent incident."

d. Independent security services for up to 15 days after a "violent incident."

e. Group counseling services for your members for up to 30 days after a "violent incident."

f. "Wages" of temporary staff hired to replace employees who have sustained "serious bodily injury" during a "violent incident." "Wages" shall not be more than the "wages" received by the employee being replaced. Coverage shall end 30 days after the date the "violent incident" occurred.

g. Rental of an equivalent alternate facility for up to 30 days after the "violent incident."

h. Group counseling services for your members for up to 7 days before and/or 7 days after the first anniversary date of a "violent incident."

Copyright, Church Mutual Insurance Company, 2004

i. Security services and independent public relations consultant for up to 7 days before and/or 7 days after the first anniversary date of a "violent incident."

C. **LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Schedule of this Endorsement or on the Declarations Page and the rules below fix the most we will pay.

2. The Violent Incident Aggregate Limit is the most we will pay for the sum of all covered expenses arising out of all "violent incidents."

3. Subject to 2. above, the Each Violent Incident Limit is the most we will pay for the sum of all covered expenses arising out of any one "violent incident."

4. Subject to 3. above, the Per Person Limit is the most we will pay any one person for the sum of all covered expenses arising out of a "violent incident."

5. The Limits of Insurance shown in the Schedule of this Endorsement for Each Violent Incident (or on the Declarations Page for Each Violent Incident) are the most that we will pay for the sum of all covered expenses that arise out of a violent incident, regardless of:

a. The number of perpetrators;

b. The number of people sustaining "serious bodily injury," or held in a "hostage situation;"

c. The period of time over which the "violent incident" occurs; or

d. The number of policy periods over which the "violent incident" occurs. If the "violent incident" occurs over more than one policy period, the limits of insurance applicable when the "violent incident" first began will apply.

D. **CATASTROPHIC VIOLENCE RESPONSE COVERAGE CONDITIONS**

1. The payment of covered expenses under this endorsement is not an admission of liability under other coverages of this policy.

2. Duties in the event of a "violent incident."

a. You must see to it that we are notified as soon as practicable of any "violent incident" that may result in a claim. To the extent possible, notice should include:

(1) How, when, and where the "violent incident" took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature of the injury arising out of the "violent incident."

b. No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior approval.

3. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary for all covered expenses except medical expenses. When this insurance is primary, our obligations are not affected unless any other insurers' insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent, or on any other basis for medical expenses.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically

Copyright, Church Mutual Insurance Company, 2004.

to apply in excess of the Limits of Insurance shown in the Schedule of this Endorsement or on the Declarations Page.

c.  Method of Sharing

If all the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

4.  Transfer of Rights of Recovery Against Others To Us.

If the insured has rights to recover all or part of any payment we have made under this endorsement, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us to enforce them.

**E. DEFINITIONS**

1.  "Auto" means a land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment.

2.  "Caregiver" means "child," "spouse," or "parent" for the purpose of this coverage.

3.  "Child" means a natural, adopted, or foster child, a stepchild, or a legal ward.

4.  "Disruptive behavior" means any altercation or dispute that would not cause a reasonable adult to conclude that he or she was in immediate danger of "serious bodily injury." It includes, but is not limited to, behavior that disturbs, interferes with, or prevents your normal activities, such as: fistfights, brawling, punching, hitting, slapping, kicking, biting, choking, yelling, using profanity, bullying, or pranks.

5.  "Hostage situation" means persons are held captive and restrained by someone who threatens to inflict "serious bodily injury" and the circumstances of the threat cause a

reasonable adult to conclude the captives are at risk of "serious bodily injury."

6.  "Organized activities" means only activities sponsored by you.

7.  "Parent" means a natural parent, foster parent, adoptive parent, stepparent, or legal guardian.

8.  "Serious bodily injury" means death or bodily injury that creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any significant bodily member or organ. "Serious bodily injury" does not include emotional or mental injury.

9.  "Sexual misconduct or sexual molestation" is any activity by anyone (whether an adult or child) which is sexual in nature whether permitted or unpermitted, including but not limited to, sexual assault, sexual battery, sexual relations, sexual acts, sexual activity, sexual handling, sexual massage, sexual exploitation, sexual exhibition, photographic, video or other reproduction of sexual activity, sexual stimulation, fondling, intimacy, exposure of sexual organs, lewd, or lascivious behavior or indecent exposure, fornication, undue familiarity, or unauthorized touching.

10. "Spouse" means a legal husband or wife.

11. "Violent incident" is limited to a catastrophic event that:

a.  Is caused by an intentional criminal act or a series of related intentional criminal acts; and

b.  Results in two or more persons [not including the perpetrator(s)] sustaining "serious bodily injury" or being held in a "hostage situation."

It does not include "disruptive behavior."

A "violent incident" starts when the first act or series of acts begins. It ends when the act is concluded, when the last in a series of acts is concluded, or when the premises have been secured by proper civil authority, whichever is earliest.

12. "Wage loss" means loss of actual gross income, but only to the extent that such income was being paid on the date that "serious bodily injury" caused by a "violent incident" occurred. "Wage loss" does not include potential income that may have been received from overtime hours, on-call pay or

Copyright, Church Mutual Insurance Company, 2004.

similar types of compensation. "Wage loss" also does not include compensation for paid sick leave, short-term disability days, long-term disability days, or family leave that was used as a result of the "serious bodily injury."

13. "Wages" means compensation you pay an employee, including the cost of health, welfare and pension benefits.

Copyright, Church Mutual Insurance Company, 2004

# SEXUAL MISCONDUCT OR SEXUAL MOLESTATION LIABILITY AND MEDICAL EXPENSE COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this Policy, the words "you" and "your" refer to the Named insured shown in the Declarations Page. The words "we," "us," and "our" refer to Church Mutual Insurance Company.

The word "insured" means any person or organization qualifying as an insured. **Refer to Paragraph D - Who Is An Insured.**

If not defined within the text of this coverage form, words and phrases that appear in quotation marks have special meaning. **Refer to Paragraph G - Definitions.**

Except to the extent that insurance is provided by this Sexual Misconduct or Sexual Molestation Liability and Medical Expense Coverage Form, the Policy to which this Coverage Form is attached does not apply to nor do we have any duty to defend any claim or suit seeking damages based upon, arising out of, or attributable to any actual or alleged act of "sexual misconduct or sexual molestation." An actual or alleged act of "sexual misconduct or sexual molestation" includes, but is not limited to any claim or suit seeking damages based upon, arising out of, or attributable to vicarious liability; negligence in hiring, employment, supervision, retention, or transfer of any employee or volunteer worker; recommendation or referral of any person for employment or volunteer work; failure to protect or negligent supervision of any person (whether an adult or child); failure to warn, failure to investigate, or failure to comply with any obligation to report; and counseling.

**A. SEXUAL MISCONDUCT OR SEXUAL MOLESTATION LIABILITY COVERAGE**

1. Insuring Agreement.

a. We will pay those sums that any insured becomes legally obligated to pay as damages because of injury arising out of an act of "sexual misconduct or sexual molestation" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "sexual misconduct or sexual molestation" to which this insurance does not apply. We may, at our discretion, investigate any act of "sexual misconduct or sexual molestation" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited. Refer to Paragraph E. - Limits of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Sexual Misconduct or Sexual Molestation Liability Coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

b. This insurance applies to injury only if:

(1) The injury is caused by an act of "sexual misconduct or sexual molestation" that takes place in the "coverage territory"; and

(2) The act of "sexual misconduct or sexual molestation" occurs during the policy period.

2. Exclusions.

This insurance does not apply to:

a. Any person who personally participated in any act of "sexual misconduct or sexual molestation."

b. The cost of defense of, or the cost of paying any fines for, any person resulting from actual or alleged violation of any penal or criminal statute.

c. Injury arising out of sex discrimination.

d. Injury for which any insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This Exclusion does not apply to liability

Copyright, Church Mutual Insurance Company, 2004.

for damages that the insured would have in the absence of the contract or agreement.

e. Any obligation of any insured under a workers' compensation, disability benefits, or unemployment compensation law or any similar law.

f. Injury to:

(1) An employee or co-employee of the insured arising out of and in the course of employment by any insured; or

(2) The spouse, child, parent, brother, or sister of that employee as a consequence of (1) above.

This Exclusion applies:

(1) Whether any insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

g. Injury arising out of any:

(1) Refusal to employ;

(2) Termination of employment;

(3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or other employment-related practices, policies, acts, errors, or omissions; or

(4) Consequential damages as a result of g.(1), g.(2), or g.(3) above.

This exclusion applies where any insured is liable either as an employer or in any other capacity; or there is an obligation to fully or partially reimburse a third party for damages arising out of Paragraphs g.(1), g.(2), g.(3), or g.(4) above.

h. Injury arising out of the ownership, maintenance, use, or entrustment to others of any aircraft, "auto", or watercraft.

i. Any exemplary or punitive damages or multiplied amounts of compensatory or other damages.

j. Injury arising out of any actual or alleged violation of a penal statute, regulation, or ordinance committed by or with the knowledge or consent of any insured.

k. "Bodily injury," "property damage," "personal injury," or "advertising injury."

**B. SEXUAL MISCONDUCT OR SEXUAL MOLESTATION MEDICAL EXPENSE COVERAGE**

1. Insuring Agreement.

a. We will pay medical expenses because of injury arising out of any act of "sexual misconduct or sexual molestation" to which this insurance applies

provided that:

(1) The act or alleged act of "sexual misconduct or sexual molestation" takes place in the "coverage territory," during the policy period.

(2) The expenses are incurred and reported to us within a reasonable period of time from the date of the injury; and

(3) The injured person submits to examination, at our expense, by health care professionals of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable Limit of Insurance. We will pay reasonable expenses for necessary professional services for treatment of injury resulting from "sexual misconduct or sexual molestation."

2. Sexual Misconduct or Sexual Molestation Medical Expense - Transfer of Rights to Recover From Others.

If any person for whom we make payment under Sexual Misconduct or Sexual Molestation Medical Expense Coverage has rights to recover from other responsible parties all or part of that payment, those rights are transferred to us. At our request, any person for whom we make payment must assist us in our efforts to recover payment.

Copyright, Church Mutual Insurance Company, 2004.

3. Exclusions.

We will not pay medical expenses for injury which is excluded under Paragraph A.2. of this coverage form.

**C. SUPPLEMENTARY PAYMENTS - SEXUAL MISCONDUCT OR SEXUAL MOLESTATION LIABILITY COVERAGE**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

   c. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

   d. All costs taxed against any insured in the "suit." For the purpose of this provision, costs do not include prejudgment interest or post judgment interest.

   e. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   f. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

   These payments will not reduce the Limits of Insurance.

**D. WHO IS AN INSURED**

1. You are an insured.

2. Any organization controlled by you is an insured, except that:

   a. No organization is an insured if other similar insurance is available to that organization.

   b. No organization is an insured for any act of "sexual misconduct or sexual molestation" committed before you acquired control of the organization.

3. The clergy, executive officers, directors, trustees, officials, elders, deacons, vestry members, council members, members of your board of education, and employees of you and an organization controlled by you is also an insured, but only with respect to their duties as such and while performing duties related to the conduct of your business. However, no person is an insured for conduct resulting in injury to an employee while that employee is either in the course of his or her employment or performing duties related to the conduct of your business, and no person is an insured for injury to the spouse, child, parent, brother, or sister of that employee.

4. Persons who are your members or volunteer workers for you or an organization controlled by you is an insured, but only while acting at your direction and within the scope of their duties for you. However, none of these members or volunteers is an insured for conduct resulting in injury to an employee while that employee is either in the course of his or her employment or performing duties related to the conduct of your business, and no person is an insured for injury to the spouse, child, parent, brother, or sister of that employee.

No person is an insured under Sexual Misconduct or Sexual Molestation Liability Medical Expense Coverage if they personally participated in the act of "Sexual Misconduct or Sexual Molestation."

**E. LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations Page and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits."

2. The Sexual Misconduct or Sexual Molestation Liability Coverage Each Claim Limit is the most we will pay for the sum of all damages under Sexual Misconduct or Sexual Molestation Liability Coverage because of all injuries to all persons arising out of "One Claim."

Copyright, Church Mutual Insurance Company, 2004.

For the purposes of the Limits of Insurance, the term "One Claim" means the following:

Regardless of the number of acts of "sexual misconduct or sexual molestation," period of time over which such acts occur, number of policies (whether concurrent or consecutive) issued by us during which such acts occur, or the number of persons acted upon, all injuries arising out of all acts of "sexual misconduct or sexual molestation" by the same person, or by two or more persons acting together, will be considered "One Claim," subject to the Sexual Misconduct or Sexual Molestation Liability Coverage Each Claim Limit of insurance in force during the term of a policy issued by us at the time the first act to any person occurred.

All acts of "sexual misconduct or sexual molestation" are deemed to have occurred at the time the first act occurred during the term of an in-force policy issued by us for purposes of determining the Sexual Misconduct or Sexual Molestation Liability Coverage Each Claim Limit.

If acts of "sexual misconduct or sexual molestation" occur during the policy period of more than one policy issued by us (whether or not concurrent or consecutive), the Sexual Misconduct or Sexual Molestation Liability Coverage Each Claim Limit of the policies cannot be stacked. The Sexual Misconduct or Sexual Molestation Liability Coverage Each Claim Limit available is the Sexual Misconduct or Sexual Molestation Liability Coverage Each Claim Limit in force at the time the first act occurred during the term of a policy issued by us and in effect at the time the first act occurred.

3. Subject to 2. above, the Sexual Misconduct or Sexual Molestation Liability Coverage Aggregate Limit is the most we will pay for the sum of all damages from all claims under Sexual Misconduct or Sexual Molestation Liability Coverage because of all injuries to all persons arising out of all acts of "sexual misconduct or sexual molestation" by all persons (whether acting together or separately) regardless of the number of acts of "sexual misconduct or sexual molestation," period of time over which such acts occur, number of policies (whether concurrent or consecutive) issued by us in which such acts occur, or the number of persons acted upon.

   The Sexual Misconduct or Sexual Molestation Liability Coverage Aggregate Limit of this Coverage Form applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations Page, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Sexual Misconduct or Sexual Molestation Liability Coverage Aggregate Limit of insurance.

   If acts of "sexual misconduct or sexual molestation" by any person occur during the policy period of more than one policy issued by us (whether concurrent or consecutive), the Sexual Misconduct or Sexual Molestation Aggregate Limit of the policies cannot be stacked.

4. The Sexual Misconduct or Sexual Molestation Medical Expense Any One Person Limit is the most we will pay under Medical Expense Coverage for all medical expenses because of all injury arising out of all acts of "sexual misconduct or sexual molestation," sustained by any one person.

   The Sexual Misconduct or Sexual Molestation Medical Expense Any One Person Limit available is the Sexual Misconduct or Sexual Molestation Medical Expense Any One Person Limit in force at the time the first act occurred under a policy issued by us and in effect at the time the first act occurred.

5. Subject to 4. above, the Sexual Misconduct or Sexual Molestation Medical Expense Aggregate Limit is the most we will pay for the sum of all medical expenses under Sexual Misconduct or Sexual Molestation Medical Expense for the term of the policy.

## F. SEXUAL MISCONDUCT OR SEXUAL MOLESTATION LIABILITY CONDITIONS

1. Bankruptcy.

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Form.

2. Duties in the event of Occurrence, Offense, Claim, or Suit or becoming aware of any act of "Sexual Misconduct or Sexual Molestation."

   a. You must see to it that we are notified within 60 days of your becoming aware of any act of "sexual misconduct or sexual molestation" which may result in a claim. To the extent possible, notice should include:

Copyright, Church Mutual Insurance Company, 2004.

(1) How, when, and where the act of "sexual misconduct or sexual molestation" took place; and

(2) The names and addresses of any injured persons and witnesses; and

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us.

No person or organization has a right under this Coverage Form:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Form unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Form or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance.

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Form, our obligations are limited as follows:

a. Primary Insurance.

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance.

(1) This insurance is excess over any of the other insurance, whether primary, excess, or contingent.

(2) This insurance is excess over any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

(3) When this insurance is excess, we will have no duty under this Coverage Form to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

Copyright, Church Mutual Insurance Company, 2004.

(b) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations Page.

c. Method of Sharing.

If all the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

5. Representations.

By accepting the policy, you agree:

a. The statements in the Declarations Page are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representation.

6. Separation of Insureds.

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Form to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

7. Transfer of Rights of Recovery Against Others to Us.

If the insured has rights to recover all or part of any payment we have made under this Coverage Form, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

## G. DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title, or slogan.

2. "Auto" means a land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment.

3. "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" does not include mental or emotional injury, suffering, or distress that does not result from physical injury.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico, and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

Copyright, Church Mutual Insurance Company, 2004.

(2)    The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5.   "Personal injury" means injury, other than "bodily injury" arising out of one or more of the following offenses:

   a.   False arrest, detention, or imprisonment;

   b.   Malicious prosecution;

   c.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies.

   d.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

   e.   Oral or written publication of material that violates a person's right of privacy.

6.   "Property damage" means:

   a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

7.   "Sexual misconduct or sexual molestation" is any activity by anyone (whether an adult or child) which is sexual in nature whether permitted or unpermitted, including but not limited to, sexual assault, sexual battery, sexual relations, sexual acts, sexual activity, sexual handling, sexual massage, sexual exploitation, sexual exhibition, photographic, video or other reproduction of sexual activity, sexual stimulation, fondling, intimacy, exposure of sexual organs, lewd, or lascivious behavior or indecent exposure, fornication, undue familiarity, or unauthorized touching.

8.   "Suit" means a civil proceeding in which damages caused by "sexual misconduct or sexual molestation" to which this insurance applies are alleged. "Suit" includes:

   a.   An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b.   Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Copyright, Church Mutual Insurance Company, 2004.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

GENERAL LIABILITY COVERAGE FORM
GENERAL LIABILITY ADDITIONAL PROVISIONS FORM

---

**A.** Exclusion **j.** under Paragraph **2.**, **Exclusions** of **Coverage A – Bodily Injury And Property Damage Liability Coverage – General Liability Coverage Form** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**j.** "Bodily injury" or "property damage," however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Coverage B – Personal And Advertising Injury Liability Coverage - General Liability Coverage Form:**

**2. Exclusions**

This insurance does not apply to:

"Personal and advertising injury," however caused, arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion **f.** under Paragraph **3.**, **Exclusions** of **Coverage A – Medical Expense Coverage – General Liability Additional Provisions Form** does not apply. Medical payments due to war are now subject to Exclusion **e.** of Paragraph **3.**, **Exclusions** of **Coverage A– Medical Expense Coverage – General Liability Additional Provisions Form** since "bodily injury" arising out of war is now excluded under Coverage **A – Bodily Injury And Property Damage Liability Coverage – General Liability Coverage Form.**

Copyright, Church Mutual Insurance Company, 2003.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2002.

# CRIME CONDITIONS FORM

This Crime Coverage Part is subject to the Common Policy Conditions, any other Conditions in any Crime Coverage Forms, and the following Conditions.

## A. DISCOVERY PERIOD FOR LOSS

We will pay only for covered loss discovered no later than one year from the end of the policy period.

## B. DUTIES IN THE EVENT OF LOSS

After you discover a loss or a situation that may result in loss of Covered Property, you must:

1. Notify us as soon as possible;
2. Submit to examination under oath at our request and give us a signed statement of your answers;
3. Give us a detailed, sworn proof of loss within 120 days;
4. Cooperate with us in the investigation and settlement of any claim;
5. Notify the police if you have reason to believe that any loss of, or loss from damage to, Covered Property involves a violation of law.

## C. JOINT INSURED

1. If more than one insured is named in the Declarations Page, the first Named Insured will act for itself and for every other insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.
2. If any insured or partner or officer of that insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every insured.
3. An employee of any insured is considered to be an employee of every insured.
4. If this insurance or any of its coverages is cancelled or terminated as to any insured, loss sustained by that insured is covered only if discovered no later than one year from the date of that cancellation or termination.
5. We will not pay more for loss sustained by more than one insured than the amount we would pay if all the loss had been sustained by one insured.

## D. LEGAL ACTION AGAINST US

1. You may not bring any legal action against us involving loss:
   a. Unless you have complied with all the terms of this insurance; and
   b. Until 90 days after you have filed proof of loss with us; and
   c. Unless brought within 2 years from the date you discover the loss.

## E. LOSS COVERED UNDER MORE THAN ONE COVERAGE OF THIS POLICY

1. If two or more coverages of the policy apply to the same loss, we will pay the lesser of:
   a. The actual amount of loss; or
   b. The sum of the Limits of Insurance applicable to those coverages.

## F. COVERAGE TERRITORY

1. The coverage territory is:
   a. The United States of America;
   b. Puerto Rico; or
   c. Canada.

## G. LOSS COVERED UNDER THIS INSURANCE AND PRIOR INSURANCE ISSUED BY US OR ANY AFFILIATE

1. If any loss is covered:
   a. Partly by this insurance; and
   b. Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

Copyright, Church Mutual Insurance Company, 1987.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1987.

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

H. NON-CUMULATION OF LIMIT OF INSURANCE

Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

I. OTHER INSURANCE

This insurance does not apply to loss recoverable or recovered under other insurance or indemnity.

J. POLICY PERIOD

1. The Policy Period is shown in the Declarations Page.

2. We will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

K. RECORDS

You must keep records of all Covered Property so we can verify the amount of any loss.

L. RECOVERIES

1. Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

   a. To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the deductible amount, if any;

   b. Then to us, until we are reimbursed for the settlement made;

   c. Then to you, until you are reimbursed for that part of the loss equal to the deductible amount, if any.

2. Recoveries do not include any recovery:

   a. From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

   b. Of original "securities" after duplicates of them have been issued.

M. TRANSFER OF YOUR RIGHTS OF RECOVERY AGAINST OTHERS TO US

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

N. PRIVILEGE TO ADJUST WITH OWNER

In the event of covered loss involving property of others, we have the right to:

1. Settle the loss with the owners of the property. A receipt for payment from the owners of that property will satisfy any claim of yours.

2. Provide a defense for legal proceedings brought against you. If provided, the expense of this defense will be at our cost and will not reduce the applicable Limit of Insurance under this insurance.

Copyright, Church Mutual Insurance Company, 1987.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1987.

# CHURCH THEFT OF MONEY AND SECURITIES COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations Page. The words "we", "us" and "our" refer to Church Mutual Insurance Company.

The word "insured" means the Named Insured shown in the Declarations Page.

Other words and phrases that appear in quotation marks have special meaning. **Refer to Paragraph G - Definitions.**

## A. COVERAGE

1. We will pay for loss of your Covered Property resulting directly from any Covered Cause of Loss when the Covered Property:

   a. Is at the "church premises";

   b. Is in the temporary (not to exceed 30 days) care or custody of a person authorized by you; or

   c. Is in a night depository at a "banking premises".

2. Covered Property, as used in this Coverage Form, means your "money" and "securities" for which a Limit of Insurance is shown in the Declarations Page.

3. Covered Cause of Loss, as used in this Coverage Form, means:

   a. "Theft";

   b. Disappearance; or

   c. Destruction.

## B. EXCLUSIONS

This insurance does not cover:

1. Loss resulting from seizure or destruction of property by order of governmental authority.

2. Loss that is an indirect result of any act or "occurrence" covered by this insurance, including but not limited to loss resulting from:

   a. Your inability to realize income that you would have realized had there been no loss of Covered Property.

   b. Payment of damages of any type for which you are legally liable. But, we will pay direct compensatory damages arising from a loss covered under this insurance.

   c. Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

3. Expenses related to any legal action.

4. Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

5. Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

6. Loss resulting from any dishonest or criminal act committed by any of your "employees", directors, trustees or authorized representatives:

   a. Acting alone or in collusion with other persons; or

   b. While performing services for you or otherwise.

7. Loss resulting from accounting or arithmetical errors or omissions.

8. Loss of Covered Property after it has been transferred or surrendered to a person or place outside the "church premises":

   a. On the basis of unauthorized instructions; or

   b. As a result of a threat to do:

      (1) Bodily harm to any person; or

      (2) Damage to any property.

   c. But, this exclusion does not apply to loss

Copyright, Church Mutual Insurance Company, 1989.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1989.

of Covered Property while:

(1) Outside the "church premises"; and

(2) In the care and custody of a person authorized by you if you:

(a) Had no knowledge of any threat at the time the conveyance began; or

(b) Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

9. Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

10. Loss of the contents of any alms box or poor box.

11. Loss resulting from theft of any checks:

a. That are made payable to you,

b. For which a stop payment order can be made, and

c. That can be reissued by the drawer.

## C. LIMITS OF INSURANCE

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations Page.

## D. DEDUCTIBLE

1. We will not pay for loss in any one occurrence until the amount of loss exceeds the deductible shown in the Declarations Page. We will then pay the amount of loss in excess of the deductible, up to the applicable Limit of Insurance.

2. Subject to 1. above, when two Coverage Forms of this policy apply to any one occurrence, we will apply the deductibles of those Coverage Forms as follows:

a. If the Coverage Forms have the same deductible amounts, we will apply only one deductible to the occurrence.

b. If the Coverage Forms have different deductible amounts, we will:

(1) Apply the deductible of the Coverage Form with the lowest deductible to that part of the loss covered by the Coverage Form; and will then

(2) Reduce the deductible of the Coverage Form with the higher deductible by the amount actually applied under (1) above; and will then

(3) Apply the reduced deductible to that part of the loss covered by the Coverage Form containing the higher deductible.

## E. COVERAGE EXTENSIONS

Each of the following Coverage Extensions are additional insurance unless otherwise indicated.

1. Special Coverage Days - Money and Securities.

a. If a Special Coverage Day is shown in the Declarations Page, the Limit of Insurance shown in the Declarations Page for "money" and "securities" is doubled beginning at 12:01 a.m., seven days before each Special Coverage Day until 12:00 midnight, seven days after each Special Coverage Day.

b. You may not apply this Coverage Extension beyond the expiration date of this policy.

2. Additional Premises.

a. If you acquire the use and control of any additional "church premises", any insurance afforded for your "church premises" also applies to those additional premises, but only if you:

(1) Serve us notice within 30 days thereafter; and

(2) Pay us any additional premium that may be due.

This is not an additional amount of insurance.

## F. LOSS CONDITION

The following Condition applies in addition to the Common Policy Conditions and Crime Conditions.

1. Subject to the applicable Limit of Insurance,

Copyright, Church Mutual Insurance Company, 1989.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1989.

we will pay for:

a. Loss of "money" for not more than its face value. We may, at our option, pay for loss of "money" issued by any country other than the United States of America:

(1) At face value in the "money" issued by that country; or

(2) In the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

b. Loss of "securities" for not more than their value at the close of business on the day the loss was discovered. We may, at our option:

(1) Pay the value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities";

(2) Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

(a) Value of the "securities" at the close of business on the day the loss was discovered; or

(b) Limit of Insurance.

2. Any property that we pay for or replace under 1. above becomes our property.

## G. DEFINITIONS

1. "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

2. a. "Church premises" means the church at the location described in the Declarations Page and includes that part of any other building or location that is related to that location and owned by or leased to you or used by you for:

(1) Religious services;

(2) Religious education;

(3) Kindergarten, elementary or high school education;

(4) Dwelling or living quarters; or

(5) Social or recreational activities,

and also includes the premises within 100 feet of those buildings.

b. "Church premises" does not mean that part of any building or its premises used by you for:

(1) College, seminary or vocational education purposes;

(2) Mercantile purposes; or

(3) Camp purposes.

3. "Employee" means:

a. Any natural person:

(1) While in your service (and for 30 days after termination of service); and

(2) Whom you compensate directly by salary, wages or commissions; or

(3) Whom you have the right to direct and control while performing services for you.

b. Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding, however, any such person while having care and custody of property outside the "premises".

But, "employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character.

4. "Money" means:

a. Currency, coins and bank notes in current use and having a face value; and

b. Travelers checks, register checks and money orders held for sale to the public.

Copyright, Church Mutual Insurance Company, 1989.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1989.

5.  "Occurrence" means all loss whether:

    a.  Caused by one or more persons; or

    b.  Involving a single act or series of related acts.

6.  "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

    a.  Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    b.  Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you, but does not include "money".

7.  "Theft" means any act of stealing.

Copyright, Church Mutual Insurance Company, 1989.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1989.

# BLANKET BOND COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations Page. The words "we", "us" and "our" refer to Church Mutual Insurance Company.

The word "insured" means the Named Insured shown in the Declarations Page.

Other words and phrases that appear in quotation marks have special meaning. **Refer to Paragraph G - Definitions.**

## A. COVERAGE

1. We will pay for loss of and damage to Covered Property resulting directly from any Covered Cause of Loss.

   a. Covered Property, as used in this Coverage Form, means your "money", "securities" and your "property other than money and securities".

   b. Covered Cause of Loss, as used in this Coverage Form, means "employee dishonesty".

## B. EXCLUSIONS

This insurance does not cover:

1. Loss resulting from seizure or destruction of property by order of governmental authority.

2. Loss that is an indirect result of any act or "occurrence" covered by this insurance, including but not limited to loss resulting from:

   a. Your inability to realize income that you would have realized had there been no loss of Covered Property.

   b. Payment of damages of any type for which you are legally liable. But, we will pay direct compensatory damages arising from a loss covered under this insurance.

   c. Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

3. Expenses related to any legal action.

4. Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

5. Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

6. Loss resulting from accounting or arithmetical errors or omissions.

7. Loss caused by any "employee" for whom similar prior insurance has been cancelled and not reinstated since the last such cancellation.

8. Loss resulting from any dishonest or criminal act committed by you or any of your partners whether acting alone or in collusion with other persons.

9. Loss, or that part of any loss, the proof of which as to its existence or amount is dependent on:

   a. An inventory computation; or

   b. A profit and loss computation.

## C. LIMIT OF INSURANCE

The most we will pay for loss in any one "occurrence" is the applicable Limit of Insurance shown in the Declarations Page.

## D. DEDUCTIBLE

We will not pay for loss in any one "occurrence" until the amount of loss exceeds the Deductible shown in the Declarations Page. We will then pay the amount of loss in excess of the Deductible, up to the applicable Limit of Insurance.

## E. CONDITIONS

The following Conditions are in addition to the Common Policy Conditions and Crime Conditions.

1. Loss Conditions.

Copyright, Church Mutual Insurance Company, 1987

a. Subject to the applicable Limit of Insurance, we will pay for:

(1) Loss of "money" for not more than its face value. We may, at our option, pay for loss of "money" issued by any country other than the United States of America:

(a) At face value in the "money" issued by that country; or

(b) In the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

(2) Loss of "securities" for not more than their value at the close of business on the day the loss was discovered. We may, at our option:

(a) Pay the value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities";

(b) Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

1) Value of the "securities" at the close of business on the day the loss was discovered; or

2) Limit of Insurance.

(3) Loss of "property other than money and securities", as follows:

(a) We will determine the value of your "property other than money and securities" as of the time of loss at Actual Cash Value except as provided under (4) below. Actual Cash Value means the amount it would cost to repair or replace Covered Property with material of comparable kind and quality, less allowance for deterioration and depreciation, including obsolescence.

(b) We will not pay more for loss on an Actual Cash Value basis than the least of:

1) The Actual Cash Value of the property;

2) The cost of repairing the lost property; or

3) The cost to replace the lost property with property of comparable kind and quality.

(4) We will determine the value of the below Covered Property as of the time of loss as follows:

(a) Manuscripts and valuable papers and records, including those which exist on electronic or magnetic media (other than prepackaged software programs) at the cost of:

1) Blank materials for reproducing the manuscripts and valuable papers and records; and

2) Labor to transcribe or copy the manuscripts and valuable papers and records when there is a duplicate.

b. Any property that we pay for or replace under (1), (2), (3) or (4) above becomes our property.

2. Employee Cancellation Condition.

a. This insurance is cancelled as to any "employee":

(1) Immediately upon discovery by:

(a) You; or

(b) Any of your partners, officers or directors not in collusion with the "employee";

of any dishonest act committed by that "employee", whether before or after becoming employed by you.

Copyright, Church Mutual Insurance Company, 1987

(2) On the date specified in a notice mailed to you. That date will be at least 30 days after the date of mailing.

The mailing of notice to you at the last known address will be sufficient proof of notice. Delivery of notice is the same as mailing.

3. Loss Sustained During Prior Insurance.

a. If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or any predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

(1) This insurance became effective at the time of cancellation or termination of the prior insurance; and

(2) This loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

b. The insurance under this Condition is part of, not in addition to, the Limits of Insurance applying to this insurance and is limited to the lesser of the amount recoverable under:

(1) This insurance as of its effective date; or

(2) The prior insurance had it remained in effect.

## F. COVERAGE EXTENSIONS

1. Consolidation - Merger.

a. If additional persons become your employees through consolidation or merger with, or purchase of assets of, some other entity, any insurance afforded for "employees" also applies to those additional employees, but only if you:

(1) Give us notice within 30 days thereafter; and

(2) Pay us any additional premium that may be due.

This does not increase the amount of insurance.

2. Employees Temporarily Outside Coverage Territory.

We will pay for loss caused by any "employee" while temporarily outside the Coverage Territory for a period not more than 90 days.

## G. DEFINITIONS

1. "Employee" means:

a. Any natural person:

(1) While in your service (and for 30 days after termination of service); and

(2) Whom you compensate directly by salary, wages or commissions; or

(3) Whom you have the right to direct and control while performing services for you.

b. Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding, however, any such person while having care and custody of property outside the "premises".

But "employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character.

c. If the Named Insured is shown in the Declarations Page as a religious institution, "employee" also means any duly elected or appointed natural person:

(1) While in your service (and for 30 days after termination of service); and

(2) Whom you can direct and control while performing services for you,

whether or not you compensate that person by salary, wages or commissions.

2. "Employee dishonesty" means dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons, except you or a partner, with the manifest intent to:

a. Cause you to sustain loss; and also

Copyright, Church Mutual Insurance Company, 1987

b. Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

   (1) The "employee"; or

   (2) Any person or organization intended by the "employee" to receive that benefit.

3. "Money" means:

   a. Currency, coins and bank notes in current use and having a face value; and

   b. Travelers checks, register checks and money orders held for sale to the public.

4. "Occurrence" means all loss caused by or involving one or more "employees", whether the result of a single act or series of acts.

5. "Property other than money and securities" means any tangible property other than "money" and "securities" that has intrinsic value.

6. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

   a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

   b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you,

   but does not include "money".

Copyright, Church Mutual Insurance Company, 1987

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES

This endorsement modifies insurance provided under the following:

CRIME COVERAGE PART

The following replaces Paragraph D., Legal Action Against Us Condition, on the Crime Conditions Form:

D. **Legal Action Against Us:** You may not bring any legal action against us involving loss:

a. Unless you have complied with all the terms of this insurance;

b. Until ninety (90) days after you have filed proof of loss with us; and

c. Unless brought within five (5) years from the date you discover the loss.

Copyright, Church Mutual Insurance Company, 1994.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994.

# COUNSELING PROFESSIONAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations Page. The words "we," "us," and "our" refer to Church Mutual Insurance Company.

The word "insured" means any person or organization qualifying as an insured. **Refer to Paragraph C - Who Is An Insured.**

Other words and phrases that appear in quotation marks have special meaning. **Refer to Paragraph F - Definitions.**

A. COUNSELING PROFESSIONAL LIABILITY COVERAGE

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of injury to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for injury to which this insurance does not apply. We may, at our discretion, investigate any "counseling incident" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited. **Refer to Paragraph D - Limits of Insurance;** and

(2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under this Counseling Professional Liability Coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

b. This insurance applies to injury only if:

(1) The injury is caused by a "counseling incident" that takes place in the "coverage territory;" and

(2) The "counseling incident" occurs during the policy period.

2. Exclusions.

This insurance does not apply to:

a. Liability for damages assumed under any contract or agreement. But, this Exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

b. "Bodily injury" to:

(1) An employee of the insured arising out of and in the course of employment by the insured; or

(2) The spouse, child, parent, brother, or sister of that employee as a consequence of (1) above.

This Exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

c. Any obligation of the insured under a workers' compensation, disability benefits, or unemployment compensation law, or any similar law.

d. Injury arising out of furnishing or failing to furnish any professional service (other than counseling) including:

(1) Medical;

(2) Radiological;

(3) Surgical;

(4) Dental;

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

(5) Nursing; or

(6) Pharmacological;

services or supplies.

e. Injury arising out of the commitment of a person to an institution.

f. Injury arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto," or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

g. Injury arising out of your acts or omissions as a member of a formal accreditation board, committee or similar body.

h. Injury arising out of the willful violation of a penal statute or ordinance.

i. Injury arising out of any actual or alleged act of "sexual misconduct or sexual molestation." This includes, but is not limited to any claim or suit seeking damages based upon, arising out of, or attributable to vicarious liability; negligence in hiring, employment, supervision, retention, or transfer of any employee or volunteer workers; recommendation or referral of any person for employment or volunteer work; failure to protect or negligent supervision of any person (whether an adult or child) failure to warn, failure to investigate, or failure to comply with any obligation to report; and counseling.

j. Any dishonest, fraudulent, or criminal acts or omissions.

k. Any claim for exemplary or punitive damages.

**B. SUPPLEMENTARY PAYMENTS - COUNSELING PROFESSIONAL LIABILITY COVERAGE**

1. We will pay, with respect to any claim or "suit" we defend:

a. All expenses we incur.

b. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

c. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

d. All costs taxed against the insured in the "suit." For the purpose of this provision, costs do not include prejudgement interest or post judgement interest.

e. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

f. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

These payments will not reduce the Limits of Insurance.

**C. WHO IS AN INSURED**

1. Each of the following is an insured:

a. You are an insured.

b. If you are designated in the Declarations Page as a partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to your furnishing of counseling services.

c. If you are designated in the Declarations Page as other than a partnership or joint venture, your executive officers, stockholders, directors, trustees, officials, elders, and vestry members are insureds, but only with respect to their duties as such.

d. Any person occupying a position shown in the applicable Schedule of Positions in the Declarations Page is an insured.

2. No person or organization included under a., b., or c. above is an insured for acts or omissions in the furnishing of counseling services unless the claim for damages arises out of acts or omissions of a person occupying, or who has occupied, a position shown in the applicable Schedule of Positions in the Declarations Page, but in no event is a psychologist, psychiatrist, or clinical social worker an insured.

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

**D. LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations Page and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits."

2. The Counseling Professional Liability Aggregate Limit is the most we will pay for all damages because of injury included under this Counseling Professional Liability Coverage.

3. Subject to 2. above, the Counseling Professional Liability Each Claim Limit is the most we will pay for all damages because of injury sustained by any one person.

   The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations Page unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. COUNSELING PROFESSIONAL LIABILITY CONDITIONS**

1. Bankruptcy.

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties in the Event of Any "Counseling Incident," Claim, or "Suit."

   a. You must see to it that we are notified as soon as practicable of any "counseling incident" which may result in a claim. To the extent possible, notice should include:

      (1) How, when, and where the "counseling incident" took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature of the injury arising out of the "counseling incident."

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received;

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

3. Legal Action Against Us.

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

4. Other Insurance.

If other valid and collectible insurance is available to the insured for a loss we cover under the Counseling Professional Liability Coverage of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance.

This insurance is primary. When this insurance is primary, our obligations are not affected unless any other insurers' insurance is also primary. Then, we will share with all that other insurance by the method described in b. below.

b. Method of Sharing.

If all the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

5. Premium Audit.

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium for this Coverage is a deposit premium only. At the close of each audit period, we may compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the deposit and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

6. Representations.

By accepting the policy, you agree:

a. The statements in the Declarations Page are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representation.

7. Separation of Insureds.

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, when this insurance applies, it applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. Transfer of Rights of Recovery Against Others to Us.

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. Limitation of Coverage.

If this Coverage Form is part of a policy which has other liability insurance, that other liability insurance does not apply to any injury caused by any "counseling incident" covered by this Coverage Form.

10. When We Do Not Renew.

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations Page written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## F. DEFINITIONS

1. "Auto" means a land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment.

2. "Bodily injury" means bodily injury, sickness, or disease sustained by a person including death resulting from any of these at any time.

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

3. "Counseling incident" means any act or omission in the furnishing of counseling services. Any such act or omission, together with all related acts or omissions in the furnishing of such services to any one person, shall be considered one claim subject to the Each Claim Limit of Insurance in force at the time the first "counseling incident" covered by this policy occurred.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico, and Canada;

   b. International waters or airspace, provided the injury does not occur in the course of travel or transportation to or from any place not included in a. above; or

   c. All parts of the world if:

      (1) The injury arises out of the counseling activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

      (2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft, or "auto";

   b. While it is in or on an aircraft, watercraft, or "auto"; or

   c. While it is being moved from an aircraft, watercraft, or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft, or "auto."

6. "Sexual misconduct or sexual molestation" is any activity by anyone (whether an adult or child) which is sexual in nature whether permitted or unpermitted, including but not limited to, sexual assault, sexual battery, sexual relations, sexual acts, sexual activity, sexual handling, sexual massage, sexual exploitation, sexual exhibition, photographic, video or other reproduction of sexual activity, sexual stimulation, fondling, intimacy, exposure of sexual organs, lewd, or lascivious behavior or indecent exposure, fornication, undue familiarity, or unauthorized touching.

7. "Suit" means a civil proceeding in which damages because of injury to which this insurance applies is alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

# DIRECTORS, OFFICERS AND TRUSTEES LIABILITY COVERAGE FORM

**YOUR DIRECTORS, OFFICERS AND TRUSTEES LIABILITY COVERAGE IS CLAIMS MADE COVERAGE. DEFENSE EXPENSES ARE INCLUDED IN THE LIMIT OF INSURANCE. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

Various provisions in this Coverage Form restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this Coverage Form, the words "you" and "your" refer to the Named Insured shown in the Declarations Page. The words "we," "us," and "our" refer to Church Mutual Insurance Company.

The word "insured" means any person qualifying as an insured. **Refer to Paragraph D - WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. **Refer to Paragraph H - DEFINITIONS.**

**A. DIRECTORS, OFFICERS AND TRUSTEES LIABILITY COVERAGE**

1. Insuring Agreement.

a. We will pay on your behalf those sums that any of your "Directors, Officers or Trustees" become legally obligated to pay for "loss" arising from any claim or claims because of injury arising out of a "wrongful act" to which this insurance applies;

b. We will pay you those sums that you pay to reimburse your "Directors, Officers and Trustees." But, we will do this only to the extent of (subject to the Limit of Insurance) their legal obligation to pay "loss" because of injury arising out of a "wrongful act" to which this insurance applies. And, we will pay you only if you are permitted or required by law to indemnify your "Directors, Officers or Trustees" for their "wrongful act"; or

c. We will pay on your behalf those sums that you become legally obligated to pay for "loss" arising from any claim or claims because of injury arising out of a "wrongful act" to which this insurance applies.

d. We will have the right and duty to defend the insured against any "suit" seeking payment for "loss" and to pay for the "defense expense." However, we will have no duty to defend the insured against any "suit" seeking payment for "loss" to which this insurance does not apply. We may, at our discretion, investigate any "wrongful act" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for "loss" and "defense expense" is limited. Refer to Limit of Insurance; and

(2) Our right and duty to defend and to pay "defense expense" end when we have used up the Limit of Insurance in the payment of "defense expense," judgments, or settlements under this Directors, Officers and Trustees Liability Coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

e. This insurance applies to "loss" because of injury only if:

(1) The injury is caused by a "wrongful act" that takes place in the "coverage territory";

(2) The "wrongful act" did not occur before the Retroactive Date, if any, shown in the Declarations Page or after the end of the policy period; and

(3) A claim for "loss" because of the "wrongful act" is first made against any insured and reported to us, in accordance with Paragraph f. below, during the policy period or any Extended Reporting Period we provide under extended reporting periods. **Refer to Extended Reporting Periods.**

f. A claim by a person or organization for "loss" will be deemed to have been made at the earlier of the following times:

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

(1) When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

(2) When settlement is made in accordance with Paragraph 1.d. above.

All claims for "loss" because of injury to the same person will be deemed to have been made at the time the first of these claims is made against any insured.

2. Exclusions.

This insurance does not apply to:

a. (1) Injury or "loss" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants:

   (a) At or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

   (b) At or from any premises, site, or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing, or treatment of waste;

   (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

   (d) At or from any premises, site, or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

     1) If the pollutants are brought on or to the premises, site, or location in connection with such operations by such insured, contractor, or subcontractor; or

     2) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants.

(2) Any loss, cost, or expense arising out of any:

   (a) Request, demand, or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants; or

   (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including (but not limited to) smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

b. Any "loss" arising out of or, in any way, connected to "bodily injury," "property damage," "personal injury," or "advertising injury."

c. Injury that arises out of:

(1) Any actual or alleged act of "sexual misconduct or sexual molestation." This includes, but is not limited to any claim or suit seeking damages based upon, arising out of, or attributable to vicarious liability; negligence in hiring, employment, supervision, retention, or transfer of any employee or volunteer worker; recommendation or referral of any person for employment or volunteer work; failure to protect or negligent supervision of any person (whether an adult or child); failure to warn, failure to investigate, or failure to comply with any obligation to report; and counseling.

(2) A "counseling incident"; or

(3) A "professional health care incident."

d. Any claim based on:

(1) The Employee Retirement Income Security Act of 1974, Public Law 93-406, and any amendments to that law; or

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

(2) Any state, local, common, or federal law that is similar to Public Law 93-406.

e. Any claim based on the failure or omission to effect or maintain insurance including amounts, forms, conditions, and other provisions.

f. Any claim involving title to the Named Insured's property.

g. Any claim:

(1) Based on any personal profit or advantage of the "Directors, Officers or Trustees" to which they were not legally entitled,

(2) Based on the return of any compensation paid to the "Directors, Officers or Trustees" if such payment is held by the courts to be in violation of the law,

(3) Based on the active and deliberate dishonesty of the "Directors, Officers or Trustees" when it is material to the claim,

(4) For an accounting of profits made from the purchase or sale of your securities within the meaning of Section 16(b) of the Securities Exchange Act of 1934 or similar provisions of any other law,

except to the extent that you may be required or permitted by law and duly enacted charter or bylaw to indemnify your "Directors, Officers or Trustees."

h. Any claim which is brought by or on behalf of the organization or any insured except for any derivative action brought totally independently of and without solicitation, assistance, participation, or intervention of any of the insureds.

i. Breach of any contract or agreement.

j. Any claim arising from mold or any related disease or inhalation or ingestion of mold or the cost of removal, replacement, or any other acts taken to mitigate mold hazards.

k. Any claim arising out of the Asbestos Hazard Emergency Response Act 15 USC 2641, et seq., and/or arising out of asbestos and/or any product containing asbestos fiber and/or liability resulting from asbestos is and/or any related disease and/or inhalation of asbestos fiber and/or the cost of removal, replacement, or any other acts taken to abate asbestos hazards.

l. Any claim arising from lead and/or any product containing lead including, but not limited to, lead paint, lead pigment, and lead in water and/or liability resulting from lead poisoning and/or any related disease, and/or inhalation or ingestion of lead, and/or the cost of removal, replacement, or any other acts taken to abate lead hazards.

m. Injury to an employee of any insured arising out of employment by any insured, or injury to the spouse, child, parent, brother, or sister of that employee as a consequence thereof. This exclusion applies whether any insured is liable as an employer or in any other capacity, and to any obligation to share damages with or repay or reimburse someone else for any "loss."

n. Any claim in any way involving refusal to employ, termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or any other employment-related practices, policies, acts, errors or omissions. This exclusion applies whether any insured is liable as an employer or in any other capacity, and to any obligation to share damages with or repay or reimburse someone else for any "loss."

o. Any exemplary or punitive damages or multiplied amounts of compensatory or other damages.

p. Any actual or alleged violation of a penal or criminal statute or ordinance committed by or with the knowledge or consent of any insured.

q. Arising out of or contributed to by any actual or alleged violation of:

(1) The Securities Act of 1933,

(2) The Securities Exchange Act of 1934.

(3) The Investment Company Act of 1940 or the Investment Advisors Act of 1940.

(4) Any State Blue Sky Laws or Securities Laws promulgated under any of the foregoing, regardless of whether such violation results in the imposition of criminal fines or

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

penalties or the award of civil damages.

Based upon common law principles of liability if made in connection with an actual or alleged violation of any law listed in Item q. above.

r.  Any "loss" on account of any claim based upon, arising from, or in consequence of rendering or failure to render professional services, including but not limited to the following services:

(1)  Broker.

(2)  Dealer.

(3)  Financial Advisor.

(4)  Investment Advisor.

(5)  Investment Banker.

(6)  Investment Manager.

(7)  Clearing Agent.

(8)  Real Estate Broker.

**B.  RETENTION**

We will not pay for any "loss" until the amount of "loss" exceeds the retention shown in the Declarations Page. We will then pay the amount of "loss" in excess of the retention, up to the applicable Limit of Insurance.

**C.  SUPPLEMENTARY PAYMENTS - DIRECTORS, OFFICERS AND TRUSTEES LIABILITY COVERAGE**

1.  If we defend, we will pay, with respect to any claim or suit we defend:

a.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

b.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

These payments will not reduce the Limits of Insurance.

**D.  WHO IS AN INSURED**

Each of the following is an insured:

1.  You are an insured.

2.  With respect to your governing body, your "Directors, Officers and Trustees" are insureds.

3.  Any person named or occupying a position shown in the applicable schedule of the Declarations Page is an insured.

4.  The "Directors, Officers and Trustees" of any organization over which you maintain ownership or majority interest are insureds but only if that organization is shown in the applicable schedule of the Declarations Page.

5.  The "Directors, Officers or Trustees" of any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest are insureds if they have no other similar insurance available to them. However:

a.  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

b.  No Director, Officer, or Trustee of an organization is an insured for any injury or "loss" that occurred before you acquired or formed the organization.

**E.  LIMIT OF INSURANCE**

1.  The Limit of Insurance shown in the Declarations Page and the rules below fix the most we will pay regardless of the number of:

a.  Insureds;

b.  Claims made or "suits" brought; or

c.  Persons or organizations making claims or bringing "suits."

2.  The Directors, Officers and Trustees Aggregate Limit:

a.  Is the most we will pay for the sum of:

(1)  All "loss," and

(2)  All "defense expense" for claims and "suits" seeking damages,

because of all injury included under this Directors, Officers and Trustees Liability Coverage.

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

b. Is a combined maximum Limit of Insurance for Insuring Agreements 1.a., 1.b., and 1.c.

Each payment we make for "loss" and "defense expense" reduces the Limit of Insurance by the amount we pay. This reduced Limit of Insurance will then be available for further "loss" and "defense expense."

The Limit of Insurance applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations Page unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Insurance.

"Loss" arising out of the same "wrongful act" or interrelated, repeated, or continuous "wrongful acts" of one or more "Directors, Officers or Trustees" shall be deemed "loss" in the policy period in which the first such claim or "wrongful act" is first reported to the insurer.

**F. DIRECTORS, OFFICERS AND TRUSTEES LIABILITY CONDITIONS**

1. Bankruptcy.

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this coverage form.

2. Duties in the Event of Any "Wrongful Act," Claim, or "Suit."

a. You must see to it that we are notified as soon as practicable of any "wrongful act" which may result in a claim. To the extent possible, notice should include:

(1) How, when, and where the "wrongful act" took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature of the injury arising out of the "wrongful act."

Notice of a "wrongful act" is not notice of a claim.

b. If a claim is received by any insured, you must:

(1) Immediately record the specifics of the claim and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

(2) Authorize us, upon our request, to obtain records and other information;

(3) Cooperate with us, upon our request, in the investigation, settlement, or defense of the claim or "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

3. Legal Action Against Us.

No person or organization has a right under this coverage form:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this coverage form unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial, but we will not be liable for "loss" that is not payable under the terms of this coverage form or that is in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured, and the claimant or the claimant's legal representative.

4. Other Insurance.

If other valid and collectible insurance is available to the insured for a loss we cover under the Directors, Officers and Trustees Liability Coverage of this form, our obligations are limited as follows:

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

a. Primary Insurance.

This insurance is primary. When this insurance is primary, our obligations are not affected unless any other insurers' insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance.

This insurance is excess over any of the other insurance, whether primary, excess, contingent, or on any other basis:

(1) That is effective prior to the beginning of the policy period shown in the Declarations Page of this insurance and applies to a "wrongful act" on other than a claims made basis if:

(a) No Retroactive Date is shown in the Declarations Page of this insurance; or

(b) The other insurance has a policy period which continues after the Retroactive Date shown in the Declarations Page of this insurance.

When this insurance is excess, we will have no duty under this Directors, Officers and Trustees Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we may elect to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations Page of this policy.

c. Method of Sharing.

If all the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

5. Premium Audit.

a. We will compute all premiums for this coverage in accordance with our rules and rates.

b. Premium for this coverage is a deposit premium only. At the close of each audit period, we may compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the deposit and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

6. Representations.

By accepting the policy, you agree:

a. The statements in the Declarations Page and the attached application are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representation.

7. Separation of Insureds.

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this coverage form to the first Named Insured, when this insurance applies, it applies:

a. As if each Named Insured were the only Named Insured; and

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

b. Separately to each insured against whom claim is made or "suit" is brought.

8. Transfer of Rights of Recovery Against Others to Us.

If the insured has rights to recover all or part of any payment we have made under this coverage form, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. When Our Duty to Defend "Suits" and to Pay "Defense Expense" Ends.

a. We will notify the first Named Insured as soon as practicable of any outstanding claims or "suits" for which our duty to defend has ended.

b. We will notify any insured, as soon as practicable, of any outstanding "suits" in which we are defending that insured and for which our duty to defend has ended.

c. You and any other involved insured will, as soon as practicable, arrange for the defense of those outstanding "suits" and any future "suits" for which our duty to defend has ended.

d. We will cooperate in arranging for the transfer of defense of those outstanding "suits";

e. Until those arrangements are complete, we will take on behalf of the insured those steps we think appropriate:

(1) To avoid a default in any "suit"; or

(2) To the continued defense of any "suit" and

you will reimburse us, if we take such steps, for any "defense expense" we pay.

10. Limitation of Coverage.

a. If the coverage form is part of a policy which has other liability insurance, that other liability insurance does not apply to any injury caused by any "wrongful act" covered by this coverage form.

b. If two or more policies issued by us apply to the same "wrongful act," the maximum amount we will pay for "loss" under all the policies will not exceed the highest applicable Limit of Insurance that applies to any one of the policies.

11. When We Do Not Renew.

If we decide not to renew this coverage form, we will mail or deliver to the first Named Insured shown in the Declarations Page written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

G. EXTENDED REPORTING PERIODS

1. We will provide the Extended Reporting Periods as described below if:

a. This coverage form is cancelled or not renewed for any reason except nonpayment of premium; or

b. We renew or replace this coverage form with insurance that:

(1) Has a retroactive date later than the one shown in the Declarations Page of this policy; or

(2) Does not apply to injury that arises out of "wrongful acts" on a claims made basis.

2. Extended Reporting Periods do not extend the policy period, change the scope of coverage provided, or reinstate the Limits of Insurance. They apply only to claims for injury arising out of "wrongful acts" that occur before the end of the policy period but not before the retroactive date, if any, shown in the Declarations Page.

3. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for 90 days.

Claims must be reported to us not later than 90 days after the end of the policy period in accordance with Directors, Officers and Trustees liability conditions, Subparagraphs 2.a. or 2.b., of this coverage form.

The Basic Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

4. A Supplemental Extended Reporting Period of unlimited duration is available but only by endorsement and for an extra charge. This period starts 90 days after the end of the policy period.

You must give us a written request for the endorsement within 90 days after the end of

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due. We will determine the additional premium in accordance with our rules and rates.

The endorsement will include a provision to the effect that the insurance afforded for claims first received during the Supplemental Extended Reporting Period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

Once in effect, the Supplemental Extended Reporting Period may not be cancelled.

5. Claims which are first received and recorded during the Basic Extended Reporting Period (or during the Supplemental Extended Reporting Period, if it is in effect) will be deemed to have been made on the last day of the policy period.

H. DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

   a. Oral or written publications of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

   b. Oral or written publication of materials that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title, or slogan.

2. "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at anytime.

3. "Counseling incident" means any act or omission in the furnishing of counseling services.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico, and Canada;

   b. All parts of the world if the injury arises out of the activities of "Directors, Officers or Trustees" whose home is in the territory described in a. above and whose responsibility to pay damages is determined in a "suit" on the merits in the territory described in a. above or in a settlement we agree to.

5. "Defense expense" means payments allocated to a specific claim or "suit" and includes:

   a. Fees and salaries of attorneys and paralegals we retain, including attorneys and paralegals who are our employees.

   b. Fees of attorneys the insured retains when by mutual agreement, court order, or law the insured is given the right to retain defense counsel to defend a "suit."

   c. All other litigation expenses.

   d. The cost of bonds to release attachments or similar bonds in any "suit," but only for bond amounts within the Limit of Insurance. We do not have to furnish these bonds.

   e. When we defend, reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit" including actual loss of earnings up to $250 a day because of time off from work.

   f. Costs taxed against the insured in the "suit." For the purpose of this coverage, costs do not include prejudgment interest or post judgment interest.

   "Defense expense" does not include salaries and expenses of our employees or the insured's employees (other than those described in a. and e. above) and does not include fees and expenses of independent adjusters we hire.

6. "Directors, Officers and Trustees" means any of your past, present, or future directors, officers, trustees, clergy, wardens, deacons, elders, or members of duly elected, appointed, or constituted governing bodies while acting within the scope of their duties as such; and, in the event of death, incapacity, or bankruptcy, the estate, heirs, legal representatives, or assigns of the individual, but only with respect to their duties as such.

7. "Loss" means damages, judgments, settlements, and "defense expenses." "Loss" does not include fines, taxes, penalties, non-monetary damages, or injunctive relief.

8. "Personal injury" means injury, other than "bodily injury" arising out of one or more of the following offenses:

   a. False arrest, detention, or imprisonment;

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

b.    Malicious prosecution;

c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies by or on behalf of its owner, landlord, or lessor;

d.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

e.    Oral or written publication of material that violates a person's right of privacy.

9.    "Professional health care incident" means:

a.    Any act or omission:

(1)   In the furnishing of "professional health care services." This includes furnishing of food, beverages, medications, or appliances in connection with such services;

(2)   In the handling of deceased human bodies;

(3)   Arising out of service by any persons as members of a formal accreditation, standards review, or similar board of the Named Insured or as a person who executes the duties of such board.

b.    Failure to comply with any right of a health care facility resident under any state law regulating you as a resident health care facility;

c.    Failure to comply with any right of a resident as included in the United States Department of Health, Education, and Welfare regulation governing intermediate care facilities and skilled nursing facilities; and

d.    Failure to protect any resident from undue influence by an insured when such undue influence is to the personal detriment of the resident.

10.   "Professional health care services" means your professional nursing, social, and similar professional services that relate to the care of your residents.

11.   "Property damage" means:

a.    Physical injury to tangible property, including all resulting loss of use of that

property; or

b.    Loss of use of tangible property that is not physically injured.

12.   "Sexual Misconduct or Sexual Molestation" is any activity by anyone (whether an adult or child) which is sexual in nature whether permitted or unpermitted, including but not limited to, sexual assault, sexual battery, sexual relations, sexual acts, sexual activity, sexual handling, sexual massage, sexual exploitation, sexual exhibition, photographic, video or other reproduction of sexual activity, sexual stimulation, fondling, intimacy, exposure of sexual organs, lewd or lascivious behavior or indecent exposure, fornication, undue familiarity, or unauthorized touching.

13.   "Suit" means a civil proceeding in which a "loss" because of injury to which this insurance applies is alleged. "Suit" includes:

a.    An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

14.   "Wrongful act" means, with respect to your "Directors, Officers and Trustees":

a.    Any actual or alleged:

(1)   Error or misstatement,

(2)   Misleading statement,

(3)   Neglect or breach of duty, or

(4)   Act or omission,

in the discharge of their duties for you as a Director, Officer or Trustee.

b.    Any other matter claimed against your "Directors, Officers or Trustees" solely by reason of their being your "Directors, Officers or Trustees."

Claims arising out of the same "wrongful act" or interrelated "wrongful acts" of one or more of your "Directors, Officers or Trustees" shall be considered one loss and shall be subject to only one retention.

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

# EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

**Except for the insurance provided by this coverage form, the policy to which this coverage form is attached does not apply to any claim or suit seeking damages arising out of any "wrongful employment practice."**

**YOUR EMPLOYMENT PRACTICES LIABILITY COVERAGE IS CLAIMS MADE COVERAGE. DEFENSE EXPENSES ARE INCLUDED IN THE LIMIT OF INSURANCE. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

Various provisions in this Coverage Form restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this Coverage Form, the words "you" and "your" refer to the Named Insured shown in the Declarations Page. The words "we," "us," and "our" refer to Church Mutual Insurance Company.

The word "insured" means any person or organization qualifying as an Insured. **Refer to Paragraph D - Who Is An Insured.**

Other words and phrases that appear in quotation marks have special meaning. **Refer to Paragraph H - Definitions.**

**A. EMPLOYMENT PRACTICES LIABILITY COVERAGE**

1. Insuring Agreement.

a. We will pay on your behalf those sums that an insured becomes legally obligated to pay for "loss" arising from any claim or claims because of injury arising out of a "wrongful employment practice" to which this insurance applies.

b. We will have the right and duty to defend the insured against any "suit" seeking payment for "loss" and to pay for the "defense expense." However, we will have no duty to defend the insured against any "suit" seeking payment for "loss" to which this insurance does not apply. We may, at our discretion, investigate any "wrongful employment practice" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for "loss" and "defense expense" is limited. Refer to Limit of Insurance; and

(2) Our right and duty to defend and to pay "defense expense" end when we have used up the Limit of Insurance in the payment of "defense expense," judgments, or settlements under this Employment Practices Liability Coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

c. This insurance applies to "loss" because of injury only if:

(1) The injury is caused by a "wrongful employment practice" that takes place in the "coverage territory";

(2) The "wrongful employment practice" did not occur before the Retroactive Date, if any, shown in the Declarations Page or after the end of the policy period; and

(3) A claim for "loss" because of the "wrongful employment practice" is first made and reported against any insured, in accordance with Paragraph d. below, during the policy period or any Extended Reporting Period we provide under extended reporting periods. **Refer to Extended Reporting Periods.**

d. A claim by a person or organization for "loss" will be deemed to have been made at the earlier of the following times:

(1) When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

Copyright, Church Mutual Insurance Company, 2004.

(2) When settlement is made in accordance with Paragraph 1.b. above.

All claims for "loss" because of injury to the same person will be deemed to have been made at the time the first of these claims is made against any insured.

2. Exclusions.

This insurance does not apply to:

a. (1) Injury or "loss" which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants at any time.

(2) Any loss, cost, or expense arising out of any:

(a) Request, demand, or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant, or contaminant, including (but not limited to) smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

b. "Bodily injury" (except for mental anguish and emotional distress) or "property damage."

c. Injury that arises out of:

(1) Any actual or alleged act of "sexual misconduct or sexual molestation." This includes, but is not limited to any claim or suit seeking damages based upon, arising out of, or attributable to vicarious liability; negligence in hiring, employment, supervision, retention, or transfer of any employee or volunteer worker; recommendation or referral of any person for employment or volunteer work; failure to protect or negligent supervision of any person (whether an adult or child) failure to warn, failure to investigate, or failure to comply with any obligation to report; and counseling.

(2) A "counseling incident."

d. Any claim based on:

(1) The Employee Retirement Income Security Act of 1974, Public Law 93-406, and any amendments to that law; or

(2) Any state, local, common, or federal law that is similar to Public Law 93-406.

e. Any obligation of the insured under a workers' compensation, disability benefits, or unemployment compensation law, or any similar law.

f. Breach of any express contract of employment or any express obligation to make payments in the event of termination of employment.

g. "Loss" which the insured is obligated to pay by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for "loss" the insured would have in the absence of the contract or agreement.

h. Any "loss" arising out of any costs of providing any of the reasonable accommodations required by (or made as a result of) the Americans With Disabilities Act.

i. Any "loss" arising out of dishonest, criminal, or fraudulent acts, or the willful failure to comply with any law or any governmental or administrative order, or regulation relating to employment practices by or with the insured's consent. Willful means acting with intentional or reckless disregard of such laws or employment related orders or regulations.

Copyright, Church Mutual Insurance Company, 2004.

j. Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, or situation:

(1) underlying or alleged in any prior and/or pending litigation as of the inception date of this coverage, or

(2) which has been the subject of any notice given before the inception date of this coverage.

k. "Loss" based upon, arising from, or attributable to any lockout, strike, collective bargaining agreement, or other similar actions in connection with labor disputes, labor negotiations, or dealing with unions.

B. RETENTION

We will not pay for any "loss" until the amount of "loss" exceeds the retention shown in the Declarations Page. We will then pay the amount of "loss" in excess of the retention, up to the applicable Limit of Insurance.

C. SUPPLEMENTARY PAYMENTS - EMPLOYMENT PRACTICES LIABILITY COVERAGE

1. If we defend, we will pay, with respect to any claim or suit we defend:

a. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

b. All interest on our portion of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

These payments will not reduce the Limits of Insurance.

D. WHO IS AN INSURED

Each of the following is an insured:

1. You are an insured.

2. Any person named or occupying a position shown in the applicable schedule of the Declarations Page is an insured.

3. Your past, present, or future directors, officers, trustees, employees, clergy, wardens, deacons, elders, or members of duly elected, appointed, or constituted governing bodies; and, in the event of death, incapacity or bankruptcy, the estate, heirs, legal representatives, or assigns of the individual; all while acting within the scope of their duties as such.

4. Any organization and its insured persons over which you maintain ownership or majority interest are insureds but only if that organization is shown in the applicable schedule of the Declarations Page.

Any organization and its insured persons that you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest are insureds if they have no other similar insurance available to them. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

b. Neither the organization nor its insured persons is an insured for any injury or "wrongful employment practice" that occurred before you acquired or formed the organization.

E. LIMIT OF INSURANCE

1. The Limit of Insurance shown in the Declarations Page and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits."

2. The Employment Practices Liability Aggregate Limit:

a. Is the most we will pay for the sum of:

(1) All "loss;" and

(2) All "defense expense" for claims and "suits" seeking damages,

 Copyright, Church Mutual Insurance Company, 2004.

because of all injury included under this Employment Practices Liability Coverage.

Each payment we make for "loss" and "defense expense" reduces the Limit of Insurance by the amount we pay. This reduced Limit of Insurance will then be available for further "loss" and "defense expense."

The Limit of Insurance applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations Page unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Insurance.

"Loss" arising out of the same "wrongful employment practice" or interrelated, repeated, or continuous "wrongful employment practice" of one or more insured shall be deemed "loss" in the policy period in which the first such claim or "wrongful employment practice" is first reported to the insurer.

F. EMPLOYMENT PRACTICES LIABILITY CONDITIONS

1. Bankruptcy.

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this coverage form.

2. Duties in the Event of Any "Wrongful Employment Practice," Claim, or "Suit."

a. You must see to it that we are notified as soon as practicable of any "wrongful employment practice" which may result in a claim. To the extent possible, notice should include:

(1) How, when, and where the "wrongful employment practice" took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature of the injury arising out of the "wrongful employment practice."

Notice of a "wrongful employment practice" is not notice of a claim.

b. If a claim is received by any insured, you must:

(1) Immediately record the specifics of the claim and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

(2) Authorize us, upon our request, to obtain records and other information;

(3) Cooperate with us, upon our request, in the investigation, settlement, or defense of the claim or "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

3. Legal Action Against Us.

No person or organization has a right under this coverage form:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this coverage form unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial, but we will not be liable for "loss" that is not payable under the terms of this coverage form or that is in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured, and the claimant or the claimant's legal representative.

Copyright, Church Mutual Insurance Company, 2004.

4. Other Insurance.

If other valid and collectible insurance is available to the insured for a "loss" we cover under the Employment Practices Liability Coverage of this form, our obligations are limited as follows:

a. Primary Insurance.

This insurance is primary. When this insurance is primary, our obligations are not affected unless any other insurers' insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance.

This insurance is excess over any of the other insurance, whether primary, excess, contingent, or on any other basis:

(1) That is effective prior to the beginning of the policy period shown in the Declarations Page of this insurance and applies to a "wrongful employment practice" on other than a claims made basis if:

(a) No Retroactive Date is shown in the Declarations Page of this insurance; or

(b) The other insurance has a policy period which continues after the Retroactive Date shown in the Declarations Page of this insurance.

When this insurance is excess, we will have no duty under this Employment Practices Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we may elect to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the "loss," if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the "loss" in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining "loss," if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations Page of this policy.

c. Method of Sharing.

If all the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the "loss" remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

5. Premium Audit.

a. We will compute all premiums for this coverage in accordance with our rules and rates.

b. Premium for this coverage is a deposit premium only. At the close of each audit period, we may compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the deposit and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

6. Representations.

By accepting the policy, you agree:

a. The statements in the Declarations Page and the attached application are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representation.

Copyright, Church Mutual Insurance Company, 2004

7. Separation of Insureds.

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this coverage form to the first Named Insured, when this insurance applies, it applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. Transfer of Rights of Recovery Against Others to Us.

If the insured has rights to recover all or part of any payment we have made under this coverage form, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. When Our Duty to Defend "Suits" and to Pay "Defense Expense" Ends.

a. We will notify the first Named Insured as soon as practicable of any outstanding claims or "suits" for which our duty to defend has ended.

b. We will notify any insured, as soon as practicable, of any outstanding "suits" in which we are defending that insured and for which our duty to defend has ended.

c. You and any other involved insured will, as soon as practicable, arrange for the defense of those outstanding "suits" and any future "suits" for which our duty to defend has ended.

d. We will cooperate in arranging for the transfer of defense of those outstanding "suits."

e. Until those arrangements are complete, we will take on behalf of the insured those steps we think appropriate:

(1) To avoid a default in any "suit"; or

(2) To the continued defense of any "suit" and

you will reimburse us, if we take such steps, for any "defense expense" we pay.

10. Limitation of Coverage.

a. If the coverage form is part of a policy which has other liability insurance, that other liability Insurance does not apply to any injury caused by any "wrongful employment practice" covered by this coverage form.

b. If two or more policies issued by us apply to the same "wrongful employment practice," the maximum amount we will pay for "loss" under all the policies will not exceed the highest applicable Limit of Insurance that applies to any one of the policies.

11. When We Do Not Renew.

If we decide not to renew this coverage form, we will mail or deliver to the first Named Insured shown in the Declarations Page written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

G. EXTENDED REPORTING PERIODS

1. We will provide the Extended Reporting Periods as described below if:

a. This coverage form is cancelled or not renewed for any reason except nonpayment of premium; or

b. We renew or replace this coverage form with insurance that:

(1) Has a retroactive date later than the one shown in the Declarations Page of this policy; or

(2) Does not apply to injury that arises out of "wrongful employment practices" on a claims made basis.

2. Extended Reporting Periods do not extend the policy period, change the scope of coverage provided, or reinstate the Limits of Insurance. They apply only to claims for injury arising out of "wrongful employment practices" that occur before the end of the policy period but not before the retroactive date, if any, shown in the Declarations Page.

3. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for 90 days.

Copyright, Church Mutual Insurance Company, 2004.

Claims must be reported to us not later than 90 days after the end of the policy period in accordance with Employment Practices Liability conditions, Subparagraphs 2.a. or 2.b., of this coverage form.

The Basic Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

4. A Supplemental Extended Reporting Period for a three year duration is available but only by endorsement and for an extra charge. This period starts 90 days after the end of the policy period.

You must give us a written request for the endorsement within 90 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due. We will determine the additional premium in accordance with our rules and rates.

The endorsement will include a provision to the effect that the insurance afforded for claims first received during the Supplemental Extended Reporting Period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

Once in effect, the Supplemental Extended Reporting Period may not be cancelled, and the premium will be fully earned.

5. Claims which are first received and recorded during the Basic Extended Reporting Period (or during the Supplemental Extended Reporting Period, if it is in effect) will be deemed to have been made on the last day of the policy period.

H. DEFINITIONS

1. "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at anytime.

2. "Counseling incident" means any act or omission in the furnishing of counseling services.

3. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico, and Canada;

   b. All parts of the world if the injury arises out of the activities of an insured whose home is in the territory described in a. above and whose responsibility to pay damages is determined in a "suit" on the merits in the territory described in a. above or in a settlement we agree to.

4. "Defense expense" means payments allocated to a specific claim or "suit" and includes:

   a. Fees and salaries of attorneys and paralegals we retain.

   b. Fees of attorneys the insured retains when by mutual agreement, court order, or law the insured is given the right to retain defense counsel to defend a "suit."

   c. All other litigation expenses.

   d. The cost of bonds to release attachments or similar bonds in any "suit," but only for bond amounts within the Limit of Insurance. We do not have to furnish these bonds.

   e. Reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit" including actual loss of earnings up to $250 a day because of time off from work.

   f. Costs taxed against the insured in the "suit." For the purpose of this coverage, costs do not include prejudgment interest or post judgment interest.

   "Defense expense" does not include salaries and expenses of our employees or the insured's employees (other than those described in a. and e. above) and does not include fees and expenses of independent adjusters we hire.

5. "Loss" means damages, judgments, settlements, and "defense expenses." "Loss" does not include fines, taxes, penalties, nonmonetary damages, or injunctive relief.

6. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property; or

Copyright, Church Mutual Insurance Company, 2004.

b. Loss of use of tangible property that is not physically injured.

7. "Sexual harassment" means unwelcome sexual advances, requests for sexual favors or other verbal, visual or physical conduct of a sexual nature that are implied or presented as a condition of employment, are used as a basis for employment decisions, or creates a work environment that interferes with job performance or creates an intimidating, hostile, or offensive working environment.

8. "Sexual misconduct or sexual molestation" is any activity by anyone (whether an adult or child) which is sexual in nature whether permitted or unpermitted, including but not limited to, sexual assault, sexual battery, sexual relations, sexual acts, sexual activity, sexual handling, sexual massage, sexual exploitation, sexual exhibition, photographic, video or other reproduction of sexual activity, sexual stimulation, fondling, intimacy, exposure of sexual organs, lewd, or lascivious behavior or indecent exposure, fornication, undue familiarity, or unauthorized touching.

9. "Suit" means a civil proceeding in which a "loss" because of injury to which this insurance applies is alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

10. "Wrongful Employment Practice" means any actual or alleged:

a. Wrongful termination, discharge, or dismissal of employment, whether actual or constructive;

b. Employment discrimination because of race, color, sex, age, national origin, religion, or disability.

c. "Sexual harassment";

d. Wrongful failure to employ or promote, wrongful discipline or demotion;

e. Employment related false arrest, wrongful detention or imprisonment, malicious prosecution, libel, slander, defamation of character, or invasion of privacy.

Claims arising out of the same "wrongful employment practice" or interrelated "wrongful employment practices" of one or more persons insured shall be considered one "loss" and shall be subject to only one retention.

Copyright, Church Mutual Insurance Company, 2004.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EMPLOYMENT PRACTICES LIABILITY COVERAGE AMENDMENT

This endorsement modifies insurance provided by the Professional Liability Coverage Part:

The following is added to the Employment Practices Liability Coverage Form.

EMPLOYMENT PRACTICES LIABILITY

Paragraph A.2. Exclusions is amended to include the following:

This insurance does not apply to claims arising directly or indirectly from any of the following laws:

The Fair Labor Standards Act, the National Labor Relations Act of 1938, the Worker Adjustment and Retraining Notification Act (Public Law 100-37991988), the Consolidated Omnibus Budget Reconciliation Act of 1985, or the Occupational Safety and Health Act. This exclusion also applies to any rules or regulations promulgated under any of the foregoing and amendments thereto or any similar provisions of any federal, state, or local law, and to that part of any damages awarded for the cost or replacement of any insurance benefits due or alleged to be due to any current or former employee.

Copyright, Church Mutual Insurance Company, 2004.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AFFILIATED ENTITY DISPUTE LEGAL DEFENSE COVERAGE ENDORSEMENT

This endorsement modifies the insurance provided by the Directors, Officers and Trustees Liability Coverage Form.

The following is added to the Directors, Officers and Trustees Liability Coverage Form.

A. ADDITIONAL EXCLUSIONS

This insurance does not apply to any "loss" arising out of or resulting from any "Affiliated Entity Dispute," except as provided by Affiliated Entity Dispute Legal Defense Coverage.

B. AFFILIATED ENTITY DISPUTE LEGAL DEFENSE COVERAGE

Except for the insurance provided by this Affiliated Entity Dispute Legal Defense Coverage Endorsement, and subject to all other provisions in the Directors, Officers and Trustees Liability Coverage Form, this policy does not apply to, nor do we have any duty to defend, any claim or suit arising out of or resulting from any actual or alleged "Affiliated Entity Dispute."

We will pay on your behalf and on behalf of your "Directors, Officers or Trustees" "defense expenses" (but no other item of any "loss") that you or your "Directors, Officers or Trustees" become legally obligated to pay arising out of a "wrongful act" that results in a claim or claims made against you or your "Directors, Officers or Trustees" by an "Affiliated Entity" that alleges one or more "Affiliated Entity Disputes." The limits of insurance shown in the Declarations Page and the rules below fix the most we will pay for "Affiliated Entity Dispute" "defense expenses."

Paragraph B., RETENTION, of the Directors, Officers and Trustees Liability Coverage Form does not apply to Affiliated Entity Dispute Legal Defense Coverage.

C. LIMITS OF INSURANCE

The following is added to Paragraph E., LIMIT OF INSURANCE:

The Affiliated Entity Dispute Legal Defense Coverage Each Wrongful Act Limit is the most we will pay for the sum of all "defense expenses" under the Affiliated Entity Dispute Legal Defense Coverage because of all "Affiliated Entity Disputes" arising out of "Each Wrongful Act." The term "Each Wrongful Act" means all "wrongful acts" arising out of the same, interrelated, repeated, or continuous "wrongful acts" committed by an "Affiliated Entity," regardless of the time over which such acts occur and the number of "Directors, Officers or Trustees" that are alleged to have committed such "wrongful acts." In the event that "Each Wrongful Act" includes "wrongful acts" committed during the effective dates of more than one policy or more than one policy year, only one Affiliated Entity Dispute Legal Defense Coverage Each Wrongful Act Limit will apply, which shall be the Affiliated Entity Dispute Legal Defense Coverage Each Wrongful Act Limit in effect at the time a claim is first made and reported to us in accordance with Paragraph A.1.f. of the Directors, Officers and Trustees Liability Coverage Form.

The Affiliated Entity Dispute Legal Defense Coverage Aggregate Limit is the most we will pay for the sum of all "defense expenses" arising out of all "wrongful acts" that result in all claims made under the Affiliated Entity Dispute Legal Defense Coverage.

The Affiliated Entity Dispute Legal Defense Coverage Wrongful Act Limit and the Affiliated Entity Dispute Legal Defense Coverage Aggregate Limit is part of and not in addition to the Directors, Officers and Trustees Aggregate Limit.

D. ADDITIONAL DEFINITIONS

1. "Affiliated Entity" means any entity or organization with which the Named Insured is affiliated or associated, or which the Named Insured governs or is governed by, owns or is owned by, or controls or is controlled by, including, but not limited to, any and all corporations, associations, partnerships, joint ventures, foundations, churches, congregations, trusts, educational institutions, day care facilities, group home facilities, denominations, dioceses, conventions, districts, synods, councils, camps, conference centers, and any other similar entity or

 Copyright, Church Mutual Insurance Company, 2006.

organization. "Affiliated Entity" includes all "Directors, Officers and Trustees," employees, members, or volunteers of such entity or organization, or of the Named Insured.

2. "Affiliated Entity Dispute" means any claim or claims made against an insured by an "Affiliated Entity" that arises out of a dispute involving one or more of the following:

a. Ownership, title, control, or use or return of real or personal property, donations, or financial assets;

b. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies;

c. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

d. Access to financial or other records;

e. The authority or control over business affairs of an insured;

f. The appointment or election of "Directors, Officers or Trustees" or other positions;

g. The interpretation or application of articles of incorporation, charters, association agreements, constitutions, bylaws, or other governing documents, or any amendments thereto;

h. Ecclesiastical, doctrinal, religious, or philosophical teachings, beliefs, practices, or policies.

However, "Affiliated Entity Dispute" does not include any claim or claims seeking monetary damages made against an insured by an employee, member, or volunteer of the Named Insured who is not a "Director, Officer or Trustee."

Copyright, Church Mutual Insurance Company, 2006.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## FLORIDA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**PROFESSIONAL LIABILITY COVERAGE PART**

A. Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 90 days before the effective date of cancellation if we cancel for any other reason.

B. The following is added to the **Cancellation** Common Policy Condition:

7. **Cancellation of Policies in Effect For More Than 90 Days**

   If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The policy was obtained by a material misstatement;

   c. Failure to comply with underwriting requirements established within 90 days of the effective date of coverage;

   d. A substantial change in the risk covered by the policy; or

   e. The cancellation is for all insureds under such policies for a given class of insureds.

C. Paragraph 5. of the **Cancellation** Common Policy Condition is replaced by the following:

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

   If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

   The cancellation will be effective even if we have not made or offered a refund.

D. The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least:

   a. 10 days prior to the expiration of this policy, if we nonrenew for nonpayment of premium; or

   b. 90 days prior to the expiration of this policy, if we nonrenew for any other reason.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

Copyright, Church Mutual Insurance Company, 2008.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2007.

POLICY NO.: 0130923-02-735974 11/01/14

**Church Mutual Insurance Company**
3000 Schuster Lane, P.O. Box 357
Merrill, Wisconsin 54452

# APPLICATION FOR
# DIRECTORS, OFFICERS AND TRUSTEES LIABILITY COVERAGE

**THIS IS AN APPLICATION FOR CLAIMS-MADE COVERAGE.**

FORT MYERS FIRST CHURCH OF THE NAZARENE INC
(Name of Organization)

13545 AMERICAN COLONY BLVD
(Address)

FORT MYERS, FL 33912-5681
(City) (State) (Zip Code)

Within the scope of this proposed directors, officers and trustees liability insurance:

1. Have there been any claims or lawsuits made or are any now pending against the Organization or any person who may be covered by this insurance? ☐ Yes ☒ No If yes, please provide details.

2. Does any person who may be covered by this insurance have any knowledge or information of any breach of duty, error, misstatement, misleading statement, or omission which could give rise to a claim against the Organization or any person who may be covered by this insurance? ☐ Yes ☒ No If yes, please provide details.

POLICY NO.: 0130923-02-735974 11/01/14

**REPRESENTATIONS:**

The individual providing information for this insurance coverage declares the statements set forth herein are true.

The individual providing information, on behalf of the Organization, agrees that this application and the said statements shall be the basis of any insurance contract or agreement that may be made. The Insurer is hereby authorized to make any investigation and inquiry in connection with this application.

It is agreed that any claim or action arising out of any wrongful act, error, or omission that is known to any person proposed for this insurance prior to the issuance of the policy and not disclosed in this application is excluded from coverage.

It is agreed that this application shall be the basis of the contract should a policy be issued, and this application shall be considered part of the contract.

An offer to provide coverage may include terms and conditions that are materially different from your previous coverage. The Company shall not be obligated to provide terms in accordance with previously provided coverage or currently requested coverage, and terms and conditions may be offered that are materially different from those requested.

IF A POLICY IS ISSUED, THIS APPLICATION WILL BE RETAINED ON FILE BY CHURCH MUTUAL INSURANCE COMPANY AND FORM A PART OF THE POLICY.

**FLORIDA FRAUD WARNING**

Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

Insurance Company Use Only:

| Barbara Smith | P080156 |
|---|---|
| (Please Print) Account Manager | Florida Insurance License Number |

Name of Applicant: ROSS BUCKELEW

Title of Applicant: ADMINISTRATOR

Date Application Completed: 09/23/14

POLICY NO.: 0130923-02-735974 11/01/14

Church Mutual Insurance Company
3000 Schuster Lane, P.O. Box 357
Merrill, Wisconsin 54452

# APPLICATION FOR EMPLOYMENT PRACTICES LIABILITY COVERAGE

THIS IS AN APPLICATION FOR CLAIMS-MADE COVERAGE.

FORT MYERS FIRST CHURCH OF THE NAZARENE INC
(Name of Organization)

13545 AMERICAN COLONY BLVD
(Address)

FORT MYERS, FL 33912-5681
(City) (State) (Zip Code)

Within the scope of this proposed employment practices liability insurance:

1. Have there been any claims or lawsuits made or are any now pending against the Organization or any person who may be covered by this insurance? ☐ Yes ☒ No If yes, please provide details.

2. Does any person who may be covered by this insurance have any knowledge or information of any breach of duty, error, misstatement, misleading statement, or omission which could give rise to a claim against the Organization or any person who may be covered by this insurance? ☐ Yes ☒ No If yes, please provide details.

POLICY NO.: 0130923-02-735974 11/01/14

**REPRESENTATIONS:**

The individual providing information for this insurance coverage declares the statements set forth herein are true.

The individual providing information, on behalf of the Organization, agrees that this application and the said statements shall be the basis of any insurance contract or agreement that may be made. The Insurer is hereby authorized to make any investigation and inquiry in connection with this application.

It is agreed that any claim or action arising out of any wrongful employment practice that is known to any person proposed for this insurance prior to the issuance of the policy and not disclosed in this application is excluded from coverage.

It is agreed that this application shall be the basis of the contract should a policy be issued, and this application shall be considered part of the contract.

An offer to provide coverage may include terms and conditions that are materially different from your previous coverage. The Company shall not be obligated to provide terms in accordance with previously provided coverage or currently requested coverage, and terms and conditions may be offered that are materially different from those requested.

IF A POLICY IS ISSUED, THIS APPLICATION WILL BE RETAINED ON FILE BY CHURCH MUTUAL INSURANCE COMPANY AND FORM A PART OF THE POLICY.

**FLORIDA FRAUD WARNING**

Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

Insurance Company Use Only:

(Please Print) Account Manager ____________ Florida Insurance License Number ____________

Name of Applicant: ROSS BUCKELEW

Title of Applicant: ADMINISTRATOR

Date Application Completed: 09/23/14

# HIRED AND NONOWNED AUTOMOBILE LIABILITY COVERAGE EXCESS INSURANCE

## RELIGIOUS INSTITUTIONS

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this Policy, the words "you" and "your" refer to the Named Insured shown in the Declarations Page. The words "we," "us," and "our" refer to Church Mutual Insurance Company.

The word "insured" means any person or organization qualifying as an insured. **Refer to Paragraph C - Who Is An Insured.**

Other words and phrases that appear in quotation marks have special meaning. **Refer to Paragraph F - Definitions.**

A. **HIRED AND NONOWNED AUTOMOBILE LIABILITY COVERAGE**

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited. **Refer to Paragraph D - Limits of Insurance**; and

(2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under this Hired and Nonowned Automobile Liability Coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) The "bodily injury" or "property damage" arises out of the maintenance or use of an "automobile" that is a "hired automobile" or "nonowned automobile."

c. Damages because of "bodily injury" include damages by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

2. Exclusions.

This insurance does not apply to:

a. (1) With respect to any "hired automobile":

(a) To the owner of the "hired automobile";

(b) To the lessee (of whom the Named Insured is a sublessee) of a "hired automobile"; or

(c) To any agent or employee of such owner or lessee other than the Named Insured.

b. "Bodily Injury" by any person engaged in the business of his or her employer to any co-employee of such person injured in the course of employment.

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994.

c. Physical damage to the "hired automobile" or the "nonowned automobile."

d. Any "automobile" owned by or leased to the Named Insured for which we are providing primary insurance.

e. "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants":

(1) That are, or that are contained in any property that is:

(a) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "hired automobile" or "nonowned automobile";

(b) Otherwise in the course of transit by or on behalf of the insured; or

(c) Being stored, disposed of, treated, or processed in or upon the covered "hired automobile" or "nonowned automobile."

(2) Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the insured for movement into or onto the covered "hired automobile" or "nonowned automobile"; or

(3) After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "hired automobile" or "nonowned automobile" to the place where they are finally delivered, disposed of, or abandoned by the insured.

Paragraph (1) above does not apply to fuels, lubricants, fluids, exhaust gases, or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic, or mechanical functioning of the covered "hired automobile" or "nonowned automobile" or its parts, if:

(a) The "pollutants" escape, seep, migrate, or are discharged, dispersed, or released directly

from an "automobile" part designed by its manufacturer to hold, store, receive, or dispose of such "pollutants"; and

(b) The "bodily injury" or "property damage" does not arise out of the operation of any equipment listed in paragraphs f.(2) and f.(3) of the definition of "mobile equipment."

Paragraphs (2) and (3) above of this exclusion do not apply to accidents that occur away from premises owned by or rented to an insured with respect to "pollutants" not in or upon a covered "hired automobile" or "nonowned automobile" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned, or damaged as a result of the maintenance or use of a covered "hired automobile" or "nonowned automobile"; and

(b) The discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused directly by such upset, overturn, or damage.

f. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

g. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

h. "Property damage" to:

(1) Property owned or being transported by the insured; or

(2) Property rented to or in the care, custody, or control of the insured, or as to which the insured is for any purpose exercising physical control.

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994.

i. Any obligation of the insured under a workers' compensation, disability benefits, or unemployment compensation law, or any similar law.

j. "Bodily injury" to:

(1) An employee of the insured arising out of and in the course of employment by the insured; or

(2) The spouse, child, parent, brother, or sister of that employee as a consequence of (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to "bodily injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers' compensation law.

k. "Bodily injury" or "property damage" arising out of any actual or alleged act of "sexual misconduct or sexual molestation." This includes, but is not limited to any claim or suit seeking damages based upon, arising out of, or attributable to: vicarious liability; negligence in hiring, employment, supervision, retention, or transfer of any employee or volunteer workers; recommendation or referral of any person for employment or volunteer work; failure to protect or negligent supervision of any person (whether an adult or child) failure to warn, failure to investigate, or failure to comply with any obligation to report; and counseling.

**B. SUPPLEMENTARY PAYMENTS - HIRED AND NONOWNED AUTOMOBILE LIABILITY COVERAGES**

1. We will pay, with respect to any claim or "suit" we defend:

a. All expenses we incur.

b. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

c. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

d. All costs taxed against the insured in the "suit." For the purpose of this provision, costs do not include prejudgement interest or post judgement interest.

e. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

f. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

These payments will not reduce the Limits of Insurance.

**C. WHO IS AN INSURED**

1. Each of the following is an insured under this insurance to the extent set forth below:

a. You are an insured.

b. Any of your officers, clergy, or employees are insureds, but only with respect to their duties as such.

c. Any person who is a "volunteer" for you is an insured, but only while using an "automobile" with your express knowledge and authorization, in the course of your business, and within the scope of their duties for you.

d. Any person while using a "hired automobile" is an insured (except while using an "automobile" owned by such person) provided the actual use of the "automobile" is with your permission.

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994.

D. LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations Page and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits."

2. The Aggregate Limit is the most we will pay for the sum of all damages under Hired and Nonowned Automobile Liability Coverage.

3. Subject to 2. above, the Each Occurrence Limit is the most we will pay for the sum of damages under Hired and Nonowned Automobile Liability Coverage because of all "bodily injury" and "property damage" arising out of any one "occurrence."

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations Page, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

E. CONDITIONS

1. Bankruptcy.

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties in the Event of "Occurrence," Claim, or "Suit."

a. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim. To the extent possible, notice should include:

(1) How, when, and where the "occurrence" took place;

(2) The names and addresses of any injured persons and witnesses;

(3) The nature and location of any injury or damage arising out of the "occurrence."

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us.

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994.

liability signed by us, the insured, and the claimant or the claimant's legal representative.

4. Other Insurance.

a. If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

(1) This insurance is excess over any of the other insurance, whether primary, excess, contingent, or on any other basis. We will have no duty under this Coverage Part to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(2) We will pay only our share of the amount of loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations Page of this Coverage Part.

5. Premium Audit.

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium for this Coverage is a deposit premium only. At the close of each audit period, we may compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the deposit and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

6. Representations.

By accepting the policy, you agree:

a. The statements in the Declarations Page are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representation.

7. Separation of Insureds.

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. Transfer of Rights of Recovery Against Others to Us.

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. Two or More Coverages.

If two or more coverages of this policy apply to the same loss, the maximum amount we will pay as damages under all the coverages will not exceed the highest Limit of Insurance that applies to any one of the coverages.

10. Two or More Policies.

If two or more policies issued by us apply to the same insured and these policies also apply to the same loss, the maximum amount we will pay as damages under all the policies will not exceed the highest applicable Limit of Insurance that applies to any one of the policies.

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994.

This does not apply to any policy issued by us that is specifically written as excess insurance.

11. When We Do Not Renew:

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations Page written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

F. DEFINITIONS

1. "Automobile" means a land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "automobile" does not include "mobile equipment."

2. "Bodily injury" means bodily injury, sickness, or disease sustained by a person including death resulting from any of these at any time.

3. "Coverage territory" means the United States of America (including its territories and possessions), Puerto Rico, and Canada.

4. "Hired automobile" means any "automobile":

   a. Loaned to you;

   b. Leased or rented by you or your employee;

   c. Used under contract by you;

   in the course of your business.

   But, any "automobile" registered in the name of or owned by you, any of your officers, your clergy, your "volunteers," or your employees is not a "hired automobile."

5. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment.

   a. Bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads.

   b. Vehicles maintained for use solely on or next to premises you own or rent.

   c. Vehicles that travel on crawler treads.

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers, or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers, or rollers.

   e. Vehicles not described in a., b., c., or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers.

   f. Vehicles not described in a., b., c., or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "automobiles."

      (1) Equipment designed primarily for:

         (a) Snow removal.

         (b) Road maintenance, but not construction or resurfacing.

         (c) Street cleaning.

      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (3) Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well servicing equipment.

6. "Nonowned Automobile" means any "automobile" owned by or registered in the

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994.

name of your officers, your clergy, your "volunteers" or your employees, provided at the time of the "occurrence":

a.  Such "automobile" is being used in the course of your business; and

b.  Such use is either by such owner or by any other person whose actual operation or (if that person is not operating) whose actual use thereof is with such owner's permission.

7.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

8.  "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

9.  "Property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property; or

b.  Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

10.  "Sexual misconduct or sexual molestation" is any activity by anyone (whether an adult or child) which is sexual in nature whether permitted or unpermitted, including but not limited to, sexual assault, sexual battery, sexual relations, sexual acts, sexual activity, sexual handling, sexual massage, sexual exploitation, sexual exhibition, photographic, video or other reproduction of sexual activity, sexual stimulation, fondling, intimacy, exposure of sexual organs, lewd, or lascivious behavior or indecent exposure, fornication, undue familiarity, or unauthorized touching.

11.  "Suit" means a civil proceeding in which damages because of "bodily injury" and "property damage" to which this insurance applies are alleged. "Suit" includes:

a.  An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

12.  "Volunteer" means any person, other than your officers, clergy, or employees, while using an "automobile" with your express knowledge and authorization, in the course of your business, and within the scope of their duties for you.

Copyright, Church Mutual Insurance Company, 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# HIRED AND NONOWNED AUTOMOBILE MEDICAL EXPENSE COVERAGE EXCESS INSURANCE

This endorsement modifies insurance provided under the Hired and Nonowned Automobile Liability Coverage Part.

The following is added to the Hired and Nonowned Automobile Liability Coverage Form.

A. MEDICAL EXPENSE COVERAGE

1. Insuring Agreement.

a. We will pay medical expenses as described below for "bodily injury" to an insured caused by an accident while "occupying" any "hired automobile" or "nonowned automobile" provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make the following payments regardless of fault. These payments will not exceed the applicable Limit of Insurance. We will pay reasonable expenses for:

(1) First aid at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

B. WHO IS AN INSURED

1. Any person while "occupying" a "hired automobile" or "nonowned automobile" is an insured, but only with respect to the Medical Expense Coverage provided by this endorsement.

2. Paragraph C., (Who Is An Insured) of the Hired and Nonowned Automobile Liability Coverage Form does not apply to the Medical Expense Coverage of this coverage endorsement.

C. LIMITS OF INSURANCE - MEDICAL EXPENSE COVERAGE

1. The Limits of Insurance shown in the Declarations Page and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The Medical Expense Aggregate Limit of Insurance is the most we will pay for the sum of all medical expenses under Medical Expense Coverage.

3. Subject to 2. above, the Medical Expense Limit of Insurance is the most we will pay under Medical Expense Coverage for all medical expenses because of "bodily injury" sustained by any one person.

The Medical Expense Coverage Limits of Insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations Page, unless the policy period is extended after issuance for an additional period less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

D. ADDITIONAL DEFINITION

1. "Occupying" means in, upon, getting in, on, out or off.

Copyright, Church Mutual Insurance Company, 1987.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1987.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## RENTAL AUTOMOBILE CONTRACTUAL LIABILITY ENDORSEMENT

This endorsement modifies insurance provided under the Hired and Nonowned Automobile Liability Coverage Part.

The following is added to the Hired and Nonowned Automobile Liability Coverage Form A 600.

A. RENTAL AUTOMOBILE CONTRACTUAL LIABILITY COVERAGE:

1. With respect to an "incidental" rental "hired automobile":

   a. Paragraph A.2.g. Exclusions is replaced by the following:

      This insurance does not apply to:

      (1) "Bodily injury" or "property damage" for which the insured is obligated to pay damages, by reason of the assumption of the tort liability of another to a third party or organization, in a written contract or agreement.

      But, this exclusion does not apply to that part of any written contract or agreement entered into by you pertaining to the rental or lease of the "automobile" if the written contract or agreement:

      (a) Is made prior to the "bodily injury" or "property damage"; and

      (b) Pertains to the loan, lease or rental of the "automobile" without a driver; and

      (c) If the written contract or agreement:

         1) Does not indemnify or hold a person or organization engaged in the business of transporting persons or property by "automobile" for hire harmless for your use of a covered "automobile" over a route or territory that person or organization is authorized or is required to be authorized to serve by public authority, or

         2) Does not provide coverage to a third person or organization for its own negligence regarding manufacture or maintenance of the vehicle or any component part thereof.

B. RENTAL AUTOMOBILE PHYSICAL DAMAGE COVERAGE

1. With respect to the "incidental" rental of a "hired automobile," we will pay for "loss" to that "hired automobile" under the coverages that follow. We will pay under:

   a. Comprehensive Coverage.

      From any cause except:

      (1) The "hired automobile's" collision with another object; or

      (2) The "hired automobile's" overturn.

      We will pay for the following under Comprehensive Coverage:

      (1) Glass breakage;

      (2) "Loss" caused by hitting a bird or animal; and

      (3) "Loss" caused by falling objects or missiles.

      However, you have the option of having glass breakage caused by an "automobile's" collision or overturn considered a "loss" under Collision Coverage.

   b. Collision Coverage. Caused by:

      (1) The "hired automobile's" collision with another object; or

      (2) The "hired automobile's" overturn.

   c. "Loss Of Use Expenses"

      For Rental Auto Physical Damage, we will pay "loss of use expenses" for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for "loss of use expenses" if caused by a:

      (1) Comprehensive loss, or

      (2) Collision loss.

 Copyright, Church Mutual Insurance Company, 2003.

However, the most we will pay for any "loss of use expenses" is $750 per vehicle. We will pay no more than $1,500 under "Loss of Use Expenses" for all accidents occurring during the policy year.

2. Exclusions.

a. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

(1) Nuclear Hazard.

Nuclear reaction or radiation or radioactive contamination, however caused.

But if loss or damage by fire results, we will pay for that resulting loss or damage.

(2) War or Military Action.

(a) War, including undeclared or civil war;

(b) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government sovereign or other authority using military personnel or other agents; or

(c) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

(3) We will not pay for "loss" to any "hired automobile" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any "hired automobile" while that "hired automobile" is being prepared for such a contest or activity.

b. Other Exclusions.

(1) We will not pay for "loss" to any of the following:

(a) Tape decks or other sound reproducing equipment unless permanently installed in an "automobile."

(b) Tapes, records or other sound reproducing devices designed for use with sound reproducing equipment.

(c) Sound receiving equipment designed for use as a citizens' band radio, two-way mobile radio or telephone or scanning monitor, receiver, including its antennas and other accessories, unless permanently installed in the dash or console opening normally used by the "automobile" manufacturer for the installation of a radio.

(2) We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance.

(a) Wear and tear, freezing, mechanical or electrical breakdown.

(b) Blowouts, punctures or other road damage to tires.

(3) We will not pay for "loss" to a "hired automobile" owned by a person or organization engaged in the business of transporting persons or property by "automobiles" for hire over a route or territory that person or organization is authorized to serve by public authority.

3. Limit of Insurance.

The most we will pay for "loss" to any one "incidental" rental "hired automobile" in any one accident is the lesser of:

a. The actual cash value of the damaged or stolen "hired automobile" as of the time of the "loss";

b. The cost of repairing or replacing the damaged or stolen "hired automobile" with another automobile of comparable kind and quality.

c. $100,000 for all covered losses occurring during each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations Page, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

4. Deductible.

For each "incidental" rental "hired automobile," our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by a $250

Copyright, Church Mutual Insurance Company, 2003.

deductible for each covered "automobile." Any Comprehensive Coverage deductible does not apply to "loss" caused by fire or lightning.

C. ADDITIONAL CONDITIONS

The following are added to Paragraph E. CONDITIONS:

a. The following is added to Paragraph 2.:

e. If there is a "loss" to an "incidental" rental "hired automobile," you must also do the following:

(1) Promptly notify the police if the covered "hired automobile" or any of its equipment is stolen.

(2) Take all reasonable steps to protect the covered "hired automobile" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the covered "hired automobile" and records proving the "loss" before its repair or disposition.

(4) Agree to examinations under oath at our request and give us a signed statement of your answers.

b. The following provision is added:

12. Loss Conditions.

a. Appraisal For Physical Damage Loss.

If you and we disagree on the amount of the "loss," either may demand an appraisal of the "loss." In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the actual cash value and amount of "loss." If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

(1) Pay its chosen appraiser; and

(2) Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

b. Loss Payment - Physical Damage Coverages.

At our option we may:

(1) Pay for, repair or replace damaged or stolen property;

(2) Return the stolen property, at our expense. We will pay for any damage that results to the "hired automobile" from the theft; or

(3) Take all or any part of the damaged or stolen property at an agreed or appraised value.

c. No Benefit to Bailee - Physical Damage Coverages

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

D. ADDITIONAL DEFINITIONS

1. "Incidental" means a "hired automobile" used or rented for a period of 30 days or less under a written contract or agreement.

2. "Loss" means direct and accidental loss or damage.

3. "Loss of use expenses" means reasonable and customary charges imposed by the rental car company for the period of time the car is being repaired that are substantiated by a fleet utilization log. "Loss of use expenses" include administrative fees.

Copyright, Church Mutual Insurance Company, 2003

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## FLORIDA CHANGES

This endorsement modifies insurance provided under the following:

HIRED AND NONOWNED AUTOMOBILE LIABILITY COVERAGE PART

The following is added to the Hired and Nonowned Automobile Liability Coverage Form.

A. The following Condition is added to E. Conditions:

**Mediation**

1. In any claim filed by an insured with us for:

   a. "Bodily injury" in an amount of $10,000 or less, arising out of the ownership, operation, use, or maintenance of a covered "automobile";

   b. "Property damage" in any amount, arising out of the ownership, operation, maintenance, or use of a covered "automobile", or

   c. Loss to a covered "automobile" or its equipment, in any amount;

   either party may make a written demand for mediation of the claim prior to the institution of litigation.

2. A written request for mediation must be filed with the Florida Department of Financial Services on an approved form, which may be obtained from the Florida Department of Financial Services.

3. The request must state:

   a. Why mediation is being requested.

   b. The issues in dispute, which are to be mediated.

4. The Florida Department of Financial Services will randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time, and place of the mediation conference. The mediation conference will be held within 45 days of the request for mediation. The conference will be held by telephone if feasible. Participants in the mediation conference must have the authority to make a binding decision, and must mediate in good faith. Each party will bear the expenses of the mediation equally, unless the mediator determines that one party has not mediated in good faith.

5. Only one mediation may be requested for each claim unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

6. The mediation shall be conducted as an informal process and formal rules of evidence and procedures need not be observed.

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2002.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# HIRED AND NONOWNED AUTOMOBILE UNINSURED MOTORISTS COVERAGE - FLORIDA

This endorsement modifies insurance provided under the Hired and Nonowned Automobile Liability Coverage Part.

Throughout this endorsement, the words "covered automobile" means an "automobile" that is a "hired automobile" or "nonowned automobile."

The following is added to the Hired and Nonowned Automobile Liability Coverage Excess Insurance Coverage Form.

**A. Uninsured Motorists Coverage**

1. We will pay all sums the insured is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the insured caused by an "occurrence." The owner's or driver's liability for these damages must result from the ownership, maintenance, or use of the "uninsured motor vehicle."

2. We will pay under this coverage only after all liability bonds or policies have been exhausted by payment of judgments or settlements.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Who Is An Insured - Uninsured Motorists Coverage**

The following are insureds, but only with respect to the Uninsured Motorists Coverage:

1. Anyone "occupying" an "hired automobile" or a "nonowned automobile" that is a covered hired automobile or nonowned automobile under the Hired and Nonowned Automobile Liability Coverage Part for liability insurance and is licensed or principally garaged in Florida is an insured.

2. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

**C. Exclusions**

This insurance does not apply to any of the following:

1. Any claim settled without our consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits, or similar law.

3. "Bodily injury" sustained by an insured while "occupying" or when struck by any vehicle owned by such insured that is not a "hired automobile" or "nonowned automobile."

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

5. Punitive or exemplary damages.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**D. Limit Of Insurance**

1. Regardless of the number of covered "hired automobiles," or "nonowned automobiles," "insureds", premiums paid, claims made, or vehicles involved in the "occurrence", the most we will pay for all damages resulting from any one "occurrence" is the Each Occurrence Limit of Insurance for Uninsured Motorists Coverage shown in the Schedule or Declarations.

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2005.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under the Hired and Nonowned Liability Coverage Form.

   We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

3. The Aggregate Limit is the most we will pay for the sum of all damages under Uninsured Motorists Coverage.

E. Changes In Conditions

The conditions are changed for Uninsured Motorists Coverage as follows:

1. For purposes of this coverage form only, the reference in Other Insurance in the Hired and Nonowned Automobile Liability Coverage to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

2. **Duties In The Event Of Occurrence, Claim, Suit, Or Loss** is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved, and

   b. Promptly send us copies of the legal papers if a "suit" is brought.

3. **Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

   a. We shall be entitled to the right to recover damages from another only after the insured has been fully compensated for damages.

   b. If we make any payment and the insured recovers from another party, the insured shall hold the proceeds in trust for us and pay us back the amount we have paid, only after the insured has been fully compensated for damages.

4. The following condition is added:

   ARBITRATION

   a. If we and an insured do not agree:

      (1) Whether that person is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" under this endorsement; or

      (2) As to the amount of damages that are recoverable by that person;

   Then the matter may be mediated, in accordance with the Mediation Provision contained in General Conditions, if the damages resulting from "bodily injury" are for $10,000 or less, or arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

      (2) Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

      (3) Unless both parties agree otherwise, arbitration will take place in the county in which the insured lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

   b. Florida Arbitration Act

   If we and an insured agree to arbitration, the Florida Arbitration Act will not apply.

   c. Mediation

      (1) In any claim filed by an insured with us for:

         (a) "Bodily injury" in an amount of $10,000 or less, arising out of the ownership, operation, use or maintenance of a "hired automobile" or "nonowned automobile";

         (b) "Property damage" in any amount, arising out of the ownership, operation, maintenance or use of a "hired automobile" or "nonowned automobile"; or

         (c) "Loss" to a "hired automobile" or "nonowned automobile", in any amount;

Copyright, Church Mutual Insurance Company, 2006, Includes copyrighted material of Insurance Services Office, Inc., with its permission. © ISO Properties, Inc., 2005,

either party may make a written demand for mediation of the claim prior to the institution of litigation.

(2) A written request for mediation must be filed with the Florida Department of Financial Services on an approved form, which may be obtained from the Florida Department of Financial Services.

(3) The request must state:

(a) Why mediation is being requested.

(b) The issues in dispute, which are to be mediated.

(4) The Florida Department of Financial Services will randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time, and place of the mediation conference. The mediation conference will be held within 45 days of the request for mediation. The conference will be held by telephone, if feasible. Participants in the mediation conference must have the authority to make a binding decision, and must mediate in good faith. Each party will bear the expenses of the mediation equally, unless the mediator determines that one party has not mediated in good faith.

(5) Only one mediation may be requested for each claim unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

(6) The mediation shall be conducted as an informal process and formal rules of evidence and procedures need not be observed.

**F. Additional Definitions**

As used in this endorsement:

1. "Occupying" means in, upon, getting in, on, out, or off.

2. "Uninsured motor vehicle" means an "automobile":

a. For which no liability bond or policy applies at the time of an "occurrence".

b. That is an underinsured motor vehicle. An underinsured motor vehicle is an "automobile" for which a "bodily injury" liability bond or policy applies at the time of an "occurrence" but the amount paid under that bond or policy to an insured is not enough to pay the full amount the insured is legally entitled to recover as damages caused by the "occurrence";

c. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

d. For which neither the driver nor owner can be identified. The "automobile" must:

(1) Hit an insured or a covered "hired automobile" or "nonowned automobile" that the insured is "occupying"; or

(2) Cause an accident resulting in "bodily injury" to an insured without hitting that insured or a covered "hired automobile" or "nonowned automobile" that the insured is "occupying."

If there is no physical contact with the "automobile," the facts of the "occurrence" must be proved. We will only accept competent evidence other than the testimony of a person making claims under this or any similar coverage.

However, "uninsured motor vehicle" does not include any vehicle:

a. Owned by a governmental unit or agency;

b. Designed for use mainly off public roads while not on public roads; or

c. Owned by or furnished or available for the regular use of the Named Insured, or that is an "hired automobile" or "nonowned automobile."

3. "Loss" means direct and accidental loss or damage.

Copyright, Church Mutual Insurance Company, 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2005.